UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIP MESSINA, <br> GEORGE DEMTRIOU, individually and on behalf of all others similarly situated, and derivatively on behalf of <br> AMERICAN SOCIETY OF LAW ENFORCEMENT TRAINERS, INC., <br> Plaintiffs, <br><br> v. <br><br> FRANK A. HACKETT, JR., <br> ANDREW CASAVANT, <br> GREG MEYER, <br> GARY T. KLUGIEWICZ, <br> TIMOTHY DEES, <br> LISA KONRATH, <br> MARY GIFFORD, <br> DAVID SMITH, <br> DAVID GROSSI, <br> JULIE LINKINS, <br> WILLIAM WESTFALL, <br> DANIEL WATSON, <br> GLENN YOUNG, <br> JOHN DOES 1-10, <br> Defendants, <br><br> And AMERICAN SOCIETY OF LAW ENFORCEMENT TRAINERS, INC., <br> Nominal Defendant. | Civil Action No: CV-040170 (TCP) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| STATE OF NEW YORK <br> COUNTY OF NASSAU | ss.: |

Paul A. Bradley, counsel for the action on behalf of the Defendants, Frank A. Hackett Jr. Andrew Casavant, Greg Meyer, Gary T. Klugiewicz, Timothy Dees, Lisa Konrath, Mary Gifford, David Smith, David Grossi, Julie Linkins, William Westfall, Daniel Watson, and American Society Of Law Enforcement Trainers ("ASLET") (nominal defendant) (collectively

"Moving Defendants"), being duly sworn, deposes and says (or makes the following affirmation under the penalties of perjury):

Moving Defendants are Defendants in the above-entitled action, and respectfully move this Court to issue an order dismissing the Plaintiffs' Complaint against them.

The reasons why Moving Defendants are entitled to the relief they seek are the following: (1) the plaintiffs' claims are time barred; (2) the Court lacks personal jurisdiction over Moving Defendants; (3) plaintiffs have insufficiently served process on the Moving Defendants; (4) the plaintiffs lack standing under the Racketeering Influenced and Corrupt Organizations Act ("RICO"); (5) the plaintiffs have failed to state a claim upon which relief can be granted; (6) the Eastern District of New York is not the proper venue for this action; (7) application of the doctrine of *forum non conveniens* mandates dismissal of this case; and any other appropriate grounds.

TABLE OF CONTENTS

| | | | |
|---|---|---|---|---|
| INTRODUCTION............................................................................................. | | | | 1 |
| I. | THE PLAINTIFFS' CLAIMS ARE TIME BARRED............................. | | | 2 |
| II. | THE COURT LACKS PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS................................................................................................... | | | 5 |
| III. | SERVICE OF PROCESS WAS INSUFFICIENT...................................... | | | 8 |
| IV. | PLAINTIFFS' RICO CLAIMS ARE INSUFFICIENT.............................. | | | 9 |
| | A. | Plaintiffs lack standing under RICO................................................... | | 9 |
| | | 1. | There is no individual standing............................................ | 9 |
| | | 2. | There is no derivative standing............................................ | 11 |
| | B. | Plaintiffs fail to state a claim upon which relief under RICO may be granted............................................................................................. | | 12 |
| | | 1. | Plaintiffs' failure to allege reliance and causation dooms their Complaint............................................................................... | 12 |
| | | 2. | Plaintiffs have not alleged facts which satisfy RICO's requirement of an "Enterprise"........................................... | 12 |
| V. | THIS DISTRICT IS THE IMPROPER VENUE FOR PLAINTIFFS' ACTION | | | 13 |
| VI. | THIS CASE SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS......................................................................... | | | 15 |
| CONCLUSION................................................................................................. | | | | 18 |

## INTRODUCTION

ASLET is a Delaware corporation and a non-profit association of those who train law enforcement officials. The organization is dedicated to enhancing and promoting excellence in law enforcement training. It is recognized by the IRS as a 501(c)(3) tax-exempt charity. *See* Complaint at ¶¶ 2, 25, 55. ASLET is named as a Nominal Defendant solely in a derivative capacity. *See* Complaint at ¶ 39.

Plaintiff Messina is a current director and former member of ASLET. He was elected to the ASLET Board of Directors on January 18, 1996, then resigned in January 23, 1998. He was elected again in February 14, 2001, and his term expires January 5, 2005. Although Plaintiff Messina is a director, he has not been a member of ASLET since December 20, 2003, when his membership was terminated by the Board of Directors after a hearing. *See* Complaint at ¶¶ 109-10. Plaintiff Demetriou is a current member of ASLET.

