UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PHILIP MESSINA, GEORGE DEMETRIOU, Individually    Docket No. CV-04-0170 (TCP)
and on behalf of all other similarly situated and derivatively
on behalf of the AMERICAN SOCIETY OF LAW
ENFORCEMENT TRAINERS, INC.,

                    Plaintiffs,

  -against-

FRANK A. HACKETT, JR., ANDREW CASAVANT,
GREG MEYER, GARY T. KLUGIEWICZ, TIMOTHY
DEES, LISA KONRATH, MARY GIFFORD, DAVID
SMITH, DAVID GROSSI, JULIE LINKINS, WILLIAM
WESTFALL, DANIEL WATSON, GLENN YOUNG,
JOHN DOES 1-10,

                    Defendants.

------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

LAW OFFICES OF
**STEVEN M. LESTER**
325 MERRICK AVENUE
EAST MEADOW, NEW YORK 11554
TELEPHONE: (516) 357-0056

Attorneys for Plaintiffs

39

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Preliminary Statement | 1 |
| Argument | 2 |
| I. PLAINTIFFS' CLAIMS ARE TIMELY | 2 |
| II. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS | 7 |
| III. NEW YORK'S LONG-ARM STATUTE DOES NOT APPLY WHERE THE RELEVANT FEDERAL STATUTE PROVIDES FOR NATIONWIDE SERVICE OF PROCESS | 10 |
| IV. SERVICE OF PROCESS WAS PROPER | 12 |
| V. VENUE IS PROPER IN THIS DISTRICT | 13 |
| VI. APPLICATION OF THE RICO STATUTE IS NOT LIMITED TO ORGANIZED CRIME | 14 |
| VII. PLAINTIFF MESSINA, AND ALL OF THE MEMBERS OF ASLET, HAVE STANDING | 16 |
| VIII. PLAINTIFFS HAVE DERIVATIVE STANDING | 21 |
| IX. PLAINTIFFS ADEQUATELY ALLEGE RELIANCE & CAUSATION | 22 |
| X. SUFFICIENCY AND DISTINGUISHED NATURE OF THE ENTERPRISE | 23 |
| Conclusion | 24 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

PHILIP MESSINA, GEORGE DEMETRIOU §
Individually and on behalf of all other §
Similarly situated, and derivatively §
On behalf of the AMERICAN SOCIETY §
OF LAW ENFORCEMENT TRAINERS, §
INC. §
§
§  Docket No. CV-04-0170 (TCP)
§
§
§
§
Plaintiffs, §
v. §
§
FRANK A. HACKETT, JR., ANDREW §
CASAVANT, GREG MEYER, et al., §
§
§
§
§
§
Defendants. §

-------------------------------------------------------X

### PLAINTIFFS' MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

#### Preliminary Statement

For reasons unknown, the Moving Defendants introduce their Motion to Dismiss Plaintiffs' Complaint (the "Motion") with the claim that Plaintiffs' cite only "two predicate acts" as the basis for their RICO claims. This is at best, a simple mistake; at worst, a gross misrepresentation.

On page one of the Motion, the Moving Defendants incorrectly state that "Plaintiffs identify mail and wire fraud as the two predicate acts which support their

RICO claims." Perhaps, the Moving Defendants want this Court to believe that their acts are of a "garden-variety" fraud.

To the contrary, the Complaint lists over *30* separate predicate acts. The relevant statutes violated (that are predicate acts under RICO) include mail fraud, wire fraud, retaliating against a witness, and obstruction of justice. Plaintiffs respectfully suggest that the Moving Defendants' belief that they are before this Court for "two predicate acts" is symptomatic of their arguments, and are a desperate attempt to shield themselves from being called to answer for their systematic pattern of wrongdoing committed across the United States.

### Argument

### I.

### PLAINTIFFS' CLAIMS ARE TIMELY

Discovering a racketeering "pattern" that meets the requirements of "continuity and relationship", or suffering or discovering a "racketeering injury", is far different than relating individual acts of mail and wire fraud that occurred within ten years of the date of the filing of a Complaint. Such individual acts of mail and wire fraud, by themselves, do not make a pattern or, individually, result in an injury. But, when combined with the dozens of acts occurring in late 2002 and 2003, these acts constitute such a pattern and caused several distinct injuries in 2003.

