Investment, Inc., 788 F.2d 535,539 (9th Cir. 1986). A showing establishing satisfaction of the "ends of justice" requirement need not be made prior to service on out-of-state defendants. Service will be deemed adequate under Section 1965(b) nunc pro tunc, upon a declaration that the "ends of justice" requirement had been satisfied. See Soltex Polymer Corp. v. Fortex Industries, Inc. 590 F. Supp. 1453, 1459 n.2 (E.D.N.Y. 1984).

### III.

### NEW YORK'S LONG-ARM STATUTE DOES NOT APPLY WHERE THE RELEVANT FEDERAL STATUTE PROVIDES FOR NATIONWIDE SERVICE OF PROCESS

In order to effect valid service of process, it must also be shown that the exercise of personal jurisdiction does not contravene any constitutionally protected right of the defendant. In International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme Court set forth the "minimum contacts" doctrine to be applied in determining whether due process will be afforded to defendants where a court asserts in personam jurisdiction over them. International Shoe and its progeny have required some "contacts, ties or relations" with the forum state in order to confer in personam jurisdiction over a defendant. The cases flowing from International Shoe, however, deal with a state court's jurisdiction over a non-resident defendant, generally by use of a state long-arm statute. Similarly, when a federal court is sitting in diversity, it is well settled that due process requires that the defendant have some "contacts, ties or relations" with the forum state in order to confer on that court personal jurisdiction over the defendant.

In contrast to the Moving Defendants' arguments, 18 U.S.C. § 1965(b) authorizes nationwide service of process. Where such nationwide service of process is authorized, a federal court's jurisdiction is co-extensive with the boundaries of the United States, and

due process requires only that a defendant in a federal suit have minimum contacts with the United States, and not any particular state. See, e.g., Federal Trade Commission v. Jim Walters Corp., 651 F. 2d 251,256 (5th Cir. 1981); Clement v. Pehar, 575 F. Supp. 436, 438 (N.D. Ga. 1983). Therefore, Section 1965 obviates the need to inquire into the applicability of the forum state's long-arm statute for the various defendants, or whether each defendant has sufficient "minimum contacts" with the forum state to satisfy the due process requirements of the Fourteenth Amendment.

Section 1965(a) of Title 18, the venue provision for civil RICO, is broader than the general venue provision found at 28 U.S.C. § 1391(b), in that it provides that a person may be sued for a RICO violation in any district in which such person "resides is found, has an agent, or transacts his affairs."

As previously mentioned, Defendants did not contest Plaintiffs' assertion (Complaint, ¶ 12) that Messina, recently the corporation's largest recruiter, and all time second largest recruiter of members, was a corporate director and an agent of the corporation, actively soliciting new members and disseminating written materials provided to him by the central office, bringing in substantial revenue to the corporation, from a fixed base of business within the Eastern District of New York.

As a result of Messina's acting as an agent and actively recruiting members, ASLET clearly transacted its affairs in a substantial manner with law enforcement officers and trainers within the Eastern District of New York. Of the corporation's approximately 5,000 members, at least 270 appear to reside within the State of New York, and the State is either the third of fourth largest source of members for the corporation from amongst the 50 states and foreign jurisdictions.

IV.

## SERVICE OF PROCESS WAS PROPER

Moving Defendants erroneously attack the personal service of process upon them, and refer to Section 1965(b) of Title 18, which authorizes service by U.S. Marshal in any judicial district of the United States where a defendant may be found, but does not require such service. "*[M]ay be served in any judicial district of the United States by the marshal*" (emphasis added) is far different than shall be served by the U.S. Marshal. Rather, the provision allows service of process by the U.S. Marshal if not normally authorized outside of a judicial district by Rule 4 of the Federal Rules of Civil Procedure.

