EFiled:  Apr  3 2006 11:13AM EDT
Transaction ID 10946128

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

## IN AND FOR SUSSEX COUNTY

JENNIFER HAAS, PHILIP MESSINA,
GEORGE DEMETRIOU,
ELIZABETH KENNEDY,
and EDWARD MANDELBAUM,

    Plaintiffs,

    v.

AMERICAN SOCIETY OF
LAW ENFORCEMENT TRAINERS, INC.,
a Delaware corporation,

    Defendant.

Civil Action No. _____

## VERIFIED COMPLAINT

Plaintiffs, upon knowledge as to themselves and upon information and belief as to all other matters, allege for their complaint as follows:

### Nature of the Action

1.    This is an action brought pursuant to Section 291 of the Delaware General Corporation Law, 8 Del. C. § 291 ("Section 291"), and Rule 149 of the Rules of the Court of Chancery, seeking appointment of a receiver for defendant corporation, said receiver to have the authority to: take charge of the corporation's assets, business and affairs, discharge its outstanding debts (including the monies owed Plaintiffs for reimbursements of director's expenses), and prosecute any and all actions that said receiver may see fit to commence and/or assume control of, for the purpose of recovering assets wasted and/or misappropriated by any corporate officers, directors, and/or employees.

2.    As detailed herein, defendant is an insolvent corporation beset by gross mismanagement and fraud and is wasting its current assets in a manner that: (i)

is harmful to creditors; (ii) has rendered the corporation unable to pay its current debts to Plaintiffs as they have matured in the usual course of business; and (iii) has created a deficiency in corporate assets with no reasonable prospect that its corporate purpose can be fulfilled in the face thereof.

3.  Plaintiffs have no adequate remedy at law.

### The Parties

4.  Plaintiffs Messina, Kennedy, Haas and Demetriou are members of the Executive Board (hereinafter "directors") of the corporation, are members in good standing of the corporation, and are creditors of the corporation. Plaintiff Haas is the current Secretary of the corporation, while Messina is the immediate past Treasurer of the corporation. Plaintiff Mandelbaum is and was at all times relevant hereto, a member in good standing of the corporation.

5.  Defendant American Society of Law Enforcement Trainers, Inc. (ASLET) is a Delaware non-stock, not-for-profit corporation formed for the advancement of law enforcement training, with a registered agent, Harvard Business Services, Inc. 16192 Coastal Highway, Lewes, Delaware, 19958. The corporation's principal place of business is in Frederick, County of Frederick, Maryland.

6.  ASLET was incorporated in Delaware on March 16, 1987.

7.  From sometime during the year 2001, ASLET has been beset by gross mismanagement and fraud in the operation of its business.

### ASLET's FINANCIAL FAILURE

8.  From a high of $400,000 in assets with no debt, in or about 2001, ASLET, as of March 07, 2006, now has current liabilities that exceed current unrestricted assets by over $140,000. Even if "restricted" assets (consisting of an "Endowment Fund" that had been dedicated solely to law enforcement scholarships) of $45,586.38 could be used for operating expenses, current liabilities still exceed total assets by approximately $95,000.

9.  Plaintiffs, who include four of the nine directors of ASLET, possess documentary evidence that clearly shows that ASLET is insolvent, in that its debts greatly exceed its assets, and it is unable to meet its obligations to

creditors as they arise in the usual course of business.

10.    Plaintiffs Messina, Haas, Demetriou and Kennedy are four of the nine directors of the corporation. Directors Patrick Martin, Robert Bragg, Kathleen Kelley, Christopher Scaglione and Christopher Yanuzzi comprise the majority of the Board.

### Defendant Is Insolvent and Defaults On Its Obligations

11.    Delaware has long recognized that a company is insolvent when it is unable to meet its obligations as they fall due in the usual course of business. ASLET's liabilities far exceed its assets and it is unable to pay its debts as they become due. In addition, the Defendant is unable to obtain any satisfactory scores from any of the financial/accounting measurement ratios that measure an organization's liquidity (the ability to pay debts as they come due), profitability (ability to make and maintain a profit) or long run solvency (ability to remain an ongoing concern).

12.    On February 8, 2006, ASLET Treasurer Christopher Yannuzzi notified the directors of the corporation that "The Sky is Falling" (see e-mail message attached as Exhibit A). Mr. Yannuzzi further advised that his plan was "to string things out as long as possible" (Exhibit A). When pressed for a true and honest plan, Treasurer Christopher Yannuzzi admitted, on March 03, 2006, he has no plan (Exhibit B).

13.    In this case, ASLET has proved unable to satisfy amounts owed to Plaintiffs and other creditors. These amounts have come due in the regular course of ASLET's business. By virtue of ASLET's failure to pay these amounts from its funds, and its failure to obtain additional financing to cover the amounts due, ASLET has become insolvent.

