McCarter & English, LLP
Suite 1800
919 N. Market Street
P.O. Box 111
Wilmington, DE 19899
tel 302.984.6300
fax 302.984.6399
www.mccarter.com

James J. Freebery
Partner

jfreebery@mccarter.com



McCARTER & ENGLISH
ATTORNEYS AT LAW

September 29, 2006

**VIA E-FILE AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:  Philip Messina and George Demetriou, individually and on behalf
of all others similarly situated, and derivatively on behalf of
American Society of Law Enforcement Trainers, Inc. v.
Frank A. Hackett, Jr., Andrew Casavant, Greg Meyer, Gary T. Klugiewicz,
Timothy Dees, Lisa Konrath, Mary Gifford, David Smith, David Grossi,
Julie Linkins, William Westfall, Daniel Watson, Glenn Young, John Does
1-10 and American Society of Law Enforcement Trainers, Inc.
C.A. No. 05-344 JJF

Dear Judge Farnan:

This office represents Frank A. Hackett, Jr., Andrew Casavant, Greg Meyer, Gary T. Klugiewicz, Timothy Dees, Lisa Konrath, Mary Gifford, David Smith, David Grossi, Julie Linkins, William Westfall and Daniel Watson ("Defendants"),[1] all former board members of the American Society of Law Enforcement Trainers, Inc. ("ASLET"), in connection with the above captioned RICO Complaint (D.I. 52) (A2-A78) filed by Plaintiffs Philip Messina ("Messina") and George Demetriou ("Demetriou") (collectively "Plaintiffs"). Pursuant to Your Honor's August 23, 2006 Order (D.I. 82) (A79-A80), Defendants were permitted leave to renew their Motion to Dismiss ("Motion")(D.I. 63) (A81-A85). Defendants notified the Court of their intent to renew the Motion. (D.I. 84) (A1). This is Defendants' Supplemental Letter Brief in Support of their Motion to Dismiss the Complaint.

---

[1] Glenn Young is listed in the caption as a Defendant. Mr. Young was employed by the National Geospatial-Intelligence Agency and was represented by the United States government. Mr. Young has since been dismissed from this litigation.

The Honorable Joseph J. Farnan, Jr.
September 29, 2006
Page 2



## INTRODUCTION

Defendants respectfully suggest that Plaintiffs' RICO Complaint should have been dismissed with prejudice in the Eastern District of New York over two years ago. Nonetheless, the substantive arguments in support of Defendants' Motion, filed in February 2004, remain valid and ripe for determination. Plaintiffs' Complaint, an unintelligible and uniformed effort by a self-styled guardian of corporate rights, attempts to lodge federal RICO allegations against a corporation's board of directors, apparently, because the board has not acted to Plaintiffs' liking. The RICO statute, however, was not intended to support a crusade by an embittered board member who insists upon unending attacks upon the corporation, its policies, its board members, and its other board affiliates. Plaintiffs' Complaint fails to state a claim as a matter of law under RICO, does not articulate RICO damages and thus, should be dismissed.

Plaintiffs further fail to state any colorable corporate claim as they lack both individual and derivative standing to pursue any claims against ASLET's directors on behalf of the corporation. To remove any doubt of this conclusion, the last of Plaintiffs' paranoid corporate accusations were dismissed in April of 2004 by Chancellor William B. Chandler, III of the Delaware Court of Chancery. (A86-A93).

Finally, Plaintiffs were afforded numerous opportunities by Defendants, the Chancery Court, the Federal Court in the Eastern District of New York, and this Court, to articulate valid claims. Plaintiffs' repeated failures to timely clarify such claims and to prosecute this ill-fated Complaint are an additional ground for dismissal.

Messina's unfounded RICO Complaint is all that remains of his improvident decade long witch hunt. Chancellor Chandler extinguished all corporate and derivative attacks at the state level. ASLET, now in the twilight of its existence, has filed Chapter 7 bankruptcy. (D.I. 80, 81) (A94-A95) Plaintiffs' conspicuous failure to clarify and prosecute their Complaint as ordered by this Court has doused any future promise that Plaintiffs are capable of carrying their torch further. The dying embers of Plaintiff Messina's one man blaze against ASLET and its former Board members can now securely be snuffed out. Respectfully, his implausible and unfounded conspiracy theories must now be laid to rest, and Plaintiffs' Complaint should be dismissed.

