# EXHIBIT A

Westlaw.

1986 WL 5629                                                                    Page 1
Not Reported in F.Supp., 1986 WL 5629 (S.D.N.Y.), RICO Bus.Disp.Guide 6260
**(Cite as: 1986 WL 5629 (S.D.N.Y.))**

United States District Court, S.D. New York.
THE PHILATELIC FOUNDATION, Plaintiff,
v.
ALAN KAPLAN, ROBERT C. WURDEMAN,
ROBERT C. WURDEMAN, INC., MILDRED
WURDEMAN,
BARRY J. RIEGER, BARRY J. RIEGER, LTD.,
JOHN PETERS and PETERS & VOGT, INC.,
Defendants.
**No. 85 Civ. 8571 (RWS).**

May 9, 1986.
THOMAS J. BONNER, P. C., New York, New
York, for plaintiff; THOMAS J. BONNER, Of
Counsel.

BELDOCK, LEVINE & HOFFMAN, New York,
New York, for Defendants Robert C. Wurdeman and
Robert C. Wurdeman, Inc.; MELVIN W. WULF, Of
Counsel.

BACHNER, TALLY, POLEVOY, MISHER &
BRINBERG, New York, New York, for Defendant
Mildred Wurdeman; H. RICHARD PENN, STUART
ROSEN, Of Counsel.

BLOCH, GRAFF, DANZIG, JELLINE &
MANDEL, New York, New York, for Defendant
Alan Kaplan; HOWARD GRAFF, NEAL S.
BARLIA, JUDY SOLOMON, Of Counsel.

OPINION

**SWEET, District Judge.**

*1 This is an action by The Philatelic Foundation
(the 'Foundation') against individual and corporate
defendants for violations of the Racketeer Influenced
and Corrupt Organizations Act ('RICO'), 28 U.S.C. §
§ 1961-1968, and New York common law. The
Foundation moved under Rule 64, Fed.R.Civ.P., for
an order of attachment of postage stamps owned by
defendant Robert Wurdeman and an order of
attachment of real property located in California and
allegedly owned by Robert and Mildred Wurdeman.
In the alternative, the Foundation requested an
injunction barring the sale of the California property.
Defendant Mildred Wurdeman has moved to dismiss
the Foundation's First Amended Complaint pursuant
to Rules 9(b) and 12(b)(6), Fed.R.Civ.P., and all the

defendants have moved to dismiss the First Amended
Complaint for failure to allege recoverable damages.
On oral argument, the Foundation withdrew its
motion to attach the California realty. For the
reasons discussed below, the Foundation's motion to
attach the stamps and to enjoin the transfer of the
California realty, Mildred Wurdeman's motion to
dismiss and the defendants' joint motion to dismiss
are all denied.

**A. Facts**

By leave of this court the Foundation filed the First
Amended Complaint ('complaint') on February 21,
1986. The complaint alleges violations of RICO and
New York common law and prays for monetary
damages and injunctive relief. A summary of the
factual allegations follows.

The primary function of the Foundation is to issue
opinions regarding the authenticity of stamps and
other philatelic items in the form of a certificate.
When a collector, dealer or auction house submits a
stamp, the Foundation's experts examine it and render
an opinion as to its quality and authenticity.
Defendant Alan Kaplan, an employee of the
Foundation, entered these opinions into the computer
which printed the certificates. The Foundation
asserts that such opinions greatly influenced the
value of the stamps.

The Foundation's complaint alleges that in March,
1983, defendant Robert Wurdeman, a stamp dealer,
solicited Kaplan's cooperation in a scheme to
fraudulently alter the Foundation's certificates.
Under the scheme, Wurdeman and other dealers
submitted stamps to the Foundation for an opinion of
authenticity. When Kaplan received the expert
committee's final opinion, he changed certain words
(e.g., 'not genuine' became 'genuine') and produced a
fraudulent certificate. Wurdeman, or the other
dealers, sold these stamps at inflated prices due to the
phony certificates. Kaplan altered over 220
certificates before the Foundation discovered his
activities in May, 1985. Defendants Robert
Wurdeman, Inc., Barry J. Rieger, Barry J. Rieger,
Ltd., John Peters and Peters & Vogt, Inc. were all
allegedly involved in this conspiracy to alter
certificates and sell them at fraudulently inflated
prices. The complaint alleges that defendant Mildred
Wurdeman also knew of, and participated in, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1986 WL 5629                                                      Page 2
Not Reported in F.Supp., 1986 WL 5629 (S.D.N.Y.), RICO Bus.Disp.Guide 6260
(Cite as: 1986 WL 5629 (S.D.N.Y.))

conspiracy to alter certificates.

