

contrary to law, the Defendants and other Participants used the unlawful "suspension" as an excuse to prevent and delay Messina from gaining access to corporate records, while they "arranged" for his eventual expulsion.

111.   By the time the Defendants and Participants admitted, five months later, that Messina was in fact still a legal director, they had already delayed Messina from accessing records and information, and were able to hold at least five board meetings, from which Messina was unlawfully excluded.

## W.   NEW ATTEMPTS TO REMOVE MESSINA AS DIRECTOR, AND TO JUSTIFY HIS PREVIOUS UNLAWFUL SUSPENSION (WHICH WAS RETRACTED AFTER FIVE MONTHS)

112.   On November 13, 2003, Messina received a fax from the ASLET office, signed by Casavant, which informed him that a ballot seeking to remove him as a director, and containing charges against him, would be mailed to the ASLET membership on or about December 1, 2003. He was also advised that he was entitled by Delaware Law to respond to the charges. The emergency Board meeting which generated these charges was held only three days after Messina sent out e-mail messages to ASLET members warning them of massive security breaches committed by Hackett since at least 9/11/01. These security breaches resulted from an apparent effort to infuse revenues into the organization to hide the decline in annual revenues that the corporation had suffered since he became Executive Director. Although Messina suspected that the mandated security protocols were being ignored, he had been unable to obtain the records he had requested, due to the refusal of Defendants and other Participants to send him records during his five-month-long unlawful exile from the Board.

A34

 

## X. MOCK HEARING HELD BY UNLAWFULLY CREATED "PANEL"

113.    On December 13, 2003, Meyer represented the Defendants and other Participants at an "impartial" hearing panel created by Casavant. Meyer failed to state for the record that at least two alleged "witnesses" had submitted statements to ASLET attesting that the "charges" attributed to their statements were untrue. Meyer also neglected to state for the record that a third charge was based on alleged statements that were "backdated" so they would appear to have been uttered before the "emergency" suspension. Meyer also did not inform the "hearing panel" that many witnesses had inquired to the ASLET office, about how they could testify on behalf of Messina, and Messina was not given that information, finding out only after the fact.

114.    The "impartial" Hearing Panel created by Casavant consisted of:

a)      William Westfall, who as previous Ethics Committee Chairman agreed to requests by Klugiewicz and others to "sanitize" Ethics Committee Reports, after which he then resigned his post and was rewarded with a position of "Board Consultant" (which included perks and benefits). Westfall's activities allowed Klugiewicz and other Participants to disband the Ethics Committee, even though numerous complaints of wrongdoing were still pending;

b)      Daniel Watson, who had known Meyer, and worked in the same agency with Meyer for over twenty years, and who stood to benefit from Meyer and Hackett's control of the Enterprise, including ASLET's publications and seminars; and,

c)      Julie Linkins, a close friend and associate of both Konrath and Hackett, who had received important professional benefits from Konrath and Hackett's control of ASLET publications and seminars.

A35

 

115. All three of these so called "impartial" panel members either publish articles in the ASLET magazine, teach at the ASLET seminar or both, which provides them added professional recognition and contacts, and financial benefits, and is completely controlled by the Defendants and other Participants in the Enterprise.

116. Defendants and other Participants schemed to notify ASLET members, via the U.S Mail, that they had constituted an "impartial" panel to hear charges that Messina had defamed Hackett, Meyer and other Participants in the Enterprise. In fact, Defendants never created and announced a committee in accordance with ASLET bylaws, falsely announced that the committee was impartial when they had stocked it with their close associates, and then had continuous *ex- parte* communications with the committee for weeks prior to the meeting. This is in direct violation of the one-day the bylaws dictate the panel "shall" meet with both sides present. Defendants and Participants also proclaimed their panel to be a secret committee, all the while communicating with them behind Messina's back. Messina had no contact with the alleged hearing panel until two days before the scheduled hearing on December 13, 2003 (at which time Defendants Linkins, Watson and Westfall suddenly referred to themselves as a "Disciplinary Committee").

117. Despite numerous requests over several weeks (before the hearing) for ASLET's Legal Counsel to provide a written opinion that this committee was legally created, Messina never received any opinion. After the refusal, and after learning of the involvement of an individual (Westfall) that his investigation had uncovered evidence against, and of the involvement of personal associates of Defendants and Participants (including Westfall, Linkins and Watson, who benefited from their association with Defendants and Participants) Messina refused to attend the Defendants' fraudulent and already predetermined, expulsion.

A36

 

**Y. PLANS TO EXPEL MESSINA ARE RUSHED, WHEN HIS ON SITE AUDIT EXPOSES SUBSTANTIAL EVIDENCE OF FINANCIAL FRAUD**

118. On December 20, 2003, one day after Messina conducted an on site financial inspection at ASLET Headquarters, in the presence of a member witness and another member (a Certified Public Accountant), and uncovered clear and substantial evidence of financial fraud, Casavant, Hackett, Konrath, Meyer, Grossi, Smith, Dees, Gifford and other Participants held a sudden and previously unscheduled Board meeting to endorse the findings of the allegedly impartial panel, which had been generated by Defendants while Messina was conducting the financial inspection and seeking incriminating records.

**Z. RULES CHANGE FOR EFFORTS TO REMOVE HIM AS A DIRECTOR VIA A MEMBERSHIP BALLOT**

119. On December 20, 2003, Messina received notice from Casavant that the ballots to remove him as a director, that were supposed to be mailed out "on or about December 1, 2003" would instead be mailed out on or about December 29, 2003, with the findings of the alleged impartial hearing panel added to the mailing.

**AA. EFFORTS INTENSIFY TO DISCREDIT MESSINA AND TO AGAIN TRY TO PREVENT HIM FROM ATTENDING THE ANNUAL MEETING AND SEMINAR.**

120. On December 31, 2003, Hackett and Casavant mailed out another set of "charges" to the membership, which included rebuttals of Messina's responses to their previous two sets of charges. Although the bottom of the letter contained the names of all ASLET directors, at least one director has stated that he and other directors were not informed of this set of "charges" before they were sent out.

A37

 

## BB. FRAUDULENT ADVERTISING OF ASLET SECURITY MEASURES

121. From the point at which the Defendants and other Participants took control of the Enterprise, members and prospective members have been misled into believing that there were certain screening and security protocols in place to help insure that they would be networking, training, training with, and sharing intelligence with either:

       i.      Regular Members, who consisted of Law Enforcement Officers, or legitimate Law Enforcement Trainers, whose identities were verified by the ASLET Office, or

       ii.     Associate Members, who were screened and "sponsored" by Regular Members.

122. Government agencies have spent taxpayer dollars to send their personnel to ASLET seminars, based primarily on the belief that their personnel would be in a relatively safe and secure environment with others who were either screened or sponsored by someone who was screened. This false belief was based on a plethora of mailings, advertisements, promotional material and application forms that have been disseminated through the years. This, in addition to the information published on the ASLET website, the corporation's bylaws, and the screening practices of the original ASLET administration, would lead any reasonable person to believe that at least minimal security standards were in place. Records recovered by Plaintiffs, dating back to September 11, 2001, clearly show, however, that none of this was true, and, in fact, the only requirement to have a membership application approved was for the applicant's check or credit card to clear.

A38

## IX.        FACTS RELEVANT TO THE § 1964 CLAIMS

### A.    The Enterprise

123.    At all relevant times, at least the following "Enterprise" existed within the meaning of 18

U.S.C. § 1961(4). This Enterprise is an entity that engaged in activities affecting interstate and

foreign commerce, and was an enterprise at all times relevant to this Complaint. The Defendants

participated in the operation and management of each aspect of this Enterprise and conducted its

affairs through their pattern of unlawful activity within the meaning of 18 U.S.C. § 1961(1)(B),

including execution of their scheme to defraud, corrupt, cheat, steal and convert the money and

property of Plaintiffs. Each Defendant has knowingly and intentionally engaged in acts to further

the conspiracy to defraud Plaintiffs, obstruct justice, retaliate against a witness/informant and

conceal the existence of the Enterprise.