The Moving Defendants all are current or former ASLET officers, directors, or members. *See* Complaint at ¶¶ 15, 16, 25-38. Defendants Linkins, Westfall, and Watson served on the hearing panel established by the Board of Directors to recommend whether Messina should be terminated as a member. *See* Complaint at ¶ 188. In this suit, Plaintiffs have challenged the manner in which ASLET has been governed and managed over at least the last 10 years. Plaintiff Messina within the past 13 months has filed three other suits in the Delaware Court of Chancery, all of which also challenge, in some manner, ASLET's governance and management.

Plaintiffs claim that Moving Defendants' management and control of ASLET has violated RICO. Plaintiffs identify mail and wire fraud as the two predicate acts which support their RICO claims. Plaintiffs claim that Moving Defendants comprise and control a "Board Enterprise," which purportedly has conspired against ASLET and the individual Plaintiffs in

1

order to cover up financial inaccuracies. *See* Complaint at ¶¶ 56-64, 138-182. Plaintiffs now seek relief for alleged breaches of criminal and Delaware state law: breach of contract, fiduciary breach, waste of corporate assets, common law fraud, and aiding and abetting. *See* Complaint at ¶¶ 216-244.

I.   THE PLAINTIFFS' CLAIMS ARE TIME BARRED.

The statute of limitations for RICO claims is four years. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987). The limitations period begins to run "when the plaintiff discovers or should have discovered the RICO injury." *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36 (2d Cir. 2002) (quoting *In re: Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998)).

The Supreme Court has held that a RICO plaintiff need not discover "both a RICO injury and a pattern of RICO activity before the RICO statute of limitations begins to run." *Tho Dinh Tran* at 36 (2d Cir. 2002) (referring to *Rotella v. Wood*, 528 U.S. 549 (2000)). Thus, if the facts alleged by plaintiff establish that a plaintiff knew of RICO injury at a certain time, the plaintiff must file the RICO claim within four years of that time, in order for a filing to be timely. Conversely, "if …the plaintiff pleads facts establishing that the complaint is untimely, he or she will plead him or herself out of court." *Bermudez v. First of Am. Bank Champion, N.A.*, 860 F. Supp. 580, 593 (N.D. Ill. 1994). Such is the result of the facts alleged in this case. Plaintiffs filed their Complaint on January 20, 2004. Plaintiffs' Complaint, however, repeatedly alleges knowledge of both continuing injury and a pattern of RICO activity that began long before the year 2000. All RICO claims asserted by Plaintiffs therefore are time-barred.

Plaintiffs generally allege that

2

> [b]eginning in or about 1994, Defendants and other Participants devised a scheme to defraud, corrupt, cheat, steal and conceal in violations of the laws of the United States ("the scheme").... This scheme inflicted substantial injury upon Plaintiffs, by among other things, cheating Plaintiffs out of hundreds of thousands of dollars in membership dues through a pattern of false misrepresentations and omissions, and spending hundreds of thousands of dollars in support of Defendants' and Participants' racketeering acts and the concealment of those racketeering acts.

Complaint at ¶ 56. *See also* Complaint ¶ 57 (Defendants' "scheme to defraud, corrupt, cheat, obtain by fraud and convert property was in existence by at least 1994").

Plaintiffs further allege,

> [i]n or about April of 1994, Bruce Siddle, then a corporate director of ASLET, started to make inquiries regarding the management, financial and ethical practices of ASLET's (then) Chairman, Gary Klugiewicz; (then) Executive Director Steven Bunting; and (then) Director, Corporate Treasurer and Legal Counsel, Mildred O'Linn. Almost immediately, in an attempt to protect themselves from investigation for financial and ethical violations, the three corporate officers embarked on a campaign to destroy Siddle financially, and to discredit him until he resigned from the board. These actions included, but were not limited to, the covert and unlawful audio taping of telephone calls to and from the ASLET office in Lewes.

Complaint at ¶ 65. Plaintiffs also allege that Messina, "[i]n or about January of 1995," was asked to investigate complaints regarding these and other wrongful practices. *See* Complaint at ¶ 66. *See also id.* at ¶¶ 151-54 (Defendants allegedly used the wires to further the scheme before 2000). *See also id.* at ¶¶ 66, 67, 70.