Defendants' argument is also contrary to the law of this Circuit. The "separate accrual" rule has been adopted, where a separate limitations period starts running each time the plaintiff discovers a new injury caused by the defendant's violation of Section 1962. Bingham v. Zolt, 66 F.3d 553, 559 (2d Cir. 1995) ("a new claim accrues,

triggering a new four-year limitations period, each time a plaintiff discovers or should have discovered, a new injury caused by predicate RICO violations."); Bankers Trust Co. v. Rhoades, 859 F. 2d 1096 (2d Cir. 1998), *cert denied sub nom*, Rhoades v. Bankers Trust Co., 490 U.S. 1007 (1990); Durante Bros. And Sons, Inc. v. Flushing National Bank, 755 F. 2d 239 (2d Cir.), *cert denied* 473 U.S. 906 (1985), *on remand* 652 F. Supp. 101 (E.D.N.Y. 1986); Com-Tech Associates v. Computer Associates International Inc., 753 F. Supp 1078 (E.D.N.Y. 1990), *aff'd* 938 F. 2d 1574 (2d Cir. 1991); Landy v. Mitchell Petroleum Technology Corp., 734 F. Supp. 608 (S.D.N.Y. 1990) ("Each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to the plaintiff at the time he discovered or should have discovered the injury"); Moll v. U.S. Life Title Insurance Co. of New York, 654 F. Supp. 1012 (S.D.N.Y. 1987); Bankers Trust Co. v. Feldesman, 648 F. Supp. 17 (S.D.N.Y. 1986) (citing United States v. Feld, 432 F. Supp. 55, 59 (S.D.N.Y. 1977), *aff'd mem.* 578 F.2d 1371 (2d Cir.), *cert dismissed* 439 U.S. 801 (1978)).

Plaintiff Messina's RICO injuries, his financial losses caused by fees and expenses of investigating the RICO violations committed by the Defendants, did not occur until any earlier than December 26, 2002, when Messina was forced to file an action in the Delaware Court of Chancery to compel certain defendants to provide corporate books and records they were concealing from Messina and other plaintiffs as part of a clear and longstanding cover up. Certain of these records serve as clear and convincing evidence of fraudulent acts, utilizing the mails and interstate wires, committed by defendants in this action.

The financial losses at ASLET appear to have first surfaced in 2003, when Messina discovered that Hackett was using the "cash method" of accounting to hide unpaid bills and conceal the true nature of the corporation's finances, and that the membership, and local and federal law enforcement officers nationwide, were told in mid-2003 of the fraudulent nature of the "security" check performed by defendants (causing injury to law enforcement agencies and their employees at that time).

These financial injuries are separate and independent of any injuries that defendants claim the plaintiffs might have suffered earlier as a result of defendants' racketeering activities (that plaintiffs are not aware of). Bankers Trust Co. v. Rhoades, 859 F. 2d 1096, 1103 (2d Cir. 1988) (a civil RICO claim accrues each time " a new and independent injury is incurred from the same violation"). These concrete dates in December 2002, and in 2003, are the dates of the infliction by the defendants of financial losses suffered by Messina, the class, and the corporation, notwithstanding Defendants' claim that they cannot "discern exactly what injury to Plaintiffs is alleged" (Motion at 5). Notwithstanding these concrete dates where racketeering injuries were first suffered, the defendants' long- running efforts to obstruct justice (18 U.S.C. § 1512) by concealing and destroying corporate records, renders any statute of limitations argument advanced by defendants moot.

In Butala v. Agashiwala, 1997 U.S. Dist. LEXIS 1934 (S.D.N.Y. Feb. 24, 1997), the court held that the statute of limitations could be tolled where managers of a limited partnership covered up their fraud by distancing themselves from other wrongdoers. The court agreed with the plaintiffs that the statute of limitations should be tolled until the time when the plaintiffs actually learned of the defendant's role in the alleged fraud.

4

Here, Defendant Dees has already admitted (in a sworn statement filed in reply to a Subpoena issued by the Delaware Court of Chancery) that he destroyed these same corporate records related to alleged wrongdoing, upon the orders of defendant Hackett. Defendants have also concealed other records from Messina, until at, the earliest, January 16, 2003, when, after being told by the Honorable William B. Chandler, Chancellor of the Delaware Court of Chancery ("Chancellor Chandler"), and, upon information and belief, being forced by counsel to provide records to Messina, Defendant Hackett finally provided corporate records that that been concealed from, and denied to Messina, in clear violation of Delaware's General Corporation Law.