However, Rule 4(e) of the Federal Rules of Civil Procedure allows service on a defendant in any judicial district of the United States by pursuant to the rules of the state by delivering a copy of the summons and complaint to that person in which the district court sits:

> (e) SERVICE UPON INDIVIDUALS WITHIN A JUDICIAL DISTRICT OF THE UNITED STATES. Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:
> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive serv-ice of process.

Moreover, Rule 4(k)(1)(D) makes effective jurisdiction of the court by service of a summons on a defendant when authorized by a statute of the United States:

> (k) TERRITORIAL LIMITS OF EFFECTIVE SERVICE.
> (1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant
> (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or
> (B) who is a party joined under Rule 14 or Rule 19 and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues, or
> (C) who is subject to the federal interpleader jurisdiction under 28 U.S.C. § 1335, or
> (D) when authorized by a statute of the United States.

In the instant action, all of the defendants were personally served, in several judicial districts of the United States, by licensed process servers in the states of Missouri, Virginia and Illinois, which service not only complies with Rule 4(e)(2), but also complies with Rule 4(e)(1), in that said personal service also complies with the laws governing service of process upon an out of state defendant in the state in which this district court sits. See N.Y. CPLR § 302(a).

Accordingly, service of process on the defendants was proper.

V.

**VENUE IS PROPER IN THIS DISTRICT**

Section 1965 of Title 18 allows suit to be brought in any district court where personal jurisdiction is established as to at least one defendant. Moving Defendants have not contested the clear fact that (non-moving) Defendant American Society of Law Enforcement Trainers, Inc. maintains an agent and transacts business in this district (Complaint ¶ 12).

Furthermore, Defendants have erroneously represented to the Court that no federal employee is being sued in his official capacity, and therefore venue in this district pursuant to 28 U.S.C. § 1391(e) is improper. Contrary to Defendants' assertions, Defendant Glenn E. Young, a security guard employed by the National Geo-Spatial Intelligence Agency in St. Louis, Missouri, was on duty when he committed the fraudulent acts alleged within the Complaint, and, pursuant to notice received by undersigned counsel, will be represented by the Department of Justice.

Accordingly, pursuant to 18 U.S.C §§ 1391(b) and (e), this court has jurisdiction over Defendant Young and Defendant American Society of Law Enforcement Training, Inc. Nationwide service is allowed over other parties not residing in the district, who may be additional defendants of any kind, if the ends of justice so require. PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65 (2d Cir. 1998). The purpose of authorizing nationwide service of process is to enable plaintiff to bring before a single court all members of a nationwide RICO conspiracy. Andrade v. Chojnacki, 934 F. Supp. 817 (S.D. Tex. 1996). Plaintiff Messina was serving as the agent for defendant corporation in this District, and resides in this District, wherein Defendant Young and others targeted him via fraudulent acts and retaliatory actions, and, accordingly, venue is proper in this District.

## VI.

### APPLICATION OF THE RICO STATUTE IS NOT LIMITED TO ORGANIZED CRIME

Moving Defendants apparently believe that, since neither the Board Enterprise nor the individual defendants are related to *La Cosa Nostra* (see Motion at 9), the federal RICO statute should not apply to them.

A RICO claim is not limited to those engaged in traditional organized crime. It makes unlawful the activities described in the Act, no matter who engages in them. National Organization of Women v. Scheidler, 510 U.S. 249, 260 (1994); H.J. v. Northwestern Bell Telephone Co., 492 U.S. 229, 245, 248-249 (1989); Moss v. Morgan Stanley, Inc., 719 F.2d 5, 21 (2d Cir. 1983); cert. denied 465 U.S. 1025 (1984); United States v. Campanale, 518 F.2d 352, 363 (9th Cir. 1975), cert. denied, 423 U.S. 1050, rehearing denied, 424 U.S. 950.