14.    An electronic mail message from the Treasurer sent on March 1, 2006, delineated bills currently payable of $151,267.03 and current assets of $59,667.57. Of these current assets, $45,586.38 are restricted assets, in that they were solicited from the public with the promise of being used solely for scholarships and, under ASLET's Bylaws, are prohibited from being used for ongoing business expenses. By any definition, Defendant is insolvent.

15.   Despite its insolvency, ASLET has not indicated any intention to liquidate. Rather, ASLET continues to expend funds and incur additional expenses, thereby further impairing its financial condition. Should ASLET be allowed to continue in this manner, its creditors and members will continue to suffer irreparable harm.

### Defendant is Beset By Gross Mismanagement and Fraud

16.   Delaware law has recognized that a receiver may be appointed when a corporation is beset by fraud and/or gross mismanagement, or there exists extreme circumstances causing imminent danger of great loss which cannot otherwise be prevented.

17.   ASLET has, unfortunately, suffered from corporate mismanagement and fraud, since at least the year 2001. Great financial losses have already accumulated, will certainly accelerate, and now pose a danger to the defendant, its creditors, and to the public (as ASLET is a public charity with an obligation to the public under Delaware law).

18.   In early 2001, Director Messina was asked by ASLET members to look into several financial dealings of the (then) recently recruited ASLET Executive Director, Frank A. Hackett ("Hackett").

19.   Shortly thereafter, it was learned that Hackett had obtained the Executive Director's position using a "PhD degree" granted by "La Salle University" of Mandeville, Louisiana, "a sophisticated diploma mill", which was subsequently closed after a raid conducted by the Federal Bureau of Investigation. In the fall of 1997 (according to detailed congressional testimony provided by Mary Lee Warren, Deputy Attorney General of the United States), "all management officials at La Salle were convicted of various charges of mail fraud, wire fraud and money laundering".

20.   Pursuant to his fiduciary obligations as a director of a Delaware corporation, Messina began to request records and explanations from Hackett and others regarding questioned financial activities and his claimed "PhD". Messina's requests were refused and Messina, on December 26, 2002, was forced to file an action in this Court (CA 2244-S) pursuant to Section 220 of the

DGCL, seeking books and records of the corporation.

21.    Hackett, acting in concert with others, paid and accrued legal expenses of at least $249,000 unsuccessfully fighting Director Messina's "220 Demand" and unsuccessfully attempting to remove Director Messina from the Executive Board through machinations that were clearly contrary to Delaware law. Said defense was improper and unnecessary. Upon information and belief, legal fee expenditures of only $15,000 were approved by the ASLET Executive Board.

22.    On January 16, 2004, Messina and Demetriou individually, and derivatively on behalf of members of the corporation, filed a civil action ("the Complaint"), Case No. 04-cv0170, in the United States District Court for the Eastern District of New York against Hackett, eight other directors of the corporation, and three individuals aiding and abetting their activities. The Complaint, *inter alia*, seeks recovery on behalf of the members of the corporation for monies allegedly misappropriated through acts of mail fraud, wire fraud, racketeering conspiracy, substantive racketeering, breaches of fiduciary duty and corporate waste.

23.    This action was removed to the District of Delaware upon motion of defendants' therein counsel, and is now pending before the Honorable Joseph J. Farnan, Jr. in the United States District Court for the District of Delaware (Case No. 05cv00344).

24.    Subsequent to the filing of the afore-referenced action, Hackett resigned his position.

25.    Despite Hackett's destruction of the corporate treasury in an unsuccessful attempt to ignore Section 220 of the DGCL, and the improper attempts to remove a director performing his fiduciary duties, Messina was re-elected as a director by the ASLET membership in January 2005, and again in January, 2006, each time receiving the highest number of votes of any candidate running for the nine available Board positions.

26.    On April 20, 2005, ASLET received a report from a Special Outside Counsel, one of the nation's foremost criminal tax attorneys, who is a former member of ASLET. This report advised ASLET that the ASLET Board should "retain qualified counsel together with expert assistance in Delaware corporation

litigation and corporate counsel practice ethics to determine:

    a)    To what extent fees paid to outside parties were improperly incurred/paid; to the extent any were properly incurred, were they overcharged. Such a review should focus on determining whether actions in representing ASLET were improper in the first instance and performed negligently.

    b)    Whether there is any claim against prior directors or the Executive Director (or any insurance carrier having coverage for such losses) for disloyalty or misconduct including by defending the Delaware lawsuits rather than producing records as required by law, and/or causing ASLET to incur legal fees and other expenses needlessly."