## BACKGROUND

On January 16, 2004, Plaintiffs, "[i]ndividually...and derivatively on behalf of [ASLET]" filed a 72 page, 245 paragraph Complaint in the United States District Court for the Eastern District of New York. ASLET is a volunteer, non profit organization. In response Defendants filed their Motion on February 20, 2004 arguing, *inter alia*, that: (1) Plaintiffs failed to state a claim under RICO; (2) Plaintiffs' claims were time barred; (3) the Court lacked personal

The Honorable Joseph J. Farnan, Jr.
September 29, 2006
Page 3



jurisdiction; (4) service of process was insufficient; and, (5) Plaintiffs lacked individual and derivative standing to bring such claims on behalf of the corporation. Defendants also moved to dismiss the case from the Eastern District of New York through improper venue and forum *non conveniens* arguments.

Based in part on Defendants' Motion, the Honorable Thomas C. Platt of the Eastern District of New York dismissed Plaintiffs' Complaint without prejudice, allowing Plaintiffs to transfer the case to this Court. In May 2005, Plaintiffs finally got around to transferring their case to Delaware for resolution. Thereafter, Plaintiffs and their counsel failed to appear for both a July 13, 2005 status conference and a July 22, 2005 motion hearing. (*See* Transcript of July 22, 2005 Hearing ) (A96-A101) The Court, left with no choice but to rule on Defendants' transferred Motion, took the Motion under advisement.

On August 2005, Robert D. Goldberg, Esq. entered his appearance on behalf of the ASLET Board (the "Board") and David L. Finger, Esq. appeared on behalf of Plaintiffs; likely recognizing considerable issues with respect to Plaintiffs' claims, they requested a stay to "take remedial measures as to some or all of the matters raised by Plaintiffs in the Complaint. Such action could limit the issues in this case, or possibly eliminate the need for litigation." On October 25, 2005, based on Messrs. Goldberg and Finger's joint representations made in their Motion to Stay (D.I. 68) (A102-A108), this Court stayed the litigation and gave Mr. Goldberg and Plaintiffs until January 27, 2006, to present their plans for prosecuting this litigation.[2] On the eve of the Court imposed deadline to respond, Mr. Goldberg notified the Court that the ASLET Board wished to substitute ASLET in lieu of the individual Plaintiffs--apparently in some sort of Board assumption of the claim, which was never authorized and never materialized-- but that the Board had not yet determined how to proceed. (D.I. 76) (A109) Like smoke in the wind, however, Plaintiffs thereafter vanished. (*See* March 2, April 12, and June 22, 2006 status letters from counsel at A110-A126).

On July 14, 2006, following a Board vote, ASLET decided to wind up its corporate affairs and filed for Chapter 7 bankruptcy. (D.I. 80, 81) (A94-A95). Notwithstanding the Court's January clemency order, now, nine months later, neither the ASLET Board nor the individual Plaintiffs have made any attempt to substitute parties or take any action. On August 23, 2006, this Court demanded by September 7, 2006 an update and explanation from Plaintiffs of their continuing inaction. Not surprisingly, Plaintiffs' response again requested yet more time to act. Plaintiffs once again now find themselves unable to secure counsel willing to present their

---

[2] In doing so, the Court also denied without prejudice and with leave to renew this, Defendants' Motion.

The Honorable Joseph J. Farnan, Jr.
September 29, 2006
Page 4



claims to the Court.[3]  On September 15, 2006 Defendants renewed their Motion. They now file this letter brief in support thereof.