*2 Between May, 1985 and October, 1985, defendants Robert Wurdeman, Alan Kaplan, Barry Rieger and John Peters were indicted by grand juries on charges arising out of this scheme. Alan Kaplan pleaded guilty to mail fraud and fraudulently altering certificates, and Robert Wurdeman pleaded guilty to mail fraud and conspiracy. John Peters was acquitted after a jury trial conducted by this court, United States v. Peters, 84 Cr. 977 (RWS).

**B. The Motions for an Injunction and Order of Attachment**

**1. The California Property**

The Foundation seeks a preliminary injunction enjoining the Wurdemans from selling their California home during the pendency of this action and from disposing of the proceeds from any sale. The standard which must be met for the issuance of a preliminary injunction in this circuit is the demonstration of (a) irreparable harm and (b) either (i) likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).

The Foundation is unable to demonstrate irreparable harm that would justify the granting of equitable relief. Since the injury it complains of is the possibility that the defendants will be unable to satisfy a money judgment its claim is premised solely on money damages. Such damages are not ordinarily sufficient to establish irreparable injury. See Jackson Dairy, supra, 596 F.2d at 72. Furthermore, since there exists a legal remedy which specifically addresses the problem of prejudgment security--i.e., attachment-- this court is hesitant to expand upon that legal relief. See Ashland Oil Inc. v. Gleave, 540 F. Supp. 81, 85-86 (W.D.N.Y. 1982).

The few cases cited by the Foundation in which a court has found irreparable injury due to the possible inability of a defendant to satisfy a judgment are based on circumstances not present here. In United States v. Ross, 302 F.2d 831 (2d Cir. 1962), a preliminary injunction and receivership were awarded pursuant to the statutory authority underlying an Internal Revenue Service enforcement proceeding. An injunction against the disposition of assets pending trial was entered in Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co., 621 F.2d 683 (5th Cir. 1980), based on a finding that the defendant fraudulently intended to frustrate the enforcement of any judgment.

Finally, in Phillipp Brothers v. El Salto, S.A., 487 F. Supp. 91 (S.D.N.Y. 1980), the court made detailed findings regarding the financial condition of the defendant, its lack of liquid assets and perhaps most significantly, its location in a foreign country with an unstable government where the collection of a money judgment would be extremely difficult. Under these circumstances, the court considered injunctive relief to be appropriate. Here, in contrast, the claim for injunctive relief is based solely on the not unreasonable speculation that there may be insufficient funds to satisfy an ultimate judgment. However, neither irreparable injury nor intent to defraud creditors have been established to date. See Standard Metals Corp. v. Tomlin, 503 F. Supp. 586 (S.D.N.Y. 1980).

*3 The Foundation's reliance on RICO as an independent basis for injunctive relief is also misplaced. The Second Circuit has voiced its opposition to any lenient grant of injunctive relief in a private civil RICO action. Trane Co. v. O'Connor Securities, 718 F.2d 26, 28 (2d Cir. 1983). In any case, a preliminary injunction under § 1964(a) would require a finding of irreparable injury, see id. at 29, and therefore the above discussion of possible injury to the Foundation would require the denial of relief under RICO as well. Here, the equitable relief sought by the Foundation is the equivalent of requiring the Wurdemans to post a performance bond, a procedure that is explicitly authorized only for private RICO actions instituted by the United States. 18 U.S.C. § 1964(b). There is no authority for the position urged by the Foundation that such a remedy is available under § 1964(a).

**2. The Stamps**

To obtain an order of attachment of Wurdeman's stamps, [FN1] the Foundation 'shall show . . . that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.' CPLR § 6212. The Foundation bases its motion on the following grounds enumerated in § 6201:
   1.   the defendant is a nondomiciliary residing

1986 WL 5629                                                                     Page 3
Not Reported in F.Supp., 1986 WL 5629 (S.D.N.Y.), RICO Bus.Disp.Guide 6260
**(Cite as: 1986 WL 5629 (S.D.N.Y.))**

without the state, or is a foreign corporation not qualified to do business in the state; or
***

3.    the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts.