### 1.    The Executive Board Enterprise

124.    The Board Enterprise is an association-in-fact enterprise that is comprised of Defendants,

and many others involved in the law-enforcement training field. It is included as an enterprise

because each of the Defendants was associated with this Enterprise and has conducted or

participated, directly or indirectly, in the management and operation of the affairs of this

Enterprise through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(B),

1961(5) and 1962(c) (First Claim for Relief below). Defendants also conspired to engage in such

conduct (Second Claim for Relief below), and conspired to acquire or maintain an interest in or

control of the Board Enterprise through unlawful activity (Fourth Claim for Relief below).

### a.    Purpose of the Enterprise

125.    At all relevant times, the purposes of the Board Enterprise were: (1) to allow the

controlling participants to reap improper financial benefits from ASLET; (2) to conceal all

improprieties in the conduct of ASLET business and to hinder, delay and prevent the

A39




communication of federal offenses to federal law enforcement officers; (3) to retaliate against any person or persons attempting to mitigate or stop the improper acts committed by the members of the enterprise; and (4) to provide financial or other beneficial rewards to members of the Enterprise and others providing assistance to them.

126.  Planning. The members of the Board Enterprise formulated a broad-ranging plan to control the affairs of the corporation and reap personal and professional benefits. The members of the Board Enterprise recognized that the success of the plan was dependent on concealing the evidence of financial wrongdoing, security breaches, and violations of the law in the conduct of corporate elections.

127.  At all relevant times, the Defendants used the Board Enterprise to further their illegitimate purpose of using the corporation as a personal piggy bank and to obtain unfair advantages over Plaintiffs in the solicitation of government and private training contracts. Plaintiffs, the intended victims of the scheme, were defrauded and cheated out of hundreds of thousands of dollars, and were also cheated out of the ability to protect themselves and their law enforcement agency employers from sharing law enforcement sensitive information with unscreened individuals.

   **b.    Membership in the Board Enterprise**

128.  The membership in the Board Enterprise is as follows:

        a.    Frank A. Hackett, Jr.

        b.    Andrew Casavant

        c.    Greg Meyer

        d.    Gary T. Klugiewicz

        e.    Tim Dees

        f.    Lisa Konrath

A40




g. David Smith

h. David Grossi

i. Mary Gifford

j. William Westfall

k. Dan Watson

l. Julie Linkins

m. Glenn Young; and

n. Those other officers and executives, managerial and supervisory personnel, and legal counsel of ASLET, who are presently unknown to Plaintiffs, and who participated as officers, directors, lawyers for the Defendants and Participants and assisted in making and implementing decisions relating to the scheme. The identities of those individuals will be revealed in discovery.

c. **Structure of the Enterprise**

129. At all relevant times, the Board Enterprise was an ongoing association-in-fact enterprise of individuals with a common purpose, a continuity of structure and personnel, and a consensual decision-making structure that was used to effect its scheme to defraud, corrupt, cheat, steal, obtain by fraud and convert the money and property of Plaintiffs, and to hinder, delay and prevent the communication of information relating to the commission and possible commission of federal offenses, and to retaliate against any party that provided truthful information to federal law enforcement officers. The roles that were performed by the various members of the Board Enterprise are described as follows:

130. Members of the Board. The following individuals:

a. Frank A. Hackett, Jr.

A41

40




    b.    Andrew Casavant

    c.    Greg Meyer

    d.    Gary T. Klugiewicz

    e.    Tim Dees

    f.    Lisa Konrath

    g.    David Smith

    h.    David Grossi

    i.    Mary Gifford

131. Committee Personnel. The following individuals served to conceal Defendants' scheme, to hinder, delay and prevent the communication to federal law enforcement officers of information relating to the commission and possible commission of federal offenses, and to retaliate against a witness/informant who had provided truthful information to law enforcement officers of the United States:

    a.    Julie Linkins

    b.    William Westfall

    c.    Daniel Watson

132.    Glenn E. Young: a Captain with the Security Police Force of NIMA. Young used his United States government e-mail account to construct false and fraudulent reports that were instrumental in the Enterprise's scheme to defraud, to retaliate against a witness/informant, and to hinder, delay and prevent the communication of truthful information to federal law enforcement officers. Young, as a NIMA employee, violated Executive Order 12333, and DOD Directive 89000, in providing the reports to Defendant Hackett and others.

133.    Other individuals. Those other officers and executives, managerial and supervisory

A42

 

personnel, and legal counsel of ASLET, who are presently unknown to Plaintiffs, and who participated as officers, directors, lawyers for the Defendants and Participants and assisted in making and implementing decisions relating to the scheme. The identities of those individuals will be revealed in discovery.

134. Defendants and Participants managed and operated the Board Enterprise and the scheme. In managing and organizing the Board Enterprise and scheme, the Defendants played a central role, dictating its structure, decisional process, and organization.

### d. Distinction Between the Board Enterprise and of Unlawful Activity Within The Meaning of 18 U.S.C. § 1961(1)(B)

135. As described herein, the Board Enterprise was separate and apart from the pattern of unlawful activity within the meaning of 18 U.S.C. § 1961(1)(B), because the Enterprise engaged in a variety of unlawful activity and its structure was beyond that required for the commission of the pattern of unlawful activity. The members of the Board Enterprise included innocent parties unaware of the Defendants' and Participants' scheme or the use of the Enterprise in its execution.

### e. Continuity of The Board Enterprise

136. The Board Enterprise was created at least as early as 1994 when "double dipping" and fraudulent spending practices, and fraudulent efforts to obtain advantages in procuring government and private training contracts, as well as the efforts to cover-up those activities, were uncovered at the ASLET corporate office. At that time, those involved in the Board Enterprise contemplated its indefinite duration. Its personnel and structure continued over a substantial period of time until the date of the filing of this Complaint.

### f. Culpability of Members of the Enterprise

137. Some of the members of the Board Enterprise, including each of the Defendants and Participants, acted with culpability in their conduct of its affairs. Other members of the Board




Enterprise were the unwitting instruments or victims of the culpable members of the Board

Enterprise.

### Racketeering Acts Related to the Mail and Wire Fraud Scheme

138.    At all times relevant to this Complaint, as previously alleged herein, and

continuing until the time of the filing of this complaint, in the EDNY and elsewhere,

Defendants and others known and unknown did knowingly and intentionally devise and

intend to devise a scheme and artifice to defraud, and obtain money and property from,

members of the public by means of material false and fraudulent pretenses, representations,

and promises, and omissions of material facts, knowing that the pretenses, representations,

and promises, were false when made.

139.   It was part of said scheme and artifice that the Defendants published a corporate "Policies

and Procedures Manual" (Implemented June 4, 1997, revised November 18, 1999, and

republished by Defendant Hackett in February of 2001, to be distributed to the Board and

membership) that stated that the financial procedures used by the corporation were those of

Generally Accepted Accounting Practices ("GAAP"), namely the Accrual System of Accounting

("ASA"), when in fact they used a Cash Method of Accounting ("CMA").

140.   It was further part of said scheme and artifice that as corporate members and donors

became aware of these false statements, they were instead informed through published meeting

minutes that the CMA was "recommended" by the independent auditor, when in fact the

opposite was true.

141.   It was further part of said scheme and artifice that, in order to conceal the accounting

frauds, the Defendants made numerous statements through electronic and postal mailings that

this method (CMA) was not being used to hide unpaid bills that were being passed from one

A44



fiscal year to next, when in fact that was the case.

142. It was further part of said scheme and artifice that defendants and their co-conspirators would, by withholding these liabilities from one fiscal year to the next, cause current and prospective members, sponsors and contributors to believe the Enterprise had much greater financial and management stability than it actually had, and would prevent the public, members, corporate directors and government officials from uncovering those activities.

143. It was further a part of said scheme and artifice that Defendants communicated to the public nationwide in their own periodical that was distributed through the United States mails, and via the corporation's website on the Internet, that ASLET was the nation's largest, or premier, law enforcement training organization with 7,000 members representing 18,000 agencies, and that the organization's membership, and "Certified Law Enforcement Trainer" credentials were valuable assets to law enforcement officers and trainers, when, in fact, these memberships and credentials were signed by a Defendant who had obtained control of the Enterprise by utilizing a "Doctorate of Philosophy" from an entity described by the U.S. Department of Justice as the nation's "largest diploma mill", and had committed additional fraudulent and tortious acts that caused the value of any ASLET membership or credential to plummet in the law enforcement community.