Plaintiffs also challenge Defendants' allegedly fraudulent statement, published in the corporate "Policies and Procedures Manual" and distributed by mail, that ASLET's financial procedures conformed to Generally Accepted Accounting Practices ("GAAP"), *see* Complaint at ¶ 139. This statement, however, was both made and easily tested in 1997. ASLET's financial statements have been and are in the public domain and are independently audited. There could

3

have been no effective concealment – if concealment had actually been the Defendants' goal. *See also id.* at ¶¶ 176-77 (Defendants used the mails to further the scheme before 2000).

Plaintiffs also claim that

> [i]n or about the summer of 1999, Hackett represented to an ASLET Search Committee, that he would need a salary and benefits package of at least $125,000 per annum, which would still result in his taking a "pay cut" in order to join the organization. Hackett's statement to that effect, made to former director Kathleen Kelley, was later published in an article in ASLET's "The Trainer" magazine [which was mailed out to membership].

Complaint at ¶ 77. Plaintiffs do not and cannot claim that this alleged fraud was undiscoverable, since Plaintiffs could have contacted Hackett's former employer in 1999 in order to verify Hackett's salary and compensation.

Plaintiffs' other allegations confirm the pre-2000 origins of their complaints of wrongdoing. In 1998 Plaintiff Messina resigned from the ASLET Board, allegedly "to allow him to more fully investigate **the continuing reports of wrongdoing** without interference from Klugiewicz and other Defendants and Participants." Complaint at ¶ 72 (emphasis added). Plaintiffs also allege that, on or about January 1998, when Plaintiff Messina resigned from the ASLET board, he and other members also "continued to collect evidence of continued 'double dipping' practices." Complaint at ¶ 80. Thus, it is reasonable to conclude Plaintiffs were collecting evidence well before 1998. In fact, Plaintiffs claim that a "virtual mountain of evidence was collected," at that time. *See* Complaint at ¶ 81. Messina's allegation that there were "continuing reports of wrongdoing" in 1998 confirms Plaintiffs' belief that both RICO injury and ongoing racketeering activity existed at that time. *See* Complaint at ¶ 72.

It therefore is apparent that even if plaintiffs' claims of repeated obstruction are assumed to be true, Plaintiffs' admitted awareness of "continuing" injuries stemming from Defendants' alleged conspiracy, mail, and wire fraud, began at least as far back as 1994, and certainly no later

4

than 1998. At that point, and accepting all of Plaintiffs' allegations as true, Plaintiffs knew or should have known that purported RICO injuries were taking place – if that were actually the case. The statutory clock therefore began running at that time.

It is difficult, even after repeated reading of the Complaint, to discern exactly what injury to Plaintiffs is alleged. However, to the extent that any such injury exists, it undisputedly occurred well before 2000. One thing at least is crystal clear in Plaintiffs' Complaint. Plaintiffs' awareness of their claimed injuries, and the alleged acts giving rise to them, existed long before the year 2000. Any subsequent alleged injuries are not additional and independent, but rather part and parcel of the same underlying injury – wrongful control and management of ASLET. *See Bankers Trust Co.* at 1103.

Taking Plaintiffs' allegations at face value, it is clear that long before 2000 they believed there existed a mountain of evidence, continuing reports of wrongdoing, ongoing injury, and discoverable and allegedly continuing fraud. And yet, Plaintiffs failed to file a Complaint until 2004. Plaintiffs' filing comes much too late. Plaintiffs' claims are time-barred, and their Complaint therefore should be dismissed.

II.   THE COURT LACKS PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS.

A court must have personal jurisdiction over each separate Defendant. *See Calder v. Jones*, 465 U.S. 783 (1984). In order to make a *prima facie* showing of this necessary element of their case, Plaintiffs must allege facts sufficient to establish personal jurisdiction over all the defendants. *See Ball v. Metallurgie-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

Under New York law, a plaintiff must demonstrate that the court has general jurisdiction over the defendant, *see* N.Y. C.P.L.R. § 301, or specific jurisdiction over the defendant with

5

respect to each claim, *see* N.Y. C.P.L.R. § 302. "If the exercise of jurisdiction is appropriate under [either] statute, the court must decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997).

Section 301 codifies the common law principle that a non-domiciliary is deemed to be "present" in the state if the non-domiciliary is "doing business" in the state when the action is commenced. *See Hinsch v. Outrigger Hotels Hawaii*, 153 F.Supp.2d 209, 212 (E.D.N.Y.2001); *Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439, 440 (1965); *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 581 N.Y.S.2d 283, 286 (1st Dep't 1992). A plaintiff must allege that the defendant was engaging in business "not occasionally or casually, but with a fair measure of permanence and continuity." *Lancaster*, 177 A.D.2d at 156. Critical to the analysis is "that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Thus, plaintiff is required to demonstrate more extensive contacts under general jurisdiction than specific jurisdiction because, in the case of general jurisdiction, a plaintiff must demonstrate *continuous and systematic* contacts rather than merely minimum contacts. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984) (emphasis added).