Defendants' cite to Tho Dinh Tran v. Alphonse Hotel Corp., 281 F. 3d 23 (2d Cir. 2002) is appropriate, but not for the reasons they proffer. In that case, the court noted that the statute of limitations can be tolled if the plaintiff establishes both that there was 'fraudulent concealment' of the violation and the plaintiff exercised "due diligence" to discover the claim (citing Klehr v. A.O. Smith Corp., 521 U.S. 179, 194-195 (1997)). "Under federal common law, a statute of limitations may be tolled due to the defendants' fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendants' wrongdoing; (2) the concealment prevented the plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) the plaintiff exercised due diligence in pursuing the discovery of the claim during the period the plaintiff seeks to have tolled." (citing Corcoran v. New York Power Auth., 202 F.3d 530, 543 (2d Cir. 1999), *cert. denied*, 529 U.S. 1109 (2000)).

Even assuming *arguendo* that plaintiff Messina, the class, or the corporation, suffered any cognizable injury before the year 2000 (which is denied), the defendants

5

cannot assert that any claim against them is time-barred. Defendant Dees has admitted to destroying relevant records, on behalf of Defendant Hackett, and defendants have misled, through the use of the mails and the interstate wires, plaintiffs regarding their actions, while Messina, exercising due diligence and his fiduciary duty as a corporate director under the law, filed suit to obtain the records fraudulently concealed from him. Defendants' notation of a "mountain of evidence" collected by Messina in his previous role as a member of the Ethics Committee (disbanded by defendant Klugiewicz as part of his effort to conceal wrongdoing) should be noted – several of the Defendants destroyed any such evidence. Defendant Dees has already admitted (in a sworn statement filed in reply to a Subpoena issued by the Delaware Court of Chancery) that he destroyed these same corporate records related to alleged wrongdoing, upon the orders of Defendant Hackett.

Defendants have also concealed other records from Messina, until at, the earliest, January 16, 2003, when, after being told by the Chancellor Chandler, and, upon information and belief, being forced by counsel to provide records to Messina, defendant Hackett finally provided corporate records that that been concealed from, and denied to Messina, in clear violation of Delaware's General Corporation Law.

Accordingly, injuries were first suffered by Messina no earlier than December 26, 2002, and financial losses due to accounting irregularities were first uncovered in 2003, followed by a hemorrhage of cash, as federal and state law enforcement officers abandoned the organization as a direct result of discovering the racketeering acts of the defendants.

6

In Old Republican Insurance Co. v. Hansa World Cargo Service, Inc., 170 F.R.D. 361 (S.D.N.Y. 1997), the court held under the Second Circuit rule there are two questions to be resolved in determining whether a RICO claim is time-barred: (1) when the plaintiff sustained the injury and (2) when the plaintiff knew or should have known of that injury. The court added that a plaintiff's "knowledge" runs from the date it discovered or should have discovered its specific injury, not the discovery of the bad act causing him injury. If an injury is speculative, the court noted, no RICO cause of action accrues until it becomes definite.

Since Messina first suffered financial injuries in late 2002, and first discovered the hidden losses and breaches at the corporation after obtaining records (that had been previously concealed from him by defendants) in 2003, Messina, as an individual directly targeted by those who had engaged in wrongdoing, and the corporation and class that Plaintiffs seek to represent, did not have knowledge of any injuries suffered any earlier than December 26, 2002. Accordingly, the Moving Defendants' argument that Plaintiff' claims are time barred is without merit.

## II.

### THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

Section 1965(b) of Title 18 of the United States Code authorizes nationwide service of process, which courts have recognized as authority for general jurisdiction over any entity or individual with sufficient contacts anywhere in the country.

For example, in Rolls-Royce Motors Inc. v. Charles Schmitt & Co., 657 F. Supp. 1040 (S.D.N.Y. 1987), which involved RICO as well as trademark infringement claims, the court agreed with Rolls-Royce that it had personal jurisdiction over a Missouri car

7

dealership's president, despite the absence of any tort in New York, simply because RICO allows for nationwide service of process: "When such nationwide service of process is authorized, a federal district court's jurisdiction is coextensive with the boundaries of the United States, [and] due process requires only that a defendant in a federal suit have minimum contact with the United States." Furthermore, in the interest of "judicial economy," the court retained jurisdiction over the pendent state law claims.