The court in U.S. v. Sisk, 476 F. Supp. 1061 (M.D. Tenn. 1979), held that a political entity or governmental agency may constitute an "enterprise" under RICO; the state governor's office was an "enterprise" under the statute with respect to charges that people in the office exercised the pardon and parole powers of the office through a pattern of bribery and extortion. In U.S. v. Grubb, 11 F.3d 426 (4th Cir. 1993), the office of the Judge of the Seventh Judicial Circuit was held to be an "enterprise" for RICO purposes. A county circuit court qualified as an "enterprise" under RICO in U.S. v. Blackwood, 768 F.2d 131 (7th Cir. 1985), cert denied, 474 U.S. 1020. A municipal court was held to be an "enterprise" for purposes of RICO in U.S. v. Sutherland, 656 F.2d 1181 (5th Cir. 1981), rehearing denied, 663 F.2d 101, cert. denied, 455 U.S. 949. In DeFalco v. Dirie, 923 F. Supp. 473 (S.D.N.Y. 1996), a municipality was held to be an "enterprise" for purposes of bringing a claim that municipal employees had extorted money from developers under the RICO Act.

Public and private entities may constitute a RICO "enterprise", including corporations, groups of corporations, partnerships, cooperatives, and benevolent and non-profit organizations (such as ASLET). United States v. Robilotto, 828 F. 2d 940 947 (2d

15

Cir. 1987), cert. denied, 459 U.S. 1071 (1982) (Local 294 of the International Brotherhood of Teamsters); United States v. LeRoy, 687 F. 2d 610, 616-17 (2d Cir. 1982), cert. denied, 459 U.S. 1174 (1983) (Local 214 of Laborers Union of North America); United States v. Scotto, 641 F. 2d 47, 51, 54 (2d Cir. 1980), cert. denied, 452 U.S. 961 (1981) (Local 1814 of the International Longshoreman's Association); United States v. Field, 409 F. Supp. 609 (S.D.N.Y. 1973), aff'd, 527 F. 2d 237 (2d Cir. 1975), cert. denied, 429 U.S. 819 (1976) (applying RICO to a union representing workers in a New York's fur garment manufacturing industry).

An enterprise, like the one here, may also be comprised of a combination of individuals and/or entities. United States v. Turkette, 452 U.S. 576, 581 (1981); United States v. Nabors, 45 F.3d 238 (8th Cir. 1995) (association-in-fact consisting of the defendants); United States v. Stefan, 784 F. 2d 1093, 1103 (11th Cir.), cert. denied, 479 U.S. 1009 (1986) (enterprise consisting of a group of individuals associated in fact sufficient where individuals identified by name).

The Moving Defendants' argument that only members and associates of traditional organized crime are subject to suit and prosecution under RICO is without merit.

## VII.

### PLAINTIFF MESSINA, AND ALL OF THE MEMBERS OF ASLET, HAVE STANDING

Contrary to Defendants' assertions, the injuries to Messina are not theoretical, or intangible, and do not consist of a loss of "voting rights" as the Moving Defendants' state (Motion at 10). Rather, Messina has spent thousands of dollars investigating and subsequently discovering Defendants' fraudulent activities, costs that are clearly

16

racketeering injuries. These costs flow directly from and are proximately caused by the acts of mail and wire fraud, and the obstruction of justice and retaliatory acts committed by the Defendants, directly targeting Messina.

Defendants' cite to <u>Donohue v. Teamsters Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Funds, et al.</u>, 12 F. Supp. 2d 273 (E.D.N.Y. 1998) highlights the non-responsive and/or outdated nature of Defendants' motion. Donohue was an *employment termination* action which held that a "retaliatory termination does not confer RICO standing." Not only is <u>Donohue</u> prior to the recent addition to Title 18 of the United States Code (Section 1513(e), created from the Sarbanes-Oxley Act, discussed below), but also it is an employment "firing" case (Donohue was terminated by a firing that was not a predicate act under RICO) that has no application here to Messina, who was never an employee of the defendant corporation or the individual defendants.