27.    On June 13, 2005, ASLET received a report from a Legal Issues Committee, comprised of a well-respected law enforcement trainer/attorney who formerly held a senior position in the United States Department of Justice and a highly respected corporate attorney. The report fully concurred with the Special Counsel Report and added:

"The Committee recommends that ASLET immediately seek out and retain qualified Delaware and/or Maryland counsel to analyze and/or pursue, as appropriate, the specific recommendations pertaining to:

    1.  the propriety of fees incurred by, and paid to, (outside counsel), including possible over billing claims,

    2.  potential claims against prior Board members or Executive Director for possible disloyal conduct and breach of fiduciary duty to ASLET, including possible improper use of ASLET funds for personal purposes, and

    3.  potential conflict of interest and negligent representation claims against (outside counsel).

The Committee further believes that the Board should seek out and retain said counsel as soon as possible, due to potential statute of limitations implications for pursuing some or all of these claims. The Committee suggests that the Board appoint the ASLET Treasurer to lead the effort to identify and retain qualified counsel, on a contingent fee basis if necessary, to implement the above recommendations and pursue recovery of monetary

and other damages, as appropriate, resulting from any potentially misspent ASLET funds, breaches of fiduciary duties, etc.

Finally, the Committee recommends that, should retained counsel determine that (outside counsel) breached its fiduciary responsibilities to ASLET during its representation, that ASLET consider filing formal complaint(s) with the appropriate Bar discipline agencies and/or organizations."

28.     On January 3, 2006, a Special Litigation Advisory Committee appointed (by the previous Executive Board) to study the derivative claims contained in the Complaint filed by Messina and Demetriou, found the complaint to be meritorious and on point. The committee recommended that ASLET adopt the plaintiff's action and prosecute the derivative claims against former directors and others, in order to recover funds allegedly taken from the corporation. The committee report also attacked the lack of management controls at ASLET.

29.     On January 18, 2006, the ASLET Executive Board voted to accept the recommendation of the Special Litigation Advisory Committee and adopt the derivative claims made in the suit for the purpose of attempting to recover funds improperly taken from ASLET, and salaries paid to those who breached their fiduciary duty of loyalty.

30.     Plaintiffs are aware, however, that "legal strategy" was discussed at the aforementioned Board meeting (by the non-plaintiff directors), delineating how the Executive Board might deceive the District Court and the claimants in the prosecution of the action.

31.                          At that meeting, former ASLET Director Mary Gifford, a current defendant in the pending civil action, asked a "hypothetical" question to (then) Board Chair Robert Bragg of "what would happen if we voted to adopt the litigation and then did nothing". The ASLET "Parliamentarian", a member of the Minnesota Bar, was immediately asked by Board Chair Bragg for her opinion. The "Parliamentarian" responded with a comment to the order of "it would go away".

32.     After notifying United States District Judge Farnan, via counsel's letter dated January 26, 2006, that ASLET intended to assume control of the

derivative action against its former directors, the Executive Board simply did nothing and ASLET's new Board Chair manifested his intent to let the pending action falter, contrary to the corporation's written representation to the District Court.

33.          ASLET has failed to provide for subsequent payment to counsel in the civil action, failed to provide payment for audits of legal fees and corporate records requested by counsel, but has found time to send, with ASLET funds, two directors and one of their friends to Las Vegas, during February, on a "Promotional" trip that had no chance of recovering the funds advanced. All of this activity occurred with full knowledge that the requisite steps had not been taken to fulfill ASLET's commitment to the U.S. District Court, or to its myriad of creditors.

34.    In addition to actively deceiving the District Court and the parties litigating therein, ASLET is only now beginning to grasp the financial mismanagement and wrongdoing of its recently departed "Assistant Executive Director", who resigned during the corporation's annual seminar on January 20, 2006.

35.    During the last several months of her employment, the former Assistant Executive Director ("AED") had been continually requested to provide Messina with financial records, including, but not limited to: reconciled balance sheets, copies of paid invoices, and details of donations and registrations.

36.    While controlling the office, and the books and records of the corporation, the former AED had simply ignored Messina's demands, or asked for and received assistance from non-plaintiff directors. These directors ran interference for her with Messina and specifically authorized her to withhold records from Messina, (then) the Treasurer of the corporation. (see attached e-mail from the prior Board Chair, Robert Bragg, attached as Exhibit C).

37.    Despite the demands of Messina, who was attempting to fulfill his fiduciary duties as Treasurer and Director, non-plaintiff members of the Executive Board colluded and/or conspired with the AED to withhold documents and information that would have revealed continued waste, mismanagement, and fraud.

38.    During her tenure, the former AED appears to have inflated the assets of the

corporation; knowingly misstated the revenue received from the annual seminar; and improperly removed funds from the (restricted) Endowment Fund without the required approval of the Executive Board.