## ARGUMENT

I. <u>Plaintiffs' Failure To State A Claim For Relief Under RICO Requires Dismissal Of Their Complaint</u>.

    *A.    Plaintiffs Lack Standing To Assert Their RICO Claims Because They Fail To Articulate A Cognizable Injury Compensable Under RICO.*

It is difficult to discern exactly what injury Plaintiffs claim they sustained. It is clear, however, from Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Answering Brief") (D.I. 65) (A174-A201), that the only injury posited even by Plaintiffs is Messina's "financial losses caused by fees and expenses of investigating the RICO violations." (Answering Brief at 3, 4, 6, 7, 16, 19) "[T]he injuries to Messina are not theoretical, or intangible, and do not consist of a loss of 'voting rights' as the [D]efendants state. Rather, Messina has spent thousands of dollars investigating and subsequently discovering Defendants' fraudulent activities, costs that are clearly racketeering injuries." (*Id.* at 16-17). Despite Plaintiffs' protestations, such an injury (1) is not cognizable under RICO, (2) is not the product of any alleged racketeering activity, and (3) as shown in Section II below, is time barred by the statute of limitations. (*See* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Opening Brief") (D.I. 64) (A130-A173); *see also* Reply Memorandum of Law in Support of Motion to Dismiss ("Reply Brief") (D.I. 66) (A202-A232)).

Plaintiffs' RICO claim, as far as Defendants can tell, is that the Defendants as individual ASLET Board members conspired to take action which Plaintiffs assert was fraudulent, and that Defendants thereafter endeavored to keep Plaintiffs in the dark about such action causing Messina "thousands of dollars" in investigative fees and costs. In order to have a standing under RICO to maintain such a claim, however, Plaintiffs first must meet the injury and causation requirements set forth in §1964(c). *Dow Chemical Company v. Exxon Corp.*, 30 F. Supp. 2d 673, 695 (D. Del. 1998). The Supreme Court examined the standing requirement of 18 U.S.C. §1964 in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992). The Court found that Congress modeled §1964(c) on the Clayton Act, and thus that a plaintiff's right to sue under RICO, as under the federal antitrust laws, requires a showing that the alleged violation was the proximate cause of the plaintiff's injury. *See Id.* at 267-68. The Court looked to the common law for guidance in defining the proximate cause requirement. In so doing, it focused primarily

---

[3] Phillip Messina, in his website update of the events related to his fanatical crusade, admits that he is unable to find counsel willing to forward the claims to any court. See www.asletupdates.com/ (9/28/2006) (A127-A129).



on one element of proximate cause: the directness of the relationship "between the injury asserted and the injurious conduct alleged." *Id.* at 268. This requirement of a direct relationship was held to generally preclude recovery by "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts." *Id.* at 268-69. Here, however, such harm is the very essence of Plaintiff's claimed injuries

The Third Circuit held in *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842 (3d Cir. 1996), that "antitrust standing principles apply equally to allegations of RICO violations." *Id. (citing Holmes* at 270; *see also Associated General Contractors Inc. v. California State Council of Carpenters,* 459 U.S. 519 (1983). The Third Circuit recently clarified this rule, when it held that courts should consider the following six factors in determining whether proximate cause giving rise to standing under RICO exists: "(1) the causal connection between defendant's wrongdoing and plaintiff's harm; (2) the specific intent of defendant to harm plaintiff; (3) the nature of plaintiff's alleged injury ⋯; (4) 'the directness or indirectness of the asserted injury' ; (5) whether the 'damages claim is ⋯ highly speculative'; and (6) 'keeping the scope of complex antitrust trials within judicially manageable limits,' i.e., 'avoiding either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other.'" *Anderson v. Ayling,* 396 F.3d 265, 270 (3d Cir.2005) (*quoting Steamfitters Local Union No. 420 Welfare Fund,* 171 F.3d 912, 924 (3d Cir.1999)).

Plaintiffs thus must demonstrate that the alleged violation was not only the "but for" cause of their injury but also the proximate cause. *See, Holmes,* 503 U.S. at 267-68. Here, no such direct relation has been or can be alleged. The injury Plaintiffs assert is itself so elusive that Defendants are unclear about what damages Plaintiffs actually seek. Plaintiffs in the instant action indeed have failed to assert any causal connection between the alleged injuries and any supposed actions taken by Defendants. Their damages claim is inherently speculative. No specific intent to do them harm exists. Plaintiffs, neither individually nor derivatively, have standing to sue under RICO.