Since Wurdeman is a nondomiciliary residing outside New York, the Foundation has satisfied CPLR § 6201(1) and, therefore, technically fulfilled the third requirement of CPLR § 6212. Attachment is a discretionary remedy, however, and even when the statutory requirements are met, the motion may be denied. Trigo Hnos, Inc. v. Premium Wholesale Groceries, Inc., 424 F. Supp. 1125, 1133 (S.D.N.Y. 1976). Since subsection (1) permits attachment primarily for jurisdictional reasons, see McLaughlin, Practice Commentaries C6201:2, CPLR § 6201, and the Foundation does not seek attachment for jurisdictional reasons but to secure property for the satisfaction of a possible judgment, the fulfillment of subsection (1) does not necessarily mandate the issuance of the attachment. 'When the only purpose for a pre-judgment attachment is security, a different analysis should apply.  When jurisdiction already exists, attachment should issue only upon a showing that drastic action is required for security purposes.' Reading & Bates Corp. v. National Iranian Oil Co., 478 F. Supp. 724, 726-27 (S.D.N.Y. 1979). To determine whether attachment for security purposes is justified, it is necessary to examine subsection (3) of § 6201.

*4 Under CPLR § 6201(3), 'it is incumbent upon [the Foundation] to demonstrate that the defendant is acting with intent to defraud. Fraud is not lightly inferred, and the moving papers must contain evidentiary facts--as opposed to conclusions--proving the fraud.' McLaughlin, Practice Commentaries C 6201:4, CPLR § 6201; Brastex Corp. v. Allen International, Inc., 702 F.2d 326, 331 (2d Cir. 1983). To assert a properly substantiated claim of fraud in the moving papers,

the sworn information must have some probative force, and not rest upon hearsay alone and shall be such that a person of reasonable prudence would be willing to accept and act upon it. [T]here must be a sufficient showing that the ultimate facts stated in the pleading can be substantiated.

Swiss Bank Corporation v. Eatessami, 26 A.D.2d 287, 273 N.Y.S.2d 935, 938 (N.Y. App.Div. 1966)

(citations omitted). The Foundation's moving papers, a supporting affidavit sworn to by Peter Robertson and the memorandum of law, fail to meet these requirements.

The substance of Robertson's affidavit can be condensed into two sentences:  (1) the plaintiff has in its possession 71 stamps belonging to Robert Wurdeman valued at $30,000 and (2) the California condominium, at the time of Wurdeman's arrest by the FBI, contained sophisticated equipment used to fraudulently alter postage stamps, phony certificates, records of Wurdeman's fraudulent scheme and other unrelated contraband.  Based upon this affidavit and Robert Wurdeman's criminal record, summarized in the memorandum, the Foundation asserts 'there is undoubtedly an incentive and a high probability that Mr. Wurdeman will secretly dispose of his assets, transfer them, or otherwise make them unavailable for satisfaction of plaintiff's likely judgment.  Thus, plaintiff is entitled to an order of attachment.'

The moving papers fail to allege probative evidentiary facts that Wurdeman has, or is about to dispose of property in order to frustrate a judgment and thus fail to show that Wurdeman possesses the requisite 'intent to defraud.'  Instead, the Foundation summarily concludes that there is a 'high probability' that Wurdeman will hide his assets without any supporting evidentiary facts.  The Foundation's assertions seem to be based wholly on the fraudulent nature of Wurdeman's previous conduct, but alleged fraudulent misconduct on which an action is founded is not sufficient in itself to justify an attachment. See Ashland Oil, Inc. v. Gleave, supra, 540 F. Supp. at 83 n.1.  The conclusory allegations of future fraudulent conduct do not satisfy the statutory requirements for an order of attachment, especially since Wurdeman has offered a legitimate explanation for seeking the use of the stamps to continue in the ordinary course of business and provide restitution as required by the sentence imposed pursuant to his criminal conviction. Thus, an order of attachment will not be issued pursuant to CPLR § 6201(1), (3).  See e.g., Reading & Bates Corp. v. National Iranian Oil Co., supra, 478 F. Supp. 724 (possibility that Iran might cut off oil sales to the United States and revise long-term contracts with United States customers was too remote to justify pre-judgment attachment); Computer Strategies v. Commodore Business Machines, 105 A.D.2d 167, 483 N.Y.S.2d 716, 721 (N.Y.App.Div. 1984) (mere removal or assignment or other disposition of property not grounds for attachment absent an actual showing of fraudulent intent).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1986 WL 5629                                                                                      Page 4
Not Reported in F.Supp., 1986 WL 5629 (S.D.N.Y.), RICO Bus.Disp.Guide 6260
(Cite as: 1986 WL 5629 (S.D.N.Y.))