144. It was further part of said scheme and artifice that Defendants would cause false and misleading assurances and guarantees that the Defendants were following the recommendations of their Certified Public Accountants ("CPAs") (made to those seeking answers to accounting issues) in utilizing the CMA, when, in fact, the corporation's accountants had recommended the use of the ASA, to be disseminated by mail and by interstate wire transmissions.

A45




145. It was further part of said scheme and artifice that Defendants would take and receive and cause to be taken and received from the mails communications concerning membership, including payments via check, and credit card for memberships in the corporation.

146. It was further part of said scheme and artifice that defendants and their co-conspirators would mail and distribute via electronic mail and Internet website posting press releases and other public statements addressing members concerns and commenting on particular management issues.

147. It was a further part of said scheme and artifice that Defendants and their co-conspirators would and did misrepresent, conceal, and hide and cause to be misrepresented, concealed, and hidden, the purpose of, and acts done in furtherance of, the scheme to defraud.

148. It was a further part of said scheme and artifice, and in furtherance thereof, that Defendants would and did communicate with each other and with their co-conspirators and others, in person, by mail, and by telephone and other interstate and foreign wire facilities, regarding accounting issues, acts of fraud and omission committed by officers and directors and ways to suppress such information, and regarding ways to identify and target those exposing the aforementioned wrongdoing.

149. For the purpose of executing and attempting to execute the scheme and artifice described herein, Defendants and their co-conspirators would and did: knowingly place and cause to be placed in any post office or authorized depository for mail matter, matters and things to be sent and delivered by the United States Postal Service ("USPS") and private mail carriers; took and received therefrom such matters and things; and knowingly caused to be delivered by mail according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter and thing, in violation of 18 U.S.C.§ 1341,

A46



including, but not limited to, the instances set forth below in paragraphs "176-182" of this Complaint: **[Mail Fraud Acts]**

150. For purposes of executing and attempting to execute that scheme and artifice, Defendants and their co-conspirators would and did knowingly transmit and cause to be transmitted in interstate and foreign commerce by means of wire communication writings, signs, signals, pictures and sounds (collectively "transmissions") in violation of 18 U.S.C. § 1343, including, but not limited to, the transmissions set forth below in paragraphs "151-175" of this Complaint. **[Wire Fraud Acts]**

### 1. Defendants Used the Wires to Further the Scheme

151. From early 1995 onward, Klugiewicz, Smith, and others used the wires, to engineer and direct the cover-up of financial irregularities at the former corporate office in Lewes, Delaware. They frequently sent electronic mail messages using "CompuServe" accounts provided to the Defendants and others by the corporation, to communicate amongst themselves and with others to further the scheme. Said e-mail transmissions utilized e-mail servers in several states, and, via interstate wire, traveled to, at a minimum, Delaware, Texas, Wisconsin, and New York

152. On or about October 12, 1997, Klugiewicz sent electronic mail messages to directors of the corporation, in furtherance of the scheme to conceal and disguise financial irregularities at the corporate office. Said e-mail transmissions utilized e-mail servers in several states, and, via interstate wire, traveled to, at a minimum, Delaware, Texas, Wisconsin California, Louisiana, and New York.

153. On or about July 30, 1997, Klugiewicz, Smith, and others known and unknown, used interstate telephone wires to conduct a corporate meeting at which Defendants and others fraudulently misled and concealed from others, including Plaintiffs, the extent of financial irregularities at the Lewes, Delaware corporate office. This telephone conference utilized



interstate wires to connect, at a minimum, Defendants and other Participants in Wisconsin, Delaware, California, and New York.

154.  On or about October 13, 1997, Klugiewicz, Smith, and others, sent electronic mail messages to (then corporate director) Messina, advising Messina to stop investigating financial irregularities at the corporate office, and threatening retaliation if he did not (notwithstanding the fact that Section 141 of Title 8 of DCGL requires elected corporate directors, such as Messina, to perform such fiduciary functions.  Said e-mail transmissions were forwarded, via interstate wire, between, at a minimum, Delaware, Texas, Wisconsin, California, Louisiana and New York.

155.  From early 2001 onward, Hackett, Klugiewicz and others began to utilize the internet to offer memberships in the corporation, resulting in memberships being sold via a credit card form provided on the corporation's website, or via a printed out form that Defendants provided for prospective purchasers to download and mail to the corporate office with a check, money order, or with credit card information.  This use of the Internet resulted, at a minimum, in the transmission, via interstate wire, of the web pages referenced above from Illinois to Maryland.

156.  On or about December 24, 2003, Casavant, Dees, Grossi, Meyer, Hackett, Konrath, Gifford, and Smith caused a facsimile transmission furthering the scheme to be sent, via interstate wire, from Frederick, Maryland, to Lindenhurst, NY. In particular, this transmission was an attempt to threaten and coerce Messina into withdrawing his letter to the corporation's membership detailing the financial improprieties and security breaches he had discovered in his investigation of the ASLET office, said letter having been generated in response to the Defendants' charges against him.

157.  On or about December 23, 2002, Klugiewicz, Hackett, Grossi, Konrath, Meyer, Smith and others, in an attempt to conceal financial, security, and legal irregularities at the corporate

A48

office, and to discredit Messina whose investigation had detailed same, posted a letter on several internet web pages, falsely advising members of the corporation that the Board had found that charges of wrongdoing made by Messina and others against the Executive Director were unfounded. In fact, however, there had been no investigation, whatsoever (a fact later acknowledged by Klugiewicz's successor as Board Chair, Casavant), and Defendants simply utilized the mailing to conceal from the Plaintiffs the existence of financial, security, and legal irregularities in the conduct of the corporation's business. This use of the internet resulted, at a minimum, in the transmission of the web pages referenced above, via interstate wire, from Illinois to Maryland, and the forwarding of e-mail transmissions between Wisconsin, Maryland, Florida, Arizona, California, Illinois and other states.

158.   On or about December 23, 2002, Klugiewicz, Hackett, Grossi, Konrath, Meyer, Smith and others, in an attempt to conceal financial, security, and legal irregularities at the corporate office, and to discredit Messina (whose investigation had detailed same), posted the minutes of a Board meeting of the corporation that falsely stated that an investigation had found that charges of wrongdoing made by Messina and others against the Executive Director were unfounded. In fact, however, there had been no investigation, whatsoever (a fact later acknowledged by Klugiewicz's successor as Board Chair, Casavant), and Defendants simply utilized the web page to conceal from the Plaintiffs the existence of financial, security, and legal irregularities in the conduct of the corporation's business.  This use of the internet resulted, at a minimum, in the transmission of the web pages referenced above, via interstate wire, from Illinois to Maryland, and the forwarding of e-mail transmissions between Wisconsin, Maryland, Florida, Arizona, California, Illinois and other states.

159.  On or about October 10, 2002, Klugiewicz caused electronic mail messages to be sent to

A49

Defendants and others, detailing Klugiewicz's non-existent review of Hackett's performance and recommending extension of his contract along with a salary increase. This allowed for continued concealment of the financial and security irregularities at the corporation, and served to hinder, delay and prevent the communication to a federal law enforcement officer or Judge of information relating to the commission and possible commission of a federal offense. Said e-mail transmissions were forwarded, via interstate wire, between, at a minimum, Delaware, Wisconsin, Illinois, California, and New York

160. On or about October 10, 2002, Klugiewicz, Hackett, Meyer, Grossi and others known and unknown, used interstate telephone wires to conduct an "Executive Committee" meeting at which Defendants schemed to falsely advise the membership that Klugiewicz had performed a review of Hackett's job performance, pursuant to the requirements of the ASLET bylaws. Defendants recommended an extension of Hackett's contract along with a salary increase for the purpose of rewarding Hackett for his leading role in the concealment of the Enterprise's activities. This allowed for continued concealment of the financial and security irregularities at the corporation, and served to hinder, delay and prevent the communication to a federal law enforcement officer or Judge information relating to the commission and possible commission of a federal offense. The telephonic meeting traveled over interstate wires between, at a minimum, Wisconsin, Maryland, California, and Illinois.