The Complaint concedes that Moving Defendants are not residents of the State of New York. *See* Complaint at ¶¶ 25-38. To demonstrate that this Court has general personal jurisdiction over Defendants, plaintiffs therefore must allege that each Defendant engages in "continuous and systematic" conduct in New York. Plaintiffs' Complaint, however, fails to allege any such "continuous and systematic" activity on the part of any of the Moving

6

Defendants. Indeed, Plaintiffs allege *no* facts which would satisfy their burden of proof on this issue.

    N.Y. C.P.L.R. §302, which governs specific jurisdiction, provides:

> (a)    As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1.    transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2.    commits a tortuous act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3.    commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> > (i)    regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> >
> > (ii)    expects or should reasonably expects the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4.    owns, uses or possesses any real property situated within the state.

    Plaintiffs do not allege that the individual Defendants transact any business within New York State or that they contract anywhere to supply goods or services in the state of New York. Plaintiffs appear to allege only that the Defendants have committed tortious acts outside the state causing injury to plaintiffs' person or property within the state. *See* Complaint at ¶ 12. However, in order to claim this basis of personal jurisdiction, Plaintiffs must also allege facts showing that the individual Defendants regularly do or solicit business in New York, or engage in another persistent course of conduct, or derive substantial revenue from goods used or

consumed or services rendered in New York State. Plaintiffs' failure to meet this burden is manifest -- they have not alleged such conduct, nor have they alleged that the Defendants derive substantial revenue from interstate or international commerce.[1]

Because plaintiffs fail to aver that the individual defendants' had either sufficient contacts or continuous contacts with New York, they have not made a *prima facie* showing of personal jurisdiction over Moving Defendants. Accordingly, their Complaint as to those Defendants should be dismissed.

III.  SERVICE OF PROCESS WAS INSUFFICIENT.

Plaintiffs' Complaint invokes the expanded service of process provisions of 18 U.S.C. § 1965(b). See Complaint at ¶ 12. Section 1965(b) provides:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States *by the marshal thereof.*

18 U.S.C. § 1965(b) (emphasis added).

Plaintiffs, however, have neither alleged nor shown that the ends of justice require that non-residents of New York must be brought to this District for prosecution of this case. Plaintiffs also have not demonstrated that the Court has indeed caused the parties to be summoned, or that all Defendants have been served with appropriate process. *See* Docket for Notices of Service. Finally, none of the Moving Defendants has been served by a marshal, as required by § 1965(b). Process has been served ineffectively, under the very statutory provision that Plaintiffs invoke. These insufficiencies mandate dismissal.

---

[1] Jurisdiction over ASLET, a nominal Defendant, even if it exists, does not confer jurisdiction over the individual Defendants.

IV.   PLAINTIFFS' RICO CLAIMS ARE INSUFFICIENT.

   A.   Plaintiffs lack standing under RICO.

      1. There is no individual standing.

The RICO standing requirement is satisfied only if the Plaintiff demonstrates that the commission of the RICO predicate acts proximately caused his injury. *See Donohue v. Teamsters Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds, et al.*, 12 F. Supp. 2d 273, 277 (E.D.N.Y. 1998) (citing to *In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 399 (2d Cir. 1994)). Furthermore, a plaintiff only has standing if he has been proximately injured in his business or property by the conduct constituting the violation. *See Donohue* at 277 (citing to *Sedima, P.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496

The purpose of civil RICO liability does not extend to deterring any illegal act, such as retaliatory firings, for which there are state and common law remedies. *See Donohue at 277* (emphasis added). Rather, the main goal of the RICO statute is to eradicate organized crime. *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988) (citing to *Cullen v. Margiotta*, 811 F.2d 698, 718 (2d Cir.), *cert. denied*, 483 U.S. 1021 (1987)). For example, in *Donohue*, the plaintiff argued that she suffered a loss to her "property" in that she was deprived benefits under ERISA which plaintiff claimed constitute "property." *See Donohue* at 277. The Plaintiff in *Donohue* argued that her property was taken away because her rights were extinguished by defendants' threats of violence and thereafter by her termination. *See id.* This Court rejected her arguments and found that lost rights "are too speculative and insufficient to confer standing under RICO." *Id.* at 278.

9