Similarly, almost every other federal court to address the issue has had little difficulty in finding civil RICO defendants amenable to suit in the plaintiff's chosen forum. These courts uphold personal jurisdiction over RICO defendants, generally using the following reasoning: Civil RICO claims invoke federal-question subject matter jurisdiction; thus, the law of the forum is federal law; and Congress has provided for nationwide service of process against civil RICO defendants. See National Asbestos Workers Medical Fund v. Philip Morris, Inc., 86 F. Supp. 2d 137, 139-140 (E.D.N.Y. 2000) (Section 1965(b) provides for nationwide service of process on co-defendants residing outside the forum); PT United Can Co., Ltd. v. Crown Cork & Seal Co., 1997 WL 31194, at *3-4 (S.D.N.Y. 1997) (same). Due process is satisfied for purposes of personal jurisdiction where the party has sufficient contacts with the United States as a whole – in other words, permitting nationwide service of process. In re Bridgestone/Firestone, Inc., Tires Prods. Liability Litigation, 2003 U.S. App. LEXIS 12514, at *11 (7th Cir. 2003).

Ordinarily, in cases where service on a non-resident defendant cannot be effected within a state, the plaintiff would have to rely on a state law governing "long arm jurisdiction". See, Fed. R. Civ. P. 4(e). However, Section 1965(b) of the Title 18, United

8

States Code, provides for service of process outside the federal court's district when it is shown that "the ends of justice require that other parties residing in any other district be brought before the court." The rationale for allowing nationwide service of process is to avoid a jurisdictional gap in which no single court could obtain jurisdiction *in* personam over all the defendants.

This is the same rationale used to support the "co-conspirator theory of venue" applied in multi-defendant securities cases. Under this theory, where an action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of securities statutes, if venue is established for any of the defendants in the forum district it is proper as to all defendants, even in the absence of any contacts by some of the defendants with that district. See, e.g., Securities Investor Protection Corp. v. Vigman, 764 F. 2d 1309, 1317 (9th Cir. 1985); Wright, Miller & Cooper, Federal Jurisdiction and Procedure, § 3824 (1976).

The Moving Defendants did not contest Plaintiffs' assertion that defendant American Society of Law Enforcement Training, Inc. transacts business within the district, and has maintained an agent (Messina) within the district. Accordingly, this court has jurisdiction over defendant ASLET, and the co-conspirators, all of which are jointly responsible for the common scheme of mail and wire frauds, and obstruction of justice, many of which targeted Plaintiff Messina, a resident of this in this district.

The "ends of justice" provision furthers the Congressional purpose of enabling plaintiffs "to bring all members of a nationwide RICO conspiracy before a court in a single trial," without unnecessarily sacrificing any defendant's interest in having the action litigated in a forum convenient to it. Butchers Union Local No. 498 v. SDC

9

Investment, Inc., 788 F.2d 535,539 (9th Cir. 1986). A showing establishing satisfaction of the "ends of justice" requirement need not be made prior to service on out-of-state defendants. Service will be deemed adequate under Section 1965(b) nunc pro tunc, upon a declaration that the "ends of justice" requirement had been satisfied. See Soltex Polymer Corp. v. Fortex Industries, Inc. 590 F. Supp. 1453, 1459 n.2 (E.D.N.Y. 1984).

### III.

### NEW YORK'S LONG-ARM STATUTE DOES NOT APPLY WHERE THE RELEVANT FEDERAL STATUTE PROVIDES FOR NATIONWIDE SERVICE OF PROCESS

In order to effect valid service of process, it must also be shown that the exercise of personal jurisdiction does not contravene any constitutionally protected right of the defendant. In International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme Court set forth the "minimum contacts" doctrine to be applied in determining whether due process will be afforded to defendants where a court asserts in personam jurisdiction over them. International Shoe and its progeny have required some "contacts, ties or relations" with the forum state in order to confer in personam jurisdiction over a defendant. The cases flowing from International Shoe, however, deal with a state court's jurisdiction over a non-resident defendant, generally by use of a state long-arm statute. Similarly, when a federal court is sitting in diversity, it is well settled that due process requires that the defendant have some "contacts, ties or relations" with the forum state in order to confer on that court personal jurisdiction over the defendant.

In contrast to the Moving Defendants' arguments, 18 U.S.C. § 1965(b) authorizes nationwide service of process. Where such nationwide service of process is authorized, a federal court's jurisdiction is co-extensive with the boundaries of the United States, and