Messina has not been an employee, and was not terminated or injured indirectly by a local firing after reporting wrongdoing or failing to go along with wrongdoing, as in <u>Donohue</u> and similar cases. Messina was the intended victim of a major part of the racketeering pattern of mail fraud, wire fraud, obstruction of justice and retaliation against a witness/informant, in this matter.

Moving Defendants have apparently disregarded the facts set forth in Plaintiffs' Complaint, and the holding of the Second Circuit in <u>In re American Express Co. Shareholder's Litigation</u>, 39 F.3d 395 (Motion at 9). The holding in that case simply does not apply here, as alleged RICO violations were not the proximate cause of losses by American Express shareholders, because the shareholders were "not the intended

17

targets of the RICO violations".  In re American Express Co. Shareholder's Litigation, 39 F. 3d 395, 400.  American Express involved a scheme in which American Express published defamatory information about a commercial rival.  *Id.*, at 396-98.  The scheme was designed to impede the rival's quest for a license allowing it to enter the Swiss banking market in competition with a bank owned by American Express.  *Id.*  After the scheme was exposed, American Express paid $8 million in settlement.  *Id.* at 398.  The appeal was from the dismissal of a derivative action against American Express management for damages to the corporation.  The court held that "the shareholders of American Express were certainly not the intended targets of the RICO violations." *Id.* at 400.  Rather, the targets were a competitive rival and the Swiss regulatory authorities.  The harm to the shareholders was caused by the public exposure of the scheme and not by the scheme itself.  *Id.*  Instead, the targets were commercial rivals, other entities, and the Jamaican government.  Plaintiffs in American Express were injured by the fallout from the scheme's exposure.  Plaintiffs here have been (and are being) injured by acts of mail fraud, wire fraud, obstruction of justice and retaliation against a witness/informant *aimed directly at them.*

Furthermore, Moving Defendants conveniently have overlooked Section 1107 of the Sarbanes-Oxley Act, enacted in July 2002 (long after Donohue), to prevent retaliation against courageous men and women who had attempted to report crime in America's boardrooms (such as ASLET's).  This statute, codified as 18 U.S.C. § 1513(e) (a predicate act under RICO), criminalizes any action taken to interfere with the employment or livelihood of individuals who provide truthful information to federal law enforcement officers.

18

As discussed above, Moving Defendants, in their introduction, represented to this Court that they had only been charged with the RICO predicate acts of mail and wire fraud. Had Moving Defendants carefully reviewed the Complaint, they would have noted that Defendants conducted a campaign to directly retaliate against Messina and those associated in business with him, for his providing truthful information to federal law enforcement officers (e.g., Complaint at ¶¶ 188, 196). Messina has been directly victimized by predicate acts of racketeering, and as a result, has incurred thousands of dollars in costs. Those who purchased memberships in the corporation (the Class), and the corporation itself, have also been directly victimized by acts of fraud, retaliation, harassment and intimidation.

In addition, Moving Defendants' citation (Motion at 9) from Donohue, shows their lack of understanding, or concealment of, racketeering injuries inflicted by their conduct. Rather than suffering "lost rights" that "are too speculative", Messina, as has been subjected solely by the actions of Defendants directed at him, to thousands of dollars in expenses, while he struggles to obtain records that he, as a corporate director, was clearly entitled to under the law, in the Delaware Court of Chancery. The Defendants have attempted to subvert the state court by suborning perjury, intimidating witnesses, concealing documents and attempting to "bankrupt" Messina in order to continue the concealment of ongoing fraud at the corporation from Messina, the membership, and law enforcement officials. The costs related to Defendants' scheme and activities directed directly against Messina are recoverable as RICO injuries. Lemelson v. Wang Laboratories, 847 F. Supp 430 (D. Mass. 1994); Miller Hydro Group v. Popovitch, 851 F. Supp. 7, 8 (D. Me. 1994) (legal fees can be recoverable when the

19

"litigation costs stem from actual RICO violations"); see also Stochastic Decisions v. DiDomenico, 995 F.2d 1158 (2nd Cir. 1993) (upholding an award of attorneys' fees accrued in combating defendant's obstruction of collecting adverse judgments).