39.    While employed by ASLET, and while a member of the Executive Board, the former AED, upon information and belief, instituted plans to organize a competing police training organization, utilizing, upon information and belief, the ASLET membership list that was, and remains, the property of ASLET. Upon suddenly leaving ASLET'S employ in the midst of its annual seminar, she deleted all of her electronic messages from an ASLET computer (in violation of federal law).

40.    Defendant ASLET is in default on invoices owed to its outside auditor for its annual financial audit for the fiscal year ended March 31, 2005.

41.    In addition, ASLET has failed to provide the minutes of Executive Board meetings requested by the auditor, who has, as a result of said failure, refused to provide a final audit without the requested minutes.

42.    On January 31, 2006, in an e-mail message in which he copied the entire Board, the current Treasurer notified Board member and co-plaintiff, George Demetriou that he was aware that ASLET's outstanding bills totaled more than three times its operating capital. Subsequent to that date the Board accrued thousands of dollars of expenses. After that date, even though the Treasurer knew that ASLET was insolvent, certain directors were reimbursed by the Treasurer (including himself) and monies were advanced to some directors to attend a Trade Show in February in Las Vegas, which held no reasonable expectation of gaining a net profit for ASLET (or even of recovering its costs.)

43.    On March 21, 2006, Board Chair Patrick Martin notified all of the corporation's directors that he had "consulted" with legal counsel concerning "bankruptcy". Martin stated that filing for bankruptcy protection for ASLET was not feasible. Martin made no mention of how the corporation would address the over $151,000 in current debts utilizing its unrestricted assets of approximately $2,100. Martin further articulated that bankruptcy would impede the corporation's business plans. Unfortunately there are no business plans other

than to "string out the creditors", raise money via a "membership drive",
"promote the upcoming seminar" or "negotiate with the creditors".

44.     On March 27, 2006, the final explanation for why ASLET is insolvent
surfaced in an electronic-mail message from the ASLET Treasurer to the
Executive Board. The Treasurer stated that the "expenses" for the 2006 Annual
Meeting and Seminar held in late January 2006 in Albuquerque, New Mexico,
had been $202,851, compared to expenses of $45,891 for the same event held
in January, 2005 in Jacksonville, Florida. As revenues only increased from
$186,262 to $208,027, the resultant disappearance of the normal $100,000 plus
profit on the annual seminar doomed ASLET to failure.

45.     Upon information and belief, only gross mismanagement and/or fraud could
account for seminar "expenses" ballooning to a level never approached in
twenty years of operations.

46.     Plaintiffs respectfully submit that the true reason for the non-plaintiff
directors not  filing a Petition for Bankruptcy Protection under Title 11 of the
United States Code ("Bankruptcy Code") is to avoid the appointment of a
Trustee under the Bankruptcy Code, as such an event would result in an
extensive review of recent and past actions of ASLET's directors and officers.

47.     Similarly, Plaintiffs respectfully submit that the true reason for the non-
plaintiff directors not fulfilling their responsibilities of pursuing claims against
former directors is to protect their friends and associates, and perhaps
themselves, to the detriment of members and creditors of the corporation.

48.     The majority of management has simply proven themselves unable and
unwilling to conduct the affairs of ASLET with due and proper regard for the
rights of creditors, members, and the public and private donors who rely on the
good faith management of a non-profit tax-exempt charity.

49.     Absent the appointment of a receiver, existing creditors will be defrauded,
membership money will be collected from unsuspecting law enforcement
officers, law enforcement agencies and well-intentioned donors, and spent on
antecedent debts (knowing that the corporation can, in no way, survive to
provide promised services to the members). Third parties (who will be solicited

to provide goods and services) will become new creditors that a reasonable director would or should know will never be paid. The public welfare, the primary duty of a non-stock, Section 501(c)(3) corporation will be seriously harmed.

**WHEREFORE,** Plaintiffs pray that the Court, pursuant to Section 291 of the DGCL, and Rule 149 of the Rules of The Court of Chancery:

    a.     Appoint such person or entity as the Court deems proper and issue an Order that said Receiver be authorized with the same powers provided in 8 Del. C. § 279, including but not limited to:

        1) the power to assume all management control of the corporation, its books, assets, business and affairs;

        2) to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, that may be necessary;

        3) to discharge its outstanding debts as he/she deems appropriate;

        4) and grant such other powers as the Court deems necessary;

    b.     Waive the provisions of Court of Chancery Rules 148 through and including 168 pertaining to the duties of Receivers; and

    c.     Grant such other relief as the Court may deem just and proper.

Jennifer Haas

Philip Messina

George Demetriou

Elizabeth Kennedy

Edward Mandelbaum
711 N. Wellwood Avenue
Lindenhurst, New York 11757
(631) 226-8383
Plaintiffs Pro Se

Dated: March 31, 2006