Plaintiffs' Complaint also founders on another standing related requirement – their failure to allege that the commission of RICO predicate acts proximately caused their injury. *Donahue v. Teamsters Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds, et al.,* 12 F. Supp. 2d 273, 277 (E.D.N.Y. 1998). Plaintiffs have standing only if they have been proximately injured in their business or property by the conduct constituting the violation. *Id.* at 277 (*citing Sedima, P.P.R.L. v. Imrex Co., et al.,* 473 U.S. 479, 496 (1985). Plaintiffs have failed to allege any injury to their individual businesses or properties as required by statute and have further failed to allege any causal relationship between the Defendants' alleged violations and any injury this Court has recognized as conferring RICO standing.



The investigative costs Plaintiffs assert certainly do not constitute an injury caused by the racketeering activity. In *Philatelic Foundation v. Kaplan*, a case cited by Plaintiffs in their Answering Brief, the Southern District of New York held that "...while the expenses of an investigation to prevent business injury or to rectify it is recoverable damage, *the expenses of an investigation to determine whether a RICO violation has occurred would not be an injury caused by the racketeering activity.*" *Philatelic Foundation v. Kaplan*, 1986 WL 5629 (S.D.N.Y. May 9, 1986)("Philatelic I") (Exhibit A hereto), *rev'd by Philatelic Foundation v. Kaplan*, 647 F. Supp. 1344, 1345 (F.D.N.Y. 1986) (*emphasis added*); *abrogated by Aramony v. United Way of America*, 969 F.Supp. 226 (S.D.N.Y. 1997).[4] The *Philatelic I* Court explained that it is "necessary to distinguish between injuries and expenses incurred due to the detrimental effects of the fraudulent activities and the expenses incurred simply to explore the existence of and the participants in a RICO violation." *Id.* at *11. It is clear by the plain reading of the Complaint and Plaintiffs' own case law that Plaintiffs do not – and cannot – sufficiently allege damages necessary to sustain its RICO claims.

In addition to failing to qualify as injury cognizable under RICO, Plaintiffs claimed financial losses have no causal connection to any complained of action by Defendants. Plaintiffs do not – because they cannot – connect their allegations of mail and wire fraud to the "fees and expenses of investigating" such violations. Plaintiffs' failure to properly plead reliance and causation dooms their Complaint. (Opening Brief at 12; Reply Brief at 14). A RICO plaintiff who alleges mail fraud must plead both reliance and injuries caused by such reliance. *See Anderson* at 270; *Burke v. Dowling*, 944 F. Supp. 1036, 1053 (E.D.N.Y. 1985). While Plaintiffs attempt to maintain a claim of mail fraud against Defendants, nowhere in their Complaint do they allege that they relied on any fraudulent misrepresentations promulgated through mail or wire fraud; nor do they allege any clear injury to themselves caused by Defendants' supposedly false representations. This failure as well is fatal to Plaintiffs' claims. They have no standing; their Complaint must be dismissed.

      B.     *Plaintiffs Fail To Properly Allege Conspiracy, Collusion, Racketeering Or Alter Ego*

Plaintiffs have failed to state the requisite conspiracy and racketeering activities between the Defendants, which is the foundational predicate for a RICO claim. Plaintiffs also fail to properly distinguish between the RICO "enterprise" and the Defendants as required under RICO. (*See* Opening Brief at 12; Reply Brief at 10). Plaintiffs' failure to allege a clear distinction

---

[4] Plaintiffs cite *Philatelic* for the proposition that fees expended investigating a defendant's underlying fraudulent scheme are sustainable RICO injuries. *Philatelic* relies on a broad interpretation of RICO where the Supreme Court "cautioned against a restrictive reading of the type of injury recoverable under RICO." *Id.* at *10. But whatever inferences the *Philatelic* Court drew in 1986 have been clarified and narrowed by the proximate cause requirement which *Holmes* added in 1992. 503 U.S. at 268. To that extent, *Philatelic* no longer is good law.