*5 In an exercise of discretion, the court may consider factors indicating whether the defendant will be likely to satisfy the potential judgment. Merrill Lynch Futures, Inc. v. Kelly, 585 F. Supp. 1245, 1259 (S.D.N.Y. 1984). However, it is not sufficient merely to rely on the uncertain financial condition of the defendant since that is not a statutory basis for an attachment under § 6201. See Brastex Corp., supra, 702 F.2d at 331-32. Further, since attachment is a 'harsh' remedy, it should not be granted lightly, and the terms of the statute should be strictly construed in favor of the party whose property is sought to be attached. Id.; Siegal v. Northern Boulevard & 80th Street Corp., 31 A.D.2d 182, 295 N.Y.S.2d 804, 808-09 (N.Y.App.Div. 1968).

From the affidavit submitted on behalf of the Foundation there is no reliable indication that Wurdeman has or is about to hide any assets in an attempt to frustrate a judgment in this action. The Foundation has not demonstrated that the Wurdemans are 'acting with intent to defraud' requiring this court to take the drastic action of an order of attachment. Therefore, the Foundation's motion to attach the postage stamps is denied. Since the Foundation has failed to satisfy the requisite showing under § 6201, it is not necessary to determine the probability of its success on the merits of its complaint.

## C. Mildred Wurdeman's Motion to Dismiss

Defendant Mildred Wurdeman moves this court to dismiss the Foundation's complaint against her for failure to state a claim and for failure to plead fraud with particularity pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), respectively. At the same time as this motion was submitted, the First Amended Complaint was filed and therefore it is with reference to that complaint that Mildred Wurdeman's motion is considered.

### 1. The Complaint

In determining the validity of a motion to dismiss, the court assumes that the facts contained in the complaint. Miree v. DeKalb County, Ga., 433 U.S. 25 (1977). The complaint contains the following allegations specifically naming Mildred Wurdeman. In June, 1983, Mildred Wurdeman attended a meeting with Robert Wurdeman and Alan Kaplan. There, it is alleged that the parties agreed to a detailed schedule of bribe payments for Alan Kaplan, and that Mildred Wurdeman would type all

applications for certificates to be submitted to Kaplan for alteration. In three meetings with Robert Wurdeman and Barry Rieger, the parties discussed Kaplan's fraudulent alteration of the Foundation certificates, Kaplan's bribe payment schedule, the procedures for submitting stamps through Rieger, defendant Gregory Stolow's participation in the scheme, and future plans. Finally, at a meeting with Robert Wurdeman and John Peters in September, 1983, they discussed the ongoing conspiracy to alter the Foundation certificates and Peters' participation. The complaint alleges that Mildred Wurdeman typed all the applications and wrote checks to Alan Kaplan totalling $9,000 in partial payment of the agreed bribes. According to the complaint, Mildred Wurdeman knowingly committed these acts 'pursuant to the unlawful conspiracy' to violate RICO.

### 2. Rule 12(b)(6)

*6 To state a claim for damages under RICO, the plaintiff must fulfill two requirements.

First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as 'criminal RICO.' In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)-(c) (1976). ***

[Second] plaintiff must allege that he was 'injured in his business or property by reason of a violation of section 1962.' 18 U.S.C. § 1964(c) (1976).

Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983).