161. On or about October 17, 2002, Klugiewicz, Meyer, Konrath, Grossi, Smith and others known and unknown, used interstate telephone wires to conduct a Board meeting at which defendants and others fraudulently misled Director Messina and the membership of the corporation, to wit: Defendants heaped praise on Hackett's performance, all the while being aware that Klugiewicz had never performed any actual review of Hackett's job performance, and

A50



that his recommended extension of Hackett's contract along with a salary increase was for the

purpose of furthering the concealment of the Enterprise's activities. This allowed for continued

concealment of the financial and security irregularities at the corporation, and served to hinder,

delay and prevent the communication to federal law enforcement officer or Judge of information

relating to the commission and possible commission of a federal offense. This telephonic meeting

traveled over interstate wires between, at a minimum, Maryland, California, Wisconsin, and Illinois.

162.  Between October 10 and December 12, 2002, Klugiewicz, Grossi, Meyer, Hackett,

Konrath, Smith, and others exchanged numerous electronic mail messages in support of

Hackett's contract extension of his contract and salary increase. This allowed for continued

concealment of the financial and security irregularities at the corporation, and served to hinder,

delay and prevent the communication to federal law enforcement officer or Judge relating to the

commission and possible commission of a federal offense Said e-mail transmissions were

forwarded, via interstate wire, between, at a minimum, Delaware, Wisconsin, California, Illinois and

New York.

163.  On or about December 23, 2002, Klugiewicz, Hackett, Meyer, Grossi, Konrath, Smith and

others, in an attempt to conceal financial, security, and legal irregularities at the corporate office,

and to discredit Messina whose investigation had detailed same, posted on the corporation's

internet website, the minutes of a December 19, 2002, Board meeting that contained omissions

made by Grossi in his former role as Secretary of the corporation. Grossi, in an attempt to

conceal the Defendants' failed attempt to remove Messina from the Board by a secret vote,

intentionally concealed and omitted details of the failed vote to conceal from Plaintiffs the

Defendants' active effort to conceal their wrongdoing, to hinder, delay and prevent the

communication to federal law enforcement officers, and to retaliate against director Messina for

A51

his performing his fiduciary duties as a corporate director and for providing truthful information regarding the commission and possible commission of a federal offense to federal law enforcement officers. This use of the internet resulted, at a minimum, in the transmission of the web pages referenced above, via interstate wire, from Illinois to Maryland, and the forwarding of e-mail transmissions between Wisconsin, Maryland, Florida, Arizona, California, Illinois and other states.

164. On or about June 4, 2003, Hackett, Grossi, Smith, Meyer, Casavant and others utilized interstate wires to hold a telephonic "Finance Committee" meeting wherein Defendants stated falsely and fraudulently that the corporation's outside auditors had "recommended" the corporation's use of the CMA system, when, in fact, the auditors, and the previous auditors, had recommended the use of the ASA system. The telephonic meeting traveled over interstate wires between, at a minimum, Maryland, California, and Illinois.

165. On or about June 21, 2003, Hackett, Meyer, Grossi, Smith, Casavant, Dees, Konrath, Gifford and others held a Board meeting wherein Defendants stated falsely and fraudulently that the corporation's outside auditors had "recommended" the corporation's use of the CMA system, when, in fact, the auditors, and the previous auditors, had recommended the use of the ASA system. Defendants used the interstate wires to send electronic mail messages containing the minutes of the aforementioned meeting to approve said minutes and further their scheme on or about June 27, 2003. Said e-mail transmissions utilized e-mail servers in several states, and traveled to, at a minimum, Maryland, Illinois, California, Arizona, Indiana, and Washington.

166. On or about June 27, 2003, Hackett, Meyer, Grossi, Smith, Casavant, Konrath, Gifford, Dees and others utilized interstate wires to post, on the corporation's website, the minutes of the Board meeting (discussing corporate accounting policies) for all members to view. This use of the wires was in

A52



furtherance of Defendants' fraudulent attempt to convince the membership that the use of the CMA system had been recommended by outside auditors, when, in fact, the ASA system was being utilized by Hackett and others to: 1) fraudulently withhold bills payable from the view of the membership; 2) submit false and fraudulent Annual Returns to the IRS (IRS Form 990's); and to 3) deceive members, and charitable donors (many of whom viewed the publicly available Form 990's to make donation decisions) into believing that the corporation was being run soundly, when, in fact, due to mismanagement and excessive overhead, it was running annual deficits. The electronic posting utilized interstate wires and was viewed by, or visible to, ASLET members in all fifty states. This use of the internet resulted, at a minimum, in the transmission of the web pages referenced above, via interstate wire, from Illinois to Maryland, and the forwarding of e-mail transmissions between Wisconsin, Maryland, Florida, Arizona, California, Illinois and other states.

167.  On or about August 5, 2003, Dees sent an electronic mail message to an Internet "list-server" utilized by many members of the corporation to discuss law enforcement training issues and corporate business, wherein Dees sought to falsely reassure the corporation's members that the CMA method of accounting was not being utilized to hide unpaid bills that were being passed from one fiscal year to the next. This e-mail message traveled, at a minimum, from Washington to Lindenhurst, New York.

168.  Between about August 1 and December 31, 2003, Casavant, Grossi, Meyer, Dees, Hackett, Konrath, Gifford, Smith, Westfall, Linkins, Watson and Young exchanged numerous electronic mail messages furthering Defendants' efforts: 1) to conceal the financial irregularities and security breaches from the Plaintiffs; 2) to hinder, delay and prevent the communication to a federal law enforcement officer or Judge of information relating to the commission and possible commission of a federal offense; and 3) to retaliate against a person who had provided truthful

A53



information about the commission of a federal offense to federal law enforcement officers. These messages used electronic mail servers in various states, and traveled in interstate commerce, between, at a minimum, Maryland, Illinois, California, Arizona, Indiana, Virginia and Missouri.

169.  On or about September 4, 2003, Casavant, Grossi, Meyer, Hackett, Konrath, Dees, Gifford, and Smith caused a facsimile transmission furthering the scheme to be sent via interstate wire from Frederick, Maryland to Lindenhurst, New York.. In particular, this transmission set forth that Messina would not be receiving records required to be forwarded to him by Title 8, Section 220(d) of DGCL due to his arbitrary suspension as a member, which "complicated" (according to Defendants and other Participants) his status as a director.

170.  On or about November 11, 2003, Casavant, Grossi, Meyer, Hackett, Konrath, Dees, Gifford, and Smith caused a facsimile transmission furthering the scheme to be sent from Frederick, Maryland to Lindenhurst, New York. In particular, this transmission set forth a notification that the Board had voted at its 8 p.m. meeting of November 11, 2003, to send out proxy ballots (on or about December 1, 2003) in an attempt to remove Messina as a corporate director. The letter stated, contrary to Section 141 of DGCL, that the removal would be determined by a simple majority of those voting. The letter was initialed by Melissa Taylor, who, upon information and belief, works from 8 a.m. to 5 p.m., although the Board meeting referred to therein commenced at 8 p.m. and ended at 9:34 p.m.

171.  On or about November 12, and on or about December 11, 2003, Casavant, Grossi, Dees, Meyer, Hackett, Konrath, Gifford, Smith and Young caused facsimile transmissions furthering the scheme to be sent from Frederick, Maryland to Lindenhurst, New York. In particular, these transmissions set forth the terms of Messina's participation in what Casavant had stated was an "impartial" hearing panel. The "impartial panel," was, in fact, stacked with longstanding

A54



professional associates of the defendants, each of whom had contacts with, and had received professional benefits from, many of the Defendants controlling the Enterprise.

172. On or about December 20, 2003, Casavant, Grossi, Meyer, Hackett, Konrath, Dees, Gifford, Smith, Linkins, Watson, Westfall and Young caused a facsimile transmission furthering the scheme to be sent from Frederick, Maryland to Lindenhurst, New York in furtherance of the scheme. In particular, this transmission claimed that the Defendants' "impartial" hearing panel had found Messina guilty of making statements damaging to the corporation and to Hackett and Meyer, when, in fact, the hearing panel was a sham created by Defendants and other Participants to hinder, prevent and delay Messina's communication of further information concerning the commission or possible commission of federal offenses, and to retaliate against Messina for his having provided truthful information concerning the commission or possible commission of federal offenses to federal law enforcement officers.