In The Philatelic Foundation v. Kaplan, No. 85 Civ. 8571, slip op. (S.DN.Y. May 9, 1986), dismissed in part, 647 F. Supp. 1344 (S.D.N.Y. 1986), plaintiff claimed as damages its expenses in connection with its investigation of the fraud and loss of income during the investigation. Defendants' motion to dismiss, *inter alia*, on the basis of lack of RICO injury, was denied. The court held that plaintiff's expenses investigating and rectifying the fraud were properly claimed under RICO. The court also held that the permissible damages and lost income included: loss of income as a result of the fact that work was halted on other matters to examine and correct records.

The expenses of an investigation to prevent business injury and to rectify such injury, damage to the plaintiffs' business, and injuries to the members of the corporation and to the corporation itself are concrete financial losses, caused directly by the defendants' fraudulent misrepresentations and omissions designed to defraud members out of their monies, which have resulted in actual losses to the members and their employing law enforcement agencies of over $1,000,000.00 over the past four years. Even by the standards of the Moving Defendants' constant state of denial, the loss of over $1,000,000.00 as a result of fraudulent acts by the defendants is clearly injury to property directly caused by the defendants' violations of 18 U.S.C. §§ 1341, 1343, 1512 and 1513. As previously mentioned, Defendants have mistakenly or conveniently forgotten that they have been charged with violations of 18 U.S.C. §§ 1512 and 1513, both predicate acts under RICO (in addition to the mail and wire fraud acts). Measures that seek to

retaliate against individuals such as Messina (and others aiding him) who provide truthful information to federal law enforcement (as Messina has) are simply felony violations of the most recent amendment to § 1513. Similarly, Defendants' scheme to obstruct justice, and corruptly persuade third-party witnesses not to testify in an official proceeding, is a felony violation of § 1512.

Thus, the Defendants' argument that Plaintiffs lack of standing is without merit

## VIII.

### PLAINTIFFS HAVE DERIVATIVE STANDING

As set forth in the Complaint, Plaintiffs have alleged that Defendants have concealed records, obstructed justice, and retaliated against witness/informants, all while conducting the affairs of the Board Enterprise. In paragraphs 74 through 120, Plaintiffs have recited the recent actions taken by Defendants.

In Subheading "S", and Paragraph 106 of the Complaint – conveniently overlooked by Moving Defendants – Plaintiffs allege Defendant Meyer's use of ASLET funds (with the approval and assistance of the members of the Board Enterprise) to attempt to oust Messina and end his investigation of wrongdoing so that their fraud and its cover-up could continue. Upon information and belief, based upon statements made to Plaintiffs by Defendant Dees in corporate communications, the Defendants have mailed or wired away over $250,000 of ASLET money in an attempt to conceal corporate records and cover-up their wrongdoing. Contrary to the Moving Defendants assertions, ASLET has suffered ruinous financial losses directly attributable to Defendants' use of ASELT funds to implement and cover-up their scheme of mail fraud, wire fraud, obstruction of justice and retaliating against a witness/informant.

With regard to the verification of the Complaint pursuant to F.R.C.P. 23.1, and the statement that the action is not a collusive one to confer jurisdiction on a court of the United States, Plaintiffs will cure these technical deficiencies in an amended pleading to be served and filed prior to the submission of this motion to the Court.

Defendants' arguments and attempts to avoid personal responsibility for siphoning ASLET funds in furtherance of their racketeering enterprise are without merit.