between the Defendants and the Enterprise requires the dismissal of their Complaint. *See Cedric Kushner Promotions, LTD v. King*, 533 U.S. 158 (2001); *see also Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir. 1985). Failing to distinguish the ASLET Board, a statutorily required assembly which forms the ego of ASLET, from that Board acting as a conniving alter ego in lieu of conducting ASLET business, is fatal to Plaintiffs' claims. Plaintiffs fail to articulate, and Defendants can find no such inferences in the Complaint or within the various rantings of Messina, which even allege, that the Defendants in their capacity as ASLET Board members met and conspired outside the scope of their duties as ASLET Board members. In fact, the Chancery Court actions predicated upon the same factual allegations made in the Complaint met with a resounding dismissal; the business judgment presumption of the complained of activities of the Defendants as Board members was never overcome, thus making it a logical impossibility for Plaintiffs to support their assertion that the Defendants meeting as the ASLET Board was instead, a meeting of a criminal enterprise acting as a separate entity from ASLET.

Plaintiffs, finally, have not shown there exists a distinct continuity of different criminal episodes comprising different activities, not merely the same activity repeated. *See e.g. Professional Assets Management, Inc. v. Penn Square Bank*, N.A., 616 F.Supp. 1418, 1421 (W.D.Okla, 1985), *cited with approval by Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 629 F.Supp. 860, 864 (S.D.N.Y.1986); *Utz v. Correa*, 631 F.Supp. 592, 595 (S.D.N.Y.1986)( "multiple episodes of racketeering activity,"); *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831 (N.D.Ill.1985)(repeated criminal activity, not merely repeated acts to carry out the same criminal activity); *cited by Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461, 1467 (S.D.N.Y.1986). Merely alleging over and over again, that Defendants as ASLET Board members conducted ASLET business that was not to Messina's liking, is not enough. Plaintiffs Complaint therefore must be dismissed.

II.     Plaintiffs' Claims Are Time Barred.

The statute of limitations for RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987). The limitations period begins to run when the plaintiff discovers or should have discovered the asserted RICO injury. *Id.* (*See* Opening Brief at 2 through 5; Reply Brief at 12 through 14). RICO's provision of a civil remedy was enacted to "turn [plaintiffs] into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity....It would, accordingly, be strange to provide an unusually long basic limitations period that could only have the effect of postponing whatever public benefit civil RICO might realize." *Rotella v. Wood*, 528 U.S. 549, 557-58 (2000). Plaintiffs' proposed "actual injury" standard is invalid; indeed it would "allow a civil RICO plaintiff to control when the relevant limitations periods accrue through its timing of the assessment, investigation, and



correction of its injuries, thereby producing precisely the long limitations periods frowned upon by the Supreme Court." *Id.* at 237.

As argued above and evidenced by Plaintiffs' Answering Brief, the only discernable allegation of injury made by Plaintiffs are the financial costs of investigating their RICO allegations. Apparently bundled into these "financial losses" are the costs connected to Plaintiffs' collection of "a virtual mountain of evidence" of wrongdoing before the year 2000. (*See* Compl. at ¶81). Plaintiffs allege that the "scheme to defraud, corrupt, cheat, steal, obtain by fraud and convert property was in existence by at least 1994." (Compl. at ¶¶56, 57). Plaintiffs further allege that "[i]n or about April of 1994" an ASLET corporate director started to make inquiries regarding the alleged "management, financial and ethical practices of ASLET's" Board members. (Compl. at ¶65). Messina, according to the Complaint, began investigating alleged improprieties as a member of ASLET's Ethics Committee beginning in January of 1995. (Compl. at ¶66). According to Plaintiffs, the ASLET Board in December of 1996 agreed with the Ethics Committee findings that double dipping had occurred by then Executive Director Steve Bunting. (Compl. at ¶69). Plaintiffs claim that "Messina and other members...*continued* to collect evidence of continued 'double dipping' practices" on or about January 1998. (Compl. at ¶80). In paragraphs 176 and 177 of the Complaint, Plaintiffs discuss members of the ASLET Board "accept[ing] and acknowledg[ing]" *in December of 1996* an internal investigation performed by Messina which "found charges of wrong doing..." Messina continued his witch hunt through 2000 and up to the present date. (*See* Compl. at ¶¶66-73, 82). Because Plaintiffs in their Complaint admit to having knowledge of a pattern of alleged wrongdoing and injury that they aver began long before 2000 and continued to the present, Plaintiffs' Complaint is time barred.