Mildred Wurdeman is alleged to have committed or conspired to commit two or more acts. [FN2] These alleged predicate acts constitute a 'pattern.' The Supreme Court in Sedima S.P.L.R. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275 (1985), articulated a new standard for demonstrating a pattern. In addition to the previous requirement of establishing a relationship between the predicate acts, see United Sates v. Chovanec, 467 F. Supp. 41, 44 (S.D.N.Y. 1979) (six incidents of wire fraud over a four week period constituted a 'pattern' because the common victim provided the necessary relationship), the proper pleading of a pattern now requires that the predicate acts show continuity:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1986 WL 5629                                                                                    Page 5
Not Reported in F.Supp., 1986 WL 5629 (S.D.N.Y.), RICO Bus.Disp.Guide 6260
**(Cite as: 1986 WL 5629 (S.D.N.Y.))**

The target of [RICO] is thus not sporadic activity. The infiltration of legitimate businesses normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern . . .

Significantly, in defining pattern in the same bill, Congress was more enlightening:    'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not unrelated events.'

105 S.Ct. at 3285 n.14 (emphasis in original). The predicate violations alleged in the complaint exhibit many separate acts occurring over a period of approximately two years. The conduct involved the same participants and employed the same procedures for altering the certificates and defrauding stamp purchasers. Such a series of 328 predicate acts sufficiently exhibit a 'pattern' under the new Sedima standard.

The alleged predicate acts constitute 'racketeering activity.' RICO defines 'racketeering activity' as any act 'chargeable' or 'indictable' under various state and federal laws including the mail fraud, wire fraud, racketeering and interstate transportation of stolen property set forth as the predicate acts in this action. 18 U.S.C. § 1961(1)(A).

The association of Mildred and Robert Wurdeman, Alan Kaplan, Barry Rieger, John Peters and the other defendants adequately pleads the existence of an 'enterprise.'    RICO defines enterprise as 'any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity.' 18 U.S.C. § 1961(4). The Supreme Court in United States v. Turkette, 452 U.S. 576 (1981), begins the analysis of 'enterprise' by defining it as 'a group of persons associated together for a common purpose of engaging in a course of conduct,' proved by 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.' Id. at 583. Similarly, in United States v. Errico, 635 F.2d 152, 156 (2d Cir. 1980), the Second Circuit held that a group of individuals associated for the purpose of fixing horse races showed the 'community of interest and core of personnel' required for a RICO conviction.

*7 The 'association in fact' which the Foundation alleges in the complaint clearly meets the enterprise standards articulated above. The defendants are a group of individuals who associated together for the common purpose of fraudulently obtaining phony certificates and using them to sell stamps at inflated prices.    By describing the formative meetings between the defendants, the complaint begins to show the existence of an 'ongoing organization' which functioned as the 'continuing unit' until discovered two years later.   In sum, the complaint sufficiently pleads a 'community of interest and core of personnel' necessary to establish an 'enterprise' to survive a rule 12(b)(6) motion to dismiss.

The defendants are alleged to have committed violations of each of the subsections in § 1962. The complaint alleges that the defendants received income from a pattern of racketeering activity which they invested in the enterprise in violation of 18 U.S.C. § 1962(a), maintained an interest in the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(b), and participated in the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

Finally, the complaint properly alleges that the activities of the enterprise affect interstate commerce. The defendants represent businesses in the states of California, Illinois, New Jersey and New York and have conducted business activities among those states. The Foundation is located in New York. The RICO violations alleged in the complaint involve mailing documents and stamps from the defendants' home states to New York and back. In addition, the Foundation also characterizes this activity as interstate transportation of stolen property. Thus, the complaint adequately alleges the existence of the seven constituent elements of the first pleadings burden required by Moss v. Morgan Stanley, supra.

### 3. Rule 9(b)

Mildred Wurdeman also seeks dismissal pursuant to Rule 9(b).   Rule 9(b) of the Federal Rules of Civil Procedure states: 'In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.'   This rule applies to allegations of mail and wire fraud as predicate RICO civil offenses.    Rich-Taubman Associates v. Stamford Restaurant Operating Co., Inc., 587 F. Supp. 875, 878 (S.D.N.Y. 1984).

Courts in this Circuit have consistently recognized

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that Rule 9(b) serves:

> to prevent irreparable damage to defendants' reputation and good will that results from unwarranted charges of fraud; to minimize potential strike suits which by the abuse of time-consuming and expensive pretrial discovery with its disruption of normal business activities serve as an in terroreum force to augment the settlement value of such actions; to prevent the engagement of the facilities and services of the Court with respect to such groundless claims; and to assure that a defendant accused of fraudulent conduct is given particularized information to enable him to respond adequately.