173. On or about December 24, 2003, Casavant, Grossi, Meyer, Hackett, Konrath, Dees, Gifford, and Smith caused a facsimile transmission furthering the scheme to be sent from Frederick, Maryland to Lindenhurst, New York. In particular, this transmission set forth an attempt to coerce Messina into withdrawing his response to the Defendants' charges against him.

174. On or about October 20, 2003, Hackett, Casavant, Meyer, Grossi, Young, Dees, Gifford, Konrath, Smith, Watson, Linkins, and Westfall, caused a facsimile transmission to be sent via interstate wires, from Frederick, Maryland to Lindenhurst, New York, in support of the efforts of Defendants and other Participants to remove Messina from membership, in furtherance of their efforts to hinder, prevent and delay Messina's communication of further information concerning the commission or possible commission of federal offenses, and to retaliate against Messina for his having provided truthful information concerning the commission or possible commission of

A55

54



federal offenses to federal law enforcement officers.

175.  On or about September 30, and on or about October 2, 2003 Young and Hackett caused electronic mail transmissions furthering the scheme to be sent, via interstate wire, from the Eastern District of Missouri (using Young's U.S. government e-mail account of "youngge2@nima.mil) to the District of Maryland (to Hackett's e-mail account of HacFAH@aol.com). In particular, these transmissions, which improperly used a United States military e-mail account to send and receive said transmissions, contained false allegations, and backdated dates, regarding a conversation that Young, while on duty, had with a medical doctor, who is a member of ASLET, and whom Defendants believed to be an associate of Messina. In addition, these electronic mail transmissions constitute the dissemination of information gathered by Young (against Messina, a U.S. citizen) while on duty, under color of law, in his capacity as an employee of the NIMA. Defendants' actions, in addition to being fraudulent, were in clear violation of Executive Order 1233 and NIMA Policy Directive 8900 (" NIMA will conduct intelligence activities in accordance with applicable law and regulations, employing only those collection techniques necessary to perform its mission. NIMA will not collect, retain, or disseminate information about U.S. citizens unless explicitly authorized and then will limit collection to the least intrusive means available. Violators of applicable law, authorities, and regulations are subject to appropriate administrative action as defined in NI 1455.1 (reference 1.b. (4)). NIMA may refer cases to appropriate law enforcement agencies for prosecution and imposition of civil or criminal penalties.")

### 2. Defendants Used the Mails to Further the Scheme

176.  On or about March 1998, Klugiewicz and others, in an attempt to conceal the financial irregularities at the corporate office and discredit Messina, whose investigation had detailed

A56

same, sent a letter via the U.S. Mail to Plaintiffs, at over five-thousand (5,000) locations in and outside of the U.S., advising all members of the corporation that an investigation by the Board at their Annual Meeting in Mobile, Alabama, had found that charges of wrongdoing made by Messina and others against the Executive Director were unfounded. In fact, however, an internal investigation, accepted and acknowledged by Klugiewicz in an e-mail message of December 19, 1996, had found charges of wrongdoing to be accurate. Included amongst the recipients of the mailing, in the EDNY, were Plaintiffs Messina, Demetriou, as well as Elizabeth Kennedy, Barry Culpepper, Fabio Mattiasich, and other ASLET members residing in the EDNY.

177.   On or about March 1, 1998, Klugiewicz and others, in an attempt to conceal the financial irregularities at the corporate office and discredit Messina, whose investigation had detailed same, authored and published an article in the March/April 1998 issue of "The Trainer," a bi-monthly magazine published by the corporation for its members, declaring that all allegations of wrongdoing leveled by members and office employees of the corporation were "not sustained." Klugiewicz and other participants caused this to be sent via the U.S. Mail to Plaintiffs, at over five-thousand (5,000) locations in and outside of the U.S., advising all members of the corporation that an investigation by the Board at their Annual Meeting in Mobile, Alabama, had found that charges of wrongdoing made by Messina and others against the Executive Director were unfounded. In fact, however, an internal investigation, accepted and acknowledged by Klugiewicz in an e-mail message of December 19, 1996, had found charges of wrongdoing to be accurate. Included amongst the recipients of the mailing, in the EDNY, were Plaintiffs Messina, Demetriou, as well as Elizabeth Kennedy, Barry Culpepper, Fabio Mattiasich, and other ASLET members residing in the EDNY.

178.   On or about December 23, 2002, Klugiewicz, Hackett, Grossi, Konrath, Meyer, Smith and

A57

others, in an attempt to conceal financial, security, and legal irregularities at the corporate office, and to discredit Messina whose investigation had detailed same, sent a letter via the U.S. Mail to all candidates for election to the corporate Board, falsely advising all members of the corporation that the Board had found that charges of wrongdoing made by Messina and others against the Executive Director were unfounded. In fact, however, there had been no investigation, whatsoever (a fact later acknowledged by Casavant, Klugiewicz's successor as Board Chair), and Defendants simply utilized the mailing to conceal from the Plaintiffs the existence of financial, security, and legal irregularities in the conduct of the corporation's business. Included amongst the recipients of the mailing were Plaintiffs Messina and Demetriou, in the EDNY, and candidate Jim Smith, a sworn police officer of a subdivision of the State of New York, residing in the Northern District of New York.

179. On or about October 21, 2003, Hackett, Casavant, Meyer, Grossi, Young, Konrath, Dees, Smith, Gifford, Watson, Linkins, and Westfall, caused a letter to be sent via the U.S. Mail to Messina in support of the efforts of Defendants and other Participants to remove Messina from membership, in furtherance of their efforts to hinder, prevent and delay Messina's communication of further information concerning the commission or possible commission of federal offenses, and to retaliate against Messina for his having provided truthful information concerning the commission or possible commission of federal offenses to federal law enforcement officers.

180. On or about December 31, 2003, Hackett, Casavant, Meyer, Grossi, Konrath, Dees, Smith, Gifford, Watson, Linkins, and Westfall, in an attempt to influence members to vote for the removal of Messina as a corporate director, to conceal financial, security, and legal irregularities at the corporate office, and to discredit and retaliate against Messina, whose investigation had

A58



detailed same, sent a letter via the U.S. Mail to all voting members stating that the Board had found that charges of wrongdoing made by Messina and others against the Executive Director were unfounded. In fact, however, there had been no investigation, whatsoever, of Messina's claims, and Defendants simply utilized the mailing to conceal from the Plaintiffs the existence of financial, security, and legal irregularities in the conduct of the corporation's business. This letter posted the names of all corporate directors at the bottom of the letter, in an attempt to deceive members into believing that all directors were informed and endorsed the letter, when, in fact, at least one director claimed that he had not been informed of the letter or its contents until after it was mailed. Included amongst the recipients of said letter were Plaintiffs Messina and Demetriou, as well as Elizabeth Kennedy, Fabio Mattiasich, Nick Brando, Jennifer Haas, and others, all residents if the EDNY.

181.    Consistently throughout the year, Defendants and other Participants mail, or cause to be mailed, via U.S. Mail and private carriers, color brochures soliciting the purchase of memberships in the corporation. Prospective members, and current members who receive bulk quantities of these brochures and are asked to solicit membership sales as agents of the corporation, are advised (falsely) that individuals who are not currently employed as law enforcement officers or law enforcement trainers may join as "Associate Members" only by being sponsored by a member in good standing. Records obtained by Messina show conclusively that no such security screening procedures are in place.

2.    **Customers Used the Mails and Wires to Further the Scheme**

182.    The following constitute examples of regular communications:

ASLET members Jennifer Haas, Elizabeth Kennedy, Barry Culpepper, Nick Brando, Rob Coffman, Fabio Mattiasich, and others, received solicitations for membership and/or membership

A59



renewal sent by Defendants and other Participants via U.S. Mail. These members then used the

U.S. Mail and interstate telephone wires to make payments for the memberships purchased from

Defendants and other Participants. Plaintiffs, after a review of recent ASLET financial documents,

believe that over $200,000 per year has been sent via U.S. Mail and interstate telephone wires, with

over 4000 such mailings or wirings occurring each year at an average remittance of approximately

forty-five dollars ($45).

### 3.    Pattern

183.    Each such communication during the period constituted a separate execution of the scheme

through mails, and interstate wire communications.