## IX.

### PLAINTIFFS ADEQUATELY ALLEGE RELIANCE & CAUSATION

The Moving Defendants' statement that Plaintiffs have failed to allege reliance on the fraudulent misrepresentations, made via the mails and interstate wires, and have failed to allege "clear injuries" to themselves caused by reliance is without merit. Defendants ignore the allegations in paragraph 182 of the Complaint, which clearly articulates that, relying on the misrepresentations described throughout the Complaint and received via the U.S. Mail, members of the corporation sent over $200,000 per year, with an average of over 4,000 mailings per year, with an average remittance of $45 per year per mailing. These funds constitute substantial and clear injuries to law enforcement officers and law enforcement agencies. Moreover, these funds were directly lost as a result of the reliance by Plaintiffs on the false and fraudulent misrepresentations promulgated through Defendants' acts of mail and wire fraud that are identified with great specificity in the Complaint.

## X.

### SUFFICIENCY AND DISTINGUISHED
### NATURE OF THE ENTERPRISE

Plaintiffs have provided great detail as to the existence and composition of the enterprise through which the Defendants affected interstate commerce (Complaint, ¶¶ 123-137). Most significantly, paragraph 135 of the Complaint, entitled "Distinction Between the Board Enterprise and Unlawful Activity", clearly delineates that there were other members of the enterprise, who may well have been innocent directors, and others, who are not defendants herein. Thus, the distinction between the Defendants charged herein, and the "Board Enterprise" that consisted of Defendants and many others, many of whom have not committed any illegal acts in support of the Enterprise, is clearly delineated in the Complaint.

In addition, Defendants' argument cites cases prior to the Second Circuit's holding in Pavlov. V. Bank of New York, 25 Fed. Appx. 70 (2d Cir. 2002) (the "enterprise need not necessarily have a continuity extending beyond the performance of the pattern of racketeering acts alleged, or a structural hierarchy," and "[w]e have repeatedly found a sufficient enterprise when the complaint alleges a group without centralized hierarchy formed for the sole purpose of carrying out a pattern of racketeering acts").

Plaintiffs respectfully suggest that the distinction between the Defendants and the Board Enterprise is clear, that the Moving Defendants know: (1) that current Board Member Robert Bragg has not been accused of any wrongdoing; (2) that Plaintiff Messina has served on the Board Enterprise; and (3) that other upstanding men and women have been members of the Board Enterprise without having committed any of

23

predicate acts that the Moving Defendants have committed. The Moving Defendants' argument is contradicted by ¶ 135 of the Complaint, and is, in any event, contrary to the current law of this circuit, and is, therefore, without merit.

### Conclusion

Plaintiffs respectfully submit that the Moving Defendants have willfully ignored the seriousness of the statutory violations (18 U.S.C. §§ 1341, 1343, 1512 and 1513) attributed to them; have willfully ignored the concept of federal question jurisdiction and minimal contacts with the United States, and continue to pose both a financial and security threat to American law enforcement officers, trainers, and agencies. Accordingly, the Moving Defendants' motion to dismiss the Complaint should be denied.

Dated: East Meadow, New York
April 5, 2004

                                            LAW OFFICES OF
                                            STEVEN M. LESTER

By: _____
Steven M. Lester (SL 2921)
Attorneys for Plaintiffs
325 Merrick Avenue
East Meadow, New York 11554
(516) 357-0056

## AFFIRMATION OF SERVICE BY FEDEX

**STEVEN M. LESTER,** an attorney admitted to practice in the Courts of the State of New York, affirms under penalty of perjury that on April 5, 2004, I served a true and correct copy of the annexed **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** upon the following attorneys at the address designated by them, by delivering a true copy of the same enclosed in a properly addressed envelope, with an official representative of Federal Express in East Meadow, New York.

| NAME AND PARTY | ADDRESS |
|---|---|
| McCARTER ENGLISH, LLP<br>Attn.: Paul A. Bradley, Esq. | Suite 1800, 919 N. Market Street<br>P.O. Box 111<br>Wilmington, Delaware 19899 |
| CATHERINE M. MIRABILE, ESQ.<br>Assistant United States Attorney | 147 Pierrepont Street<br>Brooklyn, New York 11201 |

Dated: East Meadow, New York
       April 5, 2004

_____
STEVEN M. LESTER