III.   Plaintiffs' Complaint Should Be Dismissed For Their Failure To Prosecute.

Plaintiffs sat on their hands for almost ten years before filing their unfounded RICO Complaint. Their failure to act to rectify the perceived wrongs they saw going on at ASLET is not unlike their failure to prosecute this case once it was filed in this District. Since this matter was transferred to the District of Delaware in May of 2005, Plaintiffs have failed to appear at two hearings, failed to obtain local counsel until after Court Order, waited to request a stay of the litigation until the eve of a decision on this Motion, and then filed one letter on the eve of the expiration of the stay they themselves requested, on January 27, 2006, stating that they intended to prosecute this case. In the nine months since that letter, however, Plaintiffs and their counsel have taken absolutely no action to advance this matter.

The Defendants have an interest in having this litigation brought to an end. Since they filed a Motion to Dismiss the Complaint in the Eastern District of New York, Plaintiffs' dilatory prosecution of this case has caused them two years of expense, inconvenience and prejudice.

The Honorable Joseph J. Farnan, Jr.
September 29, 2006
Page 9



Plaintiffs are directly responsible for all the delay. This history of dilatoriness, which is exemplified by Plaintiffs' failure to take any action, their repeated requests for delays and their violation of Court Orders, is yet one more ground for dismissal of the Complaint.

The Court must analyze six factors in deciding a Motion to Dismiss for Failure to Prosecute. The factors are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history or dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Haraway v. National Association for Stock Car Auto Racing, Inc.*, 213 F.R.D. 161, 164 (D. Del. 2003). These factors all need not be present or weighed equally for an action to be dismissed with prejudice. *Id.*

In this case, Plaintiffs bear personal responsibility for their failure to act. The prejudice caused to the Board members by Plaintiffs' sloth is manifest. Plaintiffs' history of delay, their failure to comply with Orders of this Court, and importantly the lack of meritoriousness of their claims, all weigh heavily in favor of dismissal of Plaintiffs' RICO Complaint. *Id.*; *see also Emerson v. Thiel College*, 296 F.3d 184, 191 (3d Cir. 2002) (District Court did not abuse its discretion in dismissing with prejudice plaintiff's claims in view of *pro se* plaintiff's unexplained failure to comply with District Court's orders, prejudice to defendant caused by such delays, plaintiff's "continuous dilatoriousness," and the fact that an assessment of attorneys' fees as an effective alternative sanction to dismissal "was not a serious consideration given [plaintiff's] financial situation"); *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 870 (3d Cir. 1984) (although Court of Appeals on same record might not have reached the same result as did the District Court, trial court did not abuse its discretion in dismissing plaintiff's complaint with prejudice in light of plaintiff's pattern of dilatory behavior, some prejudice caused to defendant by such behavior, and defendant's prima facie defense to plaintiff's claims). Plaintiffs ongoing failures to prosecute have visited substantial prejudice upon Defendants which cannot now be overcome with an additional 90 days of delay, or additional oral argument by Plaintiffs. Their Complaint should be summarily dismissed.

## CONCLUSION

Plaintiffs have spent ten years tormenting ASLET and its directors in their futile and misguided effort to provide some substance to their *a priori* assumptions of wrongdoing. Their investigation and discovery efforts have revealed no light and no heat. They have failed utterly and completely to allege a violation of RICO. They have in any event no standing to assert such claims. Those claims they actually have posited are barred by the statute of limitations. Finally they have refused – willfully and repeatedly – to even try to prosecute their bogus claims.

The Honorable Joseph J. Farnan, Jr.
September 29, 2006
Page 10



Enough is enough. The day of reckoning has arrived. Plaintiffs' Complaint must be dismissed with prejudice.

Respectfully submitted,

/s/ James J. Freebery

James J. Freebery
(DE Bar ID #3498)
Christopher A. Selzer
(DE Bar ID #4305)

JJF:jr

cc:  Robert D. Goldberg, Esq. (via e-file and e-mail)
     David L. Finger, Esq. (via e-file and e-mail)
     Phillip Messina (via regular mail)

ME1\5867424.1