*8 Crystal v. Foy, 562 F. Supp. 422, 424 (S.D.N.Y. 1983). See also Goldman v. Belden, 754 F.2d 1059, 1070 (2d Cir. 1985).

To prevent unfounded actions, Rule 9(b) requires the plaintiff to state the circumstances or facts surrounding the alleged fraud with particularity, while permitting less specific allegations of the subjective elements of the alleged fraud. Thus, the 'plaintiff's complaint must allege (1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn.' Crystal v. Foy, supra, 562 F. Supp. at 425. See Goldman v. Belden, supra, 754 F.2d at 1069.

In contrast to the factual circumstances of the fraud, the subjective elements of the defendants' knowledge and intent do not have to be pled with 'great specificity.' Rooney Pace, Inc. v. Reid, 605 F. Supp. 158, 162 (S.D.N.Y. 1985). In alleging intent and knowledge, the plaintiff need only plead facts from which the court may reasonably infer fraud as to each defendant. Dannenberg v. Dorison, 603 F. Supp. 1238, 1241 (S.D.N.Y. 1985), citing Decker v. Massey-Ferguson Ltd., 681 F.2d 111, 115 (2d Cir. 1982).

Nevertheless, while Rule 9(b) permits general averments of malice, knowledge and intent, these elements cannot be inferred from information and belief alone. The sources of that information and belief 'should be sufficiently identified so as to allow each defendant and the court to review the sources and determine, at the pleading stage, whether an inference of fraud may be fairly drawn from the information contained therein.' Crystal, supra, 562 F. Supp. at 424; see Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972).

The Foundation's complaint alleges specific facts which form a basis from which one could fairly draw an inference of fraud. The complaint alleges that Mildred Wurdeman attended several meetings at which defendants discussed the formation and conduct of the fraudulent scheme. The complaint alleges that Mildred Wurdeman knew about the scheme, knew the defendants were fraudulently obtaining certificates and knew the defendants were selling stamps at inflated prices. With that knowledge, the complaint alleges that Mildred Wurdeman prepared applications for certificates and wrote checks to 'bribe' Kaplan. The source of these facts is the testimony of Robert Wurdeman, Alan Kaplan, Barry Rieger and John Peters given at the criminal trial of John Peters. Based upon the actual facts pleaded and the sources of those facts, there exists sufficient information from which an inference of fraud may be drawn at this early stage of the litigation. Accordingly, Mildred Wurdeman's motion to dismiss for failure to plead fraud with particularity lacks merit.

**D. Damages**

To satisfy the second and last pleading burden necessary to state a RICO claim, the plaintiff must allege that it was 'injured in his business or property by reason of a violation of section 1962.' 18 U.S.C. § 1964(c). By motions submitted April 18, 1986, all of the defendants assert that the Foundation's allegations of damages to its business and property are insufficient as a matter of law. Specifically, they argue that because the Foundation was not directly injured by the sale of stamps at fraudulently inflated values that it has suffered no injury as the result of the alleged enterprise.

*9 The complaint alleges that the Foundation has sustained damages in excess of $100,000 in connection with its investigation of the defendants' fraudulent activity, related expenses and the loss of income due to the acts of racketeering. Various affidavits submitted by the Foundation set forth more specifically the injuries claimed. The Foundation asserts that, because of the fraud, the expert committee which authenticates stamps halted its work for one month and substantially reduced its output for 1985. As a result, the Foundation claims a loss of $59,570 in authentication fee income. In addition, the Foundation claims that it had borrowing costs of $28,182 and additional labor expenses of $20,150 resulting from the reduction of expert committee work following the discovery of the fraud. The Foundation also claims damages based on its

expenses incurred in investigating the fraudulent activities. The Foundation hired an attorney, Thomas Bonner, to manage the investigation and to act as the Foundation's contact with the Federal Bureau of Investigation and the United States Attorney's Office which were conducting a criminal investigation. Of $76,779 in legal fees, the Foundation states that 85% are directly attributable to investigating the conspiracy and the balance attributable to filing the present civil action. The Foundation also seeks $15,991 incurred by the retention of a private investigation firm to participate in the investigation.