184.    Each such communication accomplished, among other things, the purpose of retaining the

fruits of the scheme by the Defendants in the form of increased profits and improper benefits to

them.

### Racketeering Acts Related to Obstruction of Justice and Retaliating Against a Witness/Informant

185.    Defendants Casavant, Klugiewicz, Hackett, Meyer, Smith, Konrath, Grossi, Dees,

Gifford, and other Participants withheld corporate books and records, and ordered others not to

cooperate with Messina, so as to prevent him from gathering additional evidence of double

dipping, spending fraud, contracting fraud, and fraud in the conduct of corporate elections, and

forwarding it to agents of the FBI and/or United States Postal Inspectors.

186.    Defendants Casavant, Klugiewicz, Hackett, Meyer, Smith, Konrath, Grossi, Dees,

Gifford and other Participants planned and executed a campaign to use false and fraudulent

mailings and e-mail messages to damage Messina's business, and his professional reputation, in

an effort to prevent him from continuing his investigation and forwarding documentary and

testimonial evidence to agents of the FBI and/or United States Postal Inspectors.

A60



187.    According to a sworn affidavit obtained in January 2003 from Dees, Hackett ordered Dees (before he was appointed Secretary), to destroy all documents in Dees' possession relating to the allegations of fraud and misconduct at the former corporate office in Lewes, DE. Dees admitted, in the same affidavit, to having destroyed those documents.

188.    Defendants Hackett, Meyer, Smith, Konrath, Casavant, Grossi, Dees, Gifford, Westfall, Linkins, Watson, and other Participants planned and executed a campaign to use false and fraudulent mailings and e-mail messages to remove Messina from membership in the corporation, in an effort to retaliate against him for his having provided truthful information to individuals whom Defendants and other participants clearly knew were law enforcement officers as defined in 18 U.S.C. § 1515 (a)(4)(A). Defendants created a sham "hearing panel" comprised of Westfall, Linkins and Watson, who all had ties to corporate directors accused of wrongdoing by Messina, and all had received, and might continue to receive, benefits from the Defendants for their actions. Although corporate bylaws dictated that the "hearing panel" was to meet at a designated time and place to hear arguments from Messina and from those (led by Meyer) seeking to discipline him, in fact, Defendants Meyer, Hackett, Casavant and others acting on their behalf had, for weeks, maintained *ex parte* communications with Linkins, Watson and Westfall to make certain that they aided in the completion of the scheme by removing Messina from membership in the corporation.

189.    The foregoing predicate acts, taken together, constitute a pattern of unlawful activity within the meaning of 18 U.S.C. § 1961(1)(B). The predicate acts are both related and continuous. The acts are connected to one another as part of a scheme to accomplish a uniform purpose. The repeated nature of this conduct during the period of the scheme and the threat of similar conduct occurring in the future makes the acts continuous.

A61

## C.    Summary of 18 U.S.C. § 1964 Allegations

190.  In connection with the activities giving rise to these claims, the Defendants at all relevant times acted corruptly, with malice, intent, and knowledge, and in reckless disregard of Plaintiffs' rights.

191.  At all relevant times, the Enterprise as defined herein was engaged in interstate and foreign commerce in various states, including New York.

192.  As set forth above, the Defendants at all relevant times in connection with the activities giving rise to these claims, conspired with each other and with others as yet unknown to engage in the various activities set forth herein and aided and abetted one another in these activities, all in violation of the statutes set forth herein, and specifically 18 U.S.C. § 2, and conspired to do so in violation of 18 U.S.C. § 1962(d). In addition, unknown individuals not yet named as Defendants conspired with the Defendants as alleged herein.

193.  Each of the Defendants agreed to the operation of the conspiracies to defraud, corrupt, cheat, steal, obtain by fraud and convert the property and money of Plaintiffs.

194.  As set forth above, at all relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, corrupt, cheat, steal, obtain by fraud and convert the money or property of Plaintiffs, the Defendants, on numerous occasions used and caused to be used the mails and wire communications. Each such use of the mails and wire communications in connection with and in furtherance of the scheme constitutes the offense of mail fraud in violation of 18 U.S.C. §§ 2 and 1341 and the offense of wire fraud in violation of 18 U.S.C. §§ 2 and 1343.

195.  As set forth above, at all relevant times, and in furtherance of and for the purpose of concealing the discovery of, and aiding the execution of the scheme and artifice to defraud the



Plaintiffs, the Defendants, on numerous occasions, did engage in misleading conduct towards another person, to wit, elected corporate director Messina, with the intent to hinder, delay, and prevent the communication to federal law enforcement officers of information relating to the commission of and possible commission of a federal offense. The defendants altered, concealed and destroyed corporate records, denied access to corporate records required to be granted under 8 Del. C. § 220(e), and schemed amongst themselves and with other Participants to "bankrupt" Messina through the publication (to the membership and the public) of (false) accusations of slander against Messina, while attempting to mislead the membership into (incorrectly) believing that the Defendants and Participants had "found" Messina's charges to be groundless. Such use of misleading conduct to hinder, delay and prevent Messina from communicating information to federal law enforcement officers was intended to give Defendants and Participants time to withhold and destroy corporate records, and to attempt to remove Messina as a member and director of the corporation to prevent his accessing the records. These acts constitute the offense of Obstruction of Justice in violation of 18 U.S.C. §§ 2 and 1512 (b)(3).

196.    As set forth above, subsequent to Messina's providing truthful information relating to the commission or possible commission of federal offenses to several law enforcement officers (as defined by 18 U.S.C. § 1515 (a)(4)(A)), and in furtherance of and for the purpose of executing and covering-up the scheme and artifice to defraud the Plaintiffs, the Defendants, on numerous, occasions did plan and execute several harmful actions towards another person (Messina), and towards additional persons (those believed to be associated with Messina), with the intent to retaliate against Messina and his associates, including attempts to interfere with their livelihoods and professional reputations, as a result of Messina's communication of truthful information relating to the commission and possible commission of a federal offense to several federal law

A63




enforcement officers. Such retaliatory conduct constitutes the offense of Retaliating Against a

Witness/Informant in violation of 18 U.S.C. §§ 2 and 1513 (e).

X.               **FIRST CLAIM FOR RELIEF**
                 (Violation of 18 U.S.C. §1962(c))
                 (Against All Defendants)

197.  Plaintiffs reallege paragraphs 1-196 above.

198.  Plaintiffs are "persons" under 18 U.S.C. §§ 1961(3) and 1962(c).

199.  Each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3) and 1962(c).

200.  The following enterprise constitutes an "enterprise" within the meaning of 18 U.S.C. §§

1961(4) and 1962(c), which enterprise was engaged in activities affecting interstate and foreign

commerce at all times relevant to this Complaint:

    a.    ASLET Executive Board

201.  Each of the Defendants was associated with this Enterprise and has conducted or

participated, directly or indirectly, in the management and operation of the affairs of the

enterprise through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(B),

1961(5) and 1962(c), to wit:

    a.    Multiple, repeated and continuous instances of mail fraud in violation of 18

        U.S.C. §§ 2 and 1341;

        and

    b.    Multiple, repeated and continuous instances of wire fraud in violation of 18

        U.S.C. §§ 2 and 1343.

202.  Plaintiffs suffered injury to their business or property within the meaning of 18 U.S.C. §

1964(c) by reason of the violation of 18 U.S.C. § 1962(c) committed by the Defendants.

A64

 

**XI.**           **SECOND CLAIM FOR RELIEF**
(Conspiracy in Violation of 18 U.S.C. § 1962(d) to Violate 18 U.S.C. § 1962(c))
(Against All Defendants)

203.  Plaintiffs reallege paragraphs 1-196 above.

204.  Plaintiff are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

205.  Each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d).

206.  The following enterprise constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4), 1962(c), and 1962(d), which enterprise was engaged in activities affecting interstate and foreign commerce at all times relevant to this Complaint:

        a.        ASLET Executive Board

207.  Each of the Defendants was associated with this enterprise and conspired within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c), that is, the Defendants conspired among themselves and with each of the Participants separately to manage or operate, directly or indirectly, in the conduct of the affairs of these enterprises in relationship to Plaintiffs through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5), 1962(c), and 1962(d) to wit:

        a.        Multiple, repeated and continuous instances of mail fraud in violation of 18 U.S.C. §§ 2 and 1341;

        b.        Multiple, repeated and continuous instances of wire fraud in violation of 18 U.S.C. §§ 2 and 1343; and

        c.        Multiple, repeated and continuous instances of obstruction of justice and retaliating against a witness/informant in violation of 18 U.S.C. §§ 2, 1512(b)(3), and 1513(e).