Finally, the Foundation claims damages based on the use of their certificates or the fraudulent scheme to sell stamps at artifically inflated values. The Foundation alleges that it has been damaged by an amount equal to the difference between the gross income received by the defendants through the use of fraudulently altered certificates and the true value of the stamps without these certificates. Thus, the Foundation is seeking damages based on the fraudulent profits earned by the defendants.

The defendants argue that the Foundation does not have standing to bring this civil action because it has not alleged any damages recoverable under RICO. According to the defendants, the complaint must be dismissed since the direct object of the RICO violation was to defraud stamp collectors who purchased stamps at artificially inflated prices. The defendants therefore assert that the Foundation suffered no injury directly from these sales and that the general loss of business income and investigatory expenses are too remote to be recoverable under RICO.

The defendants are correct that the Foundation may not recover for the direct losses suffered by stamp collectors as a result of the fraudulent acts of racketeering. Section 1964(c) of RICO, which provides the plaintiff with a private right of action, states that:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

*10 The language of this section requires that a plaintiff allege damage to his own business or property and that his recovery be calculated on the basis of the damages he sustains. See Sedima S.P.R.C. v. Imrex Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 3285-86 (1985). Thus, the statute does not

provide recovery based on the profits obtained by the defendants through the use of a particular person's property, but merely the damage sustained to that person's property. Therefore, the injury attributed to the sale of stamps at artificially inflated values is not sufficient as a matter of law. The persons who were damaged by these sales were the purchasers of the stamps and not the Foundation which does not claim to have purchased any of these stamps. The Foundation has not claimed to be in privity with any of these purchasers and thus will not be allowed to sue as their representative on these direct claims. See generally Worth v. Seldin, 422 U.S. 490, 498 (1975). Moreover, although the use of defendants' property was an integral means of accomplishing the allegedly fraudulent costs, the Foundation has not alleged that the value of the certificates was harmed in any way and thus has no standing to sue for the damages suffered directly from the RICO violations.

The Foundation has claimed some damages to its business which might be characterized as indirect or incidental damages because they did not occur as a result of the direct object of the fraudulent scheme. Despite the fact that the defendants did not intend to cause these damages in the course of their allegedly fraudulent conduct, these damages are sufficient to state a cause of action under RICO.

That aspect of the defendants' motion seeking dismissal of the claims of indirect injury does not comport with the Supreme Court's most recent pronouncements on the issue of damages recoverable under RICO. In Sedima, supra, the Court cautioned against a restrictive reading of the type of injury recoverable under RICO. The Court refused to require a plaintiff to prove a special type of 'racketeering injury' distinguishable from the injury resulting from the predicate acts themselves. 105 S.Ct. at 3284. Instead, the injury requirement of § 1964(c) was broadly construed to permit allegations of all injury caused by the defendants' illegal activity. 'If the defendant engages in a pattern of racketeering activity in a manner forbidden by [the statute], and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).' Id. at 3285.

While the defendants assert that the indirect injuries alleged by the Foundation are not the type of injury contemplated by § 1964(c), there is no indication of such a limitation in the Sedima case. Indeed, the issue confronted in Sedima was not whether indirect injury from the racketeering enterprise was recoverable but whether direct injury from the predicate acts was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sufficient to allow recovery. The Court implicitly accepted the premise that the injurious consequences of the enterprise other than the injury directly attributable to the fraudulent acts themselves would be recoverable. See Sedima, supra, 105 S.Ct. at 3286 & n.15. Furthermore, since the purpose of RICO is to prevent the infiltration of businesses by those persons conducting racketeering activities, it appears entirely appropriate to permit those legitimate businesses to sue for injuries incurred by reason of the RICO violation even though they were merely the vehicle and not the object of the fraud. See Beth Israel Medical Center v. Smith, 576 F. Supp. 1061, 1070 (S.D.N.Y. 1983).