A65

 

208. Plaintiffs were injured in their business or property within the meaning of 18 U.S.C. §

1964(c) by reason of the commission of the unlawful activities within the meaning of

18 U.S.C. § 1961(1)(B) that were overt acts in violation of 18 U.S.C. § 1962(d)

committed by the Defendants.

**XII.**                    **THIRD CLAIM FOR RELIEF**
(Conspiracy in Violation of 18 U.S.C. § 1962(d) to Violate 18 U.S.C. § 1962(b))
(Against All Defendants)

209. Plaintiffs reallege paragraphs 1-196 above.

210. Plaintiffs are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

211. Each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3), 1962(a), and (d).

212. The following enterprise constitute an "enterprise" within the meaning of 18 U.S.C. §§

1961(4) and 1962(a), which enterprise was engaged in activities affecting interstate and foreign

commerce at all times relevant to this Complaint:

    a.    ASLET Executive Board

213. Defendants conspired among themselves and with each of the Participants separately

within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(b), that is, that

Defendants conspired among themselves and with each of the Participants separately to acquire

or maintain, directly or indirectly, an interest in or control of the Board Enterprise through a

pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5), and

1962(b), to wit:

    a.    Multiple, repeated and continuous instances of mail fraud in violation of 18

    U.S.C. §§ 2 and 1341;

    b.    Multiple, repeated and continuous instances of wire fraud in violation of 18

    U.S.C. §§ 2 and 1343, and




c.    Multiple, repeated and continuous instances of obstruction of justice and

retaliating against a witness/informant in violation of 18 U.S.C. §§ 2, 1512(b)(3), and

1513(e).

by acquiring or maintaining, directly or indirectly, an interest in or control of ASLET

Executive Board through a pattern of unlawful activity within the meaning of 18 U.S.C. §

1961(1)(B).

214.  The conspiracy set forth in the preceding paragraph amounted to separate conspiracies by

the Defendants with each of the Participants that also benefited from Defendants' activities.

215.  Plaintiffs were injured in their business or property within the meaning of 18 U.S.C. §

1964(c) by reason of the commission of the unlawful activities within the meaning of 18 U.S.C.

§ 1961(1)(B) that were overt acts in violation of 18 U.S.C. § 1962(d) committed by the

Defendants.

**XIII.**          **FOURTH CLAIM FOR RELIEF**
                (For Breach of Fiduciary Duty and Duty of Loyalty)
    (Against Hackett, Klugiewicz, Meyer, Grossi, Konrath, Casavant, Dees, Smith, and Gifford)

216.  Plaintiffs reallege paragraphs 1-196 above.

217.  Directors Hackett, Klugiewicz, Meyer, Grossi, Konrath, Casavant, Dees, Smith, and

Gifford, owed and owe ASLET fiduciary obligations.

218.  By reason of their fiduciary relationships, the above named Defendants owed and owe

ASLET the highest obligation of good faith, fair dealing, due care and loyalty.

219.  By reason of their positions as officers, directors and/or fiduciaries, and because of their

ability to control the business and corporate affairs of ASLET, the above named Defendants

owed and owed ASLET fiduciary obligations of trust, loyalty, good faith, and due care and were

and are required to use their utmost ability to control and manage ASLET in a fair, just, honest

and equitable manner.                          A67



220.    The above named Defendants were and are required to act in furtherance of the best interests of ASLET and its members so as to benefit all members equally and not in furtherance of their personal interest or benefit.

221.    Each director and officer of the corporation owes to ASLET and its members the fiduciary duty to exercise good faith and diligence in the administration of the corporation and in the use and preservation of its property and assets, and has the highest obligation of fair dealing.

222.    In addition, as officers and/or directors of a public charity, the above named Defendants had a duty to promptly disseminate accurate and truthful information with regard to the corporation's transactions.

223.    The acts complained of constitute violations of the fiduciary duties, specifically the duty of care and the duty of loyalty, owed by ASLET's officers and directors.

224.    As a result of the failures of the above named Defendants to perform their fiduciary obligations, ASLET has suffered damages for which the current and former Director Defendants are monetarily liable.

225.    As a result of the misconduct alleged herein, the current and former Director Defendants are liable to the corporation.

**XIV.**               **FIFTH CLAIM FOR RELIEF**
                    (For Waste of Corporate Assets)
    (Against Hackett, Klugiewicz, Meyer, Grossi, Konrath, Casavant, Dees, Smith, and Gifford)

226.    Plaintiffs reallege paragraphs 1-196 above.

227.    As a result of the conduct herein, and by failing to properly consider the interests of the corporation and its members by failing to conduct proper inquiry, review and supervision, the above named Defendants have caused ASLET to waste valuable corporate assets.

A68

 

228.    As a result of the waste of corporate assets, ASLET has suffered damages for which the above named Defendants are monetarily liable to the corporation.

XV.                     **SIXTH CLAIM FOR RELIEF**
                        (For Aiding and Abetting)
                        (Against All Defendants)

229.    Plaintiffs reallege paragraphs 1-196 above.

230.    All of the Defendants aided and abetted the act of concealing from and not disclosing material facts to Plaintiffs regarding their participation in the fraud, cover-up and obstruction schemes. Such facts would have been material to Plaintiffs' decisions to remit membership dues, to refrain from holding certain participants financially responsible for tortious and fraudulent acts committed while in ASLET's employ, and to direct certain investigative resources to areas other than investigation of Defendants.

231.    Defendants committed the following acts, among others, in furtherance of their aiding and abetting activities:

    a. They, and other participants with close personal ties to them, edited, concealed and destroyed documents and reports detailing breaches of duty committed by corporate officers;

    b. They directed other members of the corporation to alter documents and reports detailing breaches of duty committed by corporate officers and

    c. They removed individuals with the training and experience necessary to discover their wrongdoing from committees, or, in fact, simply eliminated an investigative committee (by falsely claiming said committee had no complaints presented to it to investigate), in order to delay, hinder and or prevent the communication to the Plaintiffs and to law

A69



enforcement officers of the United States, of evidence of the possible commission of

federal offenses by officers and directors of the corporation.

232.  All of the Defendants aided and abetted the fraudulent misrepresentations and omissions of

Hackett, Klugiewicz, Meyer and others, to Plaintiffs.

233.  Defendants' actions were committed willfully, maliciously, with intent to injure and

damage Plaintiffs, and with reckless disregard of Plaintiffs' legal rights and the sanctity of its

relationships.

234.  Plaintiffs suffered and continue to suffer actual damages due to these wrongful acts, which

Defendants aided and abetted.

**XVII.**                    **SEVENTH CLAIM FOR RELIEF**
                        (For Common Law Fraud)
                        (Against All Defendants)

235.  Plaintiffs reallege paragraphs 1-196 above.

236.  Defendants, over a multi year period, engaged in numerous false and fraudulent acts to

defraud Plaintiffs and others in the operation of the corporation. They falsely represented the

financial condition of the corporation, falsely represented that internal controls and accounting

systems existed when they did not, and falsely led Plaintiffs to believe that the corporation

practiced effective security procedures. Defendants represented that these programs eliminated

the need for additional investigations. They also represented that the elected directors would

ensure that its officers and directors were complying with all applicable laws, and corporate

bylaws relating to the operation of the corporation.

237.  Before Defendants made these representations, they knew that the Executive Directors

were involved in substantial wrongdoing and that their internal controls were insufficient to

prevent and detect wrongdoing.

A70



238.  Defendants made these material misrepresentations with knowledge of their falsity and with the intent to prevent the numerous law enforcement officer members of the corporation from seeking to investigate said wrongdoing, and to prevent, hinder and delay Messina from communicating evidence of the commission of offenses to the federal law enforcement officers.