*11 The Foundation may sue for injury to its business as a result of the RICO violation. Therefore, it has adequately plead the loss of income which it alleges to have been the result of the diversion of expert committee efforts to re-examining and correcting the records and certificates which it suspected were tainted by the fraudulent scheme. [FN3] At the same time, it is necessary to distinguish between injuries and expenses incurred due to the detrimental effects of the fraudulent activities and expenses incurred simply to explore the existence of and the participants in a RICO violation. Thus, while the expenses of an investigation to prevent business injury or to rectify it is recoverable damage, the expenses of an investigation to determine whether a RICO violation has occurred would not be an injury caused by the racketeering activity. Thus, while it would be premature to dismiss these allegations at this stage of the proceedings, it is unlikely that the investigatory expenses paid to the Foundation's attorney and private investigatory firm are recoverable damages under RICO. Pecuniary damage to business reputation also appears to raise difficult problems of proof, but this type of damage has been included within the 'injury to his business' requirement of § 1964(c). See Wang Laboratories, Inc. v. Burts, 612 F. Supp. 441, 444 (D.Md. 1984). Each of the Foundation's damage claims will be subject to proof of causation and limitations concerning remoteness and speculativeness, but these allegations must be accepted for the purpose of the present motion to dismiss. [FN4]

**E. State Law Claims**

The defendants also seek dismissal of the Foundation's state law claims alleging that the defendants were unjustly enriched by an amount equal to the (1) difference in the value of the stamps by virtue of the fraudulently altered certificates and

(2) the amount of the bribes paid to Kaplan. These claims must be dismissed, however, because '[t]o recover on a theory of unjust enrichment a plaintiff must prove that the defendant was enriched, that such enrichment was at the plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff.' Dolmetta v. Uintah National Corp., 712 F.2d 15, 20 (2d Cir. 1983). Therefore an essential element of a claim for unjust enrichment is that the defendant was unjustly enriched by amounts received pursuant to a right held by the plaintiff. See G. Palmer, Law of Restitution § 21.5 (1978).

The Foundation has not even attempted to identify case law supporting its claim or that the fraudulent payments were obtained by the defendants at its expense. Since the Foundation did not own any of the stamps and indeed is not engaged in the business of selling stamps, it cannot claim any right to the illegal profits obtained by the defendants. Having been obtained through fraudulent means, the Foundation could not lawfully have been entitled to such moneys. These claims will therefore be dismissed.

**Conclusion**

*12 For the reasons set forth above, the Foundation's motion for an order of attachment of real and personal property owned by Robert and Mildred Wurdeman, and the defendants' motions to dismiss the Foundation's complaint against her are both denied.

IT IS SO ORDERED.

> FN1 At the hearing on February 21, 1986, the Foundation requested that its motion for attachment of 71 stamps be amended to include 136 additional stamps in the Foundation's possession. By letter dated February 26, 1986, Robert Wurdeman formally objected to such an amendment. The question of whether to amend is moot in light of this decision to deny the motion.

> FN2 The complaint does not specify which, if any, of the 328 predicate acts were actually committed by Mildred Wurdeman. This failure to specify is not a flaw in the complaint. As either an aider and abettor or as a co-conspirator, Mildred Wurdeman can be held liable for the acts actually committed by the principals or co-

1986 WL 5629
Not Reported in F.Supp., 1986 WL 5629 (S.D.N.Y.), RICO Bus.Disp.Guide 6260
**(Cite as: 1986 WL 5629 (S.D.N.Y.))**

Page 9

conspirators, <u>United States v. Sampol, 636 F.2d 621, 676 (D.C. Cir. 1980)</u>, even if she was not present. <u>United States v. Molina, 581 F.2d 56, 61 (2d Cir. 1978)</u>. See also <u>United States v. Barton, 647 F.2d 224, 237-39 & n.12 (2d Cir. 1981)</u>.

<u>FN3</u> While the defendants have cited one case in which a RICO claim alleging 'incidental' damages was dismissed, see <u>Local 355 v. Pier 66 Co., 599 F. Supp. 761, 765 (S.D.Fla. 1984)</u>, that holding both prejudged the merits of the plaintiff's claim and was based on precedent which was drawn into question by the Supreme Court's decision in Sedima. As such, it does not afford persuasive authority to the defendant's motion.

<u>FN4</u> Since the allegations of damage are tied directly to the actions alleged, they do not seem to constitute 'special damages' for which a more specific statement is required. See <u>Fed.R.Civ.P. 9(g)</u>.

Not Reported in F.Supp., 1986 WL 5629 (S.D.N.Y.), RICO Bus.Disp.Guide 6260

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.