239.  Plaintiffs reasonably and justifiably relied upon the Defendants' representations that neither the Executive Director nor the elected directors were involved in scheming to defraud the corporation and scheming to cover up said fraud. Had Plaintiffs known about the Defendants' participation in the scheme, a great many members, the majority being career law enforcement officers and law enforcement trainers, would have directed additional resources at investigating the Defendants, and would have refused to provide their own funds (in the form of membership dues) to financially support the fraudulent practices. The facts concealed and misrepresented by Defendants were material to Plaintiffs' decision to remit membership dues to the corporation.

240.  As a result, Plaintiffs suffered damages.

**XVIII.**                    **EIGHTH CLAIM FOR RELIEF**
                         (Against Hackett for Breach of Contract)

241.  Plaintiffs reallege paragraphs 1-196 above.

242.  In consideration of the substantial compensation and professional enhancement and prestige, which Hackett received as Executive Director, Hackett contracted with ASLET to act in the best interest of ASLET to cause ASLET to operate lawfully and properly.

243.  By his actions and omissions set forth herein, Hackett has breached his contractual obligation and commitment to ASLET, by not acting in the best interests of ASLET.

244.  ASLET has been damaged by Hackett's breach of his contract with ASLET.

A71





**XIX.**                  **DEMAND FOR JURY TRIAL**

     245. Plaintiffs demand a trial by jury on any and all issues triable of right.

**XX.**                   **PRAYER FOR RELIEF**

     WHEREFORE, the Plaintiffs pray for relief and judgment against all defendants, jointly and severally, as follows:

1. Actual damages incurred by the Plaintiffs owing to the wrongful acts and omissions of the Defendants herein;

2. Treble damages for awards entered under the First through the Third Claims for Relief, in addition to the cost of investigating and prosecuting this suit and reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c).

3. Equitable relief as may be appropriate pursuant to the provisions of 18 U.S.C. § 1964 and other law, including but not limited to:

    a. That this Court order that all of the defendants who are found to have violated 18 U.S.C. § 1962, disgorge all proceeds derived from any violation of 18 U.S.C. § 1962;

    b. Direction of an equitable accounting for all benefits, consideration and profit received, directly or indirectly, by any of the Defendants, including the imposition of a constructive trust, the voiding of any unlawful transfers, and the disgorgement of all ill-gotten gains and profits;

    c. Imposition of reasonable restrictions on the future activities or investments of any of the Defendants, including, but not limited to, prohibiting each Defendant and all persons acting in concert with each defendant, from committing any act of racketeering, as defined in 18 U.S.C. § 1961(1), and from associating directly or indirectly, with any other person known to them to be engaged in such acts of racketeering or with any person in

A72

 

concert or participation with them;

d. Enjoin and restrain each Defendant and all other persons in concert with each defendant from participating in any way, directly or indirectly, in the management and/or control of any of the affairs of ASLET, or, if ASLET has been or becomes dissolved, any successor entities of ASLET, or other entity affiliated with ASLET, known to them to be engaged in acts of racketeering, and from having any dealings about any matter that relates directly or indirectly to the management and/or control of ASLET and ASLET or any successor or affiliated entities known to them to be engaged in acts of racketeering;

e. Imposition and execution of equitable liens that may be appropriate;

4. Punitive damages, in an amount to be determined at trial, for the common law claims (Claims Four through Eight) on the grounds that the wrongful acts and omissions of the Defendants established herein were committed willfully, maliciously, with intent to injure and damage Plaintiffs, and with reckless disregard of Plaintiffs' legal rights;

5. Reasonable attorneys' fees and costs incurred in the prosecution of this action;

6. All costs, expenses and other fees incurred in the prosecution of this action;

7. Pre-judgment and post-judgment interest on actual damages incurred; and

A73




8.   All other and further relief as this Court deems just and proper to prevent and restrain further

violations of 18 U.S.C. § 1962, and to end the ongoing wrongful conduct of defendants.

Dated: East Meadow, New York
        January 15, 2004

                            LAW OFFICES OF
                            STEVEN M. LESTER


By:

                            Steven M. Lester (SL 2921)
                            Attorneys for Plaintiffs
                            325 Merrick Avenue
                            East Meadow, New York 11554
                            (516) 357-0056

A74

 

# 11806

Civil Action No.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PHILIP MESSINA, GEORGE DEMTRIOU,
individually and on behalf of all others similarly
situated, and derivatively on behalf of
AMERICAN SOCIETY OF LAW ENFORCEMENT
TRAINERS, INC.,

Plaintiffs,

-against-

FRANK A. HACKETT, JR., ANDREW CASAVANT,
GREG MEYER, et al.,

Defendants.

**COMPLAINT**

LAW OFFICES OF
**STEVEN M. LESTER**
325 MERRICK AVENUE
EAST MEADOW, NEW YORK   11554
(516) 357-0056

Attorneys for Plaintiffs

A75

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
PHILIP MESSINA,
GEORGE DEMTRIOU, individually and on
behalf of all others similarly
situated, and derivatively on behalf
of AMERICAN ENFORCEMENT TRAINERS, INC.

**DEFENDANTS**
FRANK A. HACKETT, JR.,
ANDREW CASAVANT, GREG MEYER, GARY
T. KLUGIEWICZ, TIMOTHY DEES, LISA
KONRATH, MARY GIFFORD, DAVID SMITH,
See Attached Rider

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Frederick Co, MD
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Law Offices of Steven M. Lester
325 Merrick Avenue
East Meadow, New York 11554
(516) 357-0056

ATTORNEYS (IF KNOWN)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

JAN 16 2004

LONG ISLAND OFFICE

PLATT, J.

LINDSAY, M.

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
   Plaintiff

☒ 3 Federal Question
   (U.S. Government Not a Party)

☐ 2 U.S Government
   Defendant

☐ 4 Diversity
   (Indicate Citizenship of Parties
   in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX
(For Diversity Cases Only)     FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**VI. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
   Proceeding

☐ 2 Removed from
   State Court

☐ 3 Remanded from
   Appellate Court

☐ 4 Reinstated or
   Reopened

☐ 5 Transferred from
   another district
   (specify)

☐ 6 Multidistrict
   Litigation

☐ 7 Appeal to District
   Judge from
   Magistrate
   Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 161 Medicare Act | ☐ 340 Marine | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Violations of 18 U.S.C. § 1962(c) -- RICO Statute; conspiracy in
violation of 18 U.S.C. § 1962(d); supplemental breach of fiduciary duty,
waste of corporate assets, fraud and breach of contract

**VII. REQUESTED IN
COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ YES   ☐ NO

**VIII. RELATED CASE(S)
IF ANY**
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE  1/15/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

A76

TX/ORAL
05 344
0170

## ARBITRATION

I, __Steven M. Lester__ _____ counsel for __Plaintiffs__ _____
_____ do hereby certify pursuant to the Local Arbitration Rule Section 3(c), that to the best
of    knowledge and belief the damages recoverable in the above captioned civil action exceed the sum of
$150,000 exclusive of interest and costs

____X____ Relief other than monetary damages is sought

_[signature]_

## DISCLOSURE OF INTERESTED PARTIES - LOCAL RULE 9

Identify any corporate parents, subsidiaries or affiliates of named corporate parties

_____ none _____

Did the cause arise in Nassau or Suffolk County? ____ yes ____

If you answered yes, please indicate which county ___ Suffolk ___

County of residence of plaintiff(s)     (1) __Suffolk__
                                        (2) __Suffolk__
                                        (3) _____

County of residence of defendant(s)   (1) __Frederick County__, Maryland
                                        (2) _____
                                        (3) _____

**I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.**

Yes__X__                    No_____

**Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?**

Yes_____ (If yes, please explain)     No__X__

_____

_____

_____

Please provide your E-MAIL Address and bar code     Your bar code consist of the initials of your
first and last name and the last four digits of your social security number or any other four digit number
registered by the attorney with the Clerk of Court.
**(This information must be provided pursuant to local rule 11 .1 (b) of the civil rules) ATTORNEY
BAR CODE:** SL 2921

A77

E-MAIL ADDRESS SMLester@aol.com



## RIDER TO CIVIL COVER SHEET

DEFENDANTS: DAVID GROSSI, JULIE LINKINS, WILLIAM WESTFALL, DANIEL
WATSON, GLENN YOUNG, JOHN DOES 1-10