VICTOR F. BATTAGLIA
ROBERT D. GOLDBERG
PHILIP B. BARTOSHESKY
VICTOR F. BATTAGLIA, JR.

# BIGGS AND BATTAGLIA
ATTORNEYS AT LAW
921 NORTH ORANGE STREET
P.O. BOX 1489
WILMINGTON, DELAWARE 19899
(302) 655-9677
TELECOPIER (302) 655-7924

OF COUNSEL
JOHN BIGGS III
GERARD P. KAVANAUGH, SR.
S. BERNARD ABLEMAN

Writer's Direct E-mail: Goldberg@batlaw.com

January 27, 2006

**By E-File**
The Honorable Joseph J. Farnan, Jr.
U.S. District Court for the District of Delaware
844 North King Street, Room 4209
Lock Box 27
Wilmington, DE 19801

> *Re:    Messina, et al. v. Hackett, et al.*
> *C.A. No. 05cv00344 JJF*

Dear Judge Farnan:

I am writing in compliance with the Court's Order of October 25, 2005 to advise the Court on the status of the above matter. In that Order the Court granted a continuance so that the Board of Directors (the "Board") of my client, the American Society of Law Trainers, Inc. ("ASLET") could investigate the litigation and decide upon its litigation options.

I am advised that the Board has conducted an investigation of the litigation and that the Board wishes to substitute ASLET as the plaintiff in lieu of the individual plaintiffs now prosecuting the action. I am further advised by Mr. Finger, plaintiffs' counsel, that the individual plaintiffs are in agreement with this realignment. The Board is still considering the exact manner in which it will proceed and I hope to be able to advise Your Honor further in the near future.

Very truly yours,

/s/ Robert D. Goldberg
Robert D. Goldberg (I.D. #631)

RDG/mnj

cc:    Clerk of the Court
       David L. Finger, Esquire
       Paul A. Bradley, Esquire
       James Joseph Freebery IV, Esquire

James J. Freebery

Partner

jfreebery@mccarter.com



McCarter & English, LLP
Suite 1800
919 N. Market Street
P.O. Box 111
Wilmington, DE 19899
tel 302.984.6300
fax 302.984.6399
www.mccarter.com

MCCARTER
ENGLISH
ATTORNEYS AT LAW

March 2, 2006

**VIA E-FILE AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:   Philip Messina and George Demetriou, individually and on behalf
      of all others similarly situated, and derivatively on behalf of
      American Society of Law Enforcement Trainers, Inc. v.
      Frank A. Hackett, Jr., Andrew Casavant, Greg Meyer, Gary T. Klugiewicz,
      Timothy Dees, Lisa Konrath, Mary Gifford, David Smith, David Grossi,
      Julie Linkins, William Westfall, Daniel Watson, Glenn Young, John Does
      1-10 and American Society of Law Enforcement Trainers, Inc.
      C.A. No. 05-344 JJF

Dear Judge Farnan:

On January 27, 2006 – the date that the Court-ordered stay of the above matter expired – Robert D. Goldberg, Esq. filed a status letter with the Court on behalf of the Board of Directors (the "Board") of the American Society of Law Enforcement Trainers, Inc. ("ASLET"). In its letter, the Board purported to advise the Court that it wished to substitute ASLET for Philip Messina ("Messina") and George Demetriou ("Demetriou") as Plaintiffs in the two year old RICO litigation. Thirty days have now passed since the Board informed Your Honor that it wished to proceed with the litigation – without any subsequent action. I write at this time on behalf of Defendants to request that the Court issue an Order imposing a deadline on the Board, Messina and/or Demetriou for formally proceeding in conjunction with their wish.

As Your Honor may recall, Plaintiffs Messina and Demetriou, "[i]ndividually...and derivatively on behalf of [ASLET]" filed a 72 page, 245 paragraph Complaint in the United States District Court for the Eastern District of New York on January 16, 2004. ASLET is a volunteer, non-profit organization. Defendants promptly filed a Motion to Dismiss the Complaint on February 20, 2004 arguing *inter alia* that the Plaintiffs' claims were time barred, that this Court lacked personal jurisdiction, that service of process was insufficient and that Plaintiffs lacked individual and derivative standing and failed to state a claim under RICO, as

A110

The Honorable Joseph J. Farnan, Jr.
March 2, 2006
Page 2



well as making improper venue and forum non conveniens arguments. Based in part on Defendants' motion, the Honorable Judge Thomas C. Platt of the Eastern District of New York dismissed Plaintiffs' Complaint without prejudice, allowing Plaintiffs to transfer the case to the Your Honor's Court. In May 2005, the case was finally transferred to Delaware for resolution. Your Honor may recall that Plaintiffs and their counsel failed to appear for a July 13, 2005 status conference and July 25, 2005 motion hearing and the Court was set to rule on Defendants' transferred Motion to Dismiss. In August 2005, however, Mr. Goldberg entered his appearance on behalf of the ASLET Board and David L. Finger, Esq. appeared on behalf of Messina and Demetriou jointly requesting a stay to "take remedial measures as to some or all of the matters raised by Plaintiffs in the Complaint. Such action could limit the issues in this case, or possibly eliminate the need for litigation." Based on their joint Motion to Stay, Your Honor on October 25, 2005 stayed the litigation and gave Mr. Goldberg and Plaintiffs until January 27, 2006 to advise the Court of its plans for litigation going forward. The Court also denied without prejudice and with leave to renew Defendants' Motion to Dismiss.

The stay of the litigation is now expired. While the Court been advised that Messina and Demetriou wish to abandon the case and now allow ASLET to stand in their shoes, Your Honor has not been informed on how or when they intend to accomplish this goal. Defendants thus request the Court impose a date certain deadline for Plaintiffs to act. Upon expiration of such date without action by Plaintiffs, Defendants will immediately renew their Motion to Dismiss.

Respectfully submitted,

/s/ James J. Freebery

James J. Freebery
(DE Bar ID #3498)

JJF:jr

cc:    Robert D. Goldberg, Esq. (via e-file and e-mail)
       David L. Finger, Esq. (via e-file and e-mail)
       Paul A. Bradley, Esq. (via e-mail)

A111

McCarter & English, LLP
Suite 1800
919 N. Market Street
P.O. Box 111
Wilmington, DE 19899
tel 302.984.6300
fax 302.984.6399
www.mccarter.com

James J. Freebery
Partner

jfreebery@mccarter.com



**McCARTER ENGLISH**
ATTORNEYS AT LAW

April 12, 2006

## VIA E-FILE AND HAND DELIVERY

The Honorable Joseph J. Farnan, Jr.
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE  19801

Re:   Philip Messina and George Demetriou, individually and on behalf
      of all others similarly situated, and derivatively on behalf of
      American Society of Law Enforcement Trainers, Inc. v.
      Frank A. Hackett, Jr., Andrew Casavant, Greg Meyer, Gary T. Klugiewicz,
      Timothy Dees, Lisa Konrath, Mary Gifford, David Smith, David Grossi,
      Julie Linkins, William Westfall, Daniel Watson, Glenn Young, John Does
      1-10 and American Society of Law Enforcement Trainers, Inc.
      C.A. No. 05-344 JJF

Dear Judge Farnan:

Attached for your convenience and review is a copy of the Verified Complaint filed last week in
the Court of Chancery of the State of Delaware in and for Sussex County by plaintiffs in the
above captioned matter, pending before this Court.

Respectfully submitted,

/s/ James J. Freebery

James J. Freebery
(DE Bar ID #3498)

JJF:jr
Enclosure

cc:   Robert D. Goldberg, Esq. (via e-file and e-mail) (w/encl.)
      David L. Finger, Esq. (via e-file and e-mail) (w/encl.)
      Paul A. Bradley, Esq. (via e-mail) (w/encl.)

A112

HARTFORD     STAMFORD     NEW YORK CITY     NEWARK     PHILADELPHIA     WILMINGTON     BALTIMORE
860.275.6700   203.324.1800   212.609.6800   973.622.4444   215.979.3800   302.984.6300   410.659.8500

EFiled:  Apr  3 2006 11:13AM EDT

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE 10946128

IN AND FOR SUSSEX COUNTY

JENNIFER HAAS, PHILIP MESSINA,
GEORGE DEMETRIOU,
ELIZABETH KENNEDY,
and EDWARD MANDELBAUM,

Plaintiffs,                                    Civil Action No. _____

v.

AMERICAN SOCIETY OF
LAW ENFORCEMENT TRAINERS, INC.,
a Delaware corporation,

Defendant.

### VERIFIED COMPLAINT

Plaintiffs, upon knowledge as to themselves and upon information and belief as to all other matters, allege for their complaint as follows:

### Nature of the Action

1.  This is an action brought pursuant to Section 291 of the Delaware General Corporation Law, 8 Del. C. § 291 ("Section 291"), and Rule 149 of the Rules of the Court of Chancery, seeking appointment of a receiver for defendant corporation, said receiver to have the authority to: take charge of the corporation's assets, business and affairs, discharge its outstanding debts (including the monies owed Plaintiffs for reimbursements of director's expenses), and prosecute any and all actions that said receiver may see fit to commence and/or assume control of, for the purpose of recovering assets wasted and/or misappropriated by any corporate officers, directors, and/or employees.

2.  As detailed herein, defendant is an insolvent corporation beset by gross mismanagement and fraud and is wasting its current assets in a manner that: (i)

is harmful to creditors; (ii) has rendered the corporation unable to pay its current debts to Plaintiffs as they have matured in the usual course of business; and (iii) has created a deficiency in corporate assets with no reasonable prospect that its corporate purpose can be fulfilled in the face thereof.

3.    Plaintiffs have no adequate remedy at law.

### The Parties

4.    Plaintiffs Messina, Kennedy, Haas and Demetriou are members of the Executive Board (hereinafter "directors") of the corporation, are members in good standing of the corporation, and are creditors of the corporation. Plaintiff Haas is the current Secretary of the corporation, while Messina is the immediate past Treasurer of the corporation. Plaintiff Mandelbaum is and was at all times relevant hereto, a member in good standing of the corporation.

5.    Defendant American Society of Law Enforcement Trainers, Inc. (ASLET) is a Delaware non-stock, not-for-profit corporation formed for the advancement of law enforcement training, with a registered agent, Harvard Business Services, Inc. 16192 Coastal Highway, Lewes, Delaware, 19958. The corporation's principal place of business is in Frederick, County of Frederick, Maryland.

6.    ASLET was incorporated in Delaware on March 16, 1987.

7.    From sometime during the year 2001, ASLET has been beset by gross mismanagement and fraud in the operation of its business.

### ASLET's FINANCIAL FAILURE

8.    From a high of $400,000 in assets with no debt, in or about 2001, ASLET, as of March 07, 2006, now has current liabilities that exceed current unrestricted assets by over $140,000. Even if "restricted" assets (consisting of an "Endowment Fund" that had been dedicated solely to law enforcement scholarships) of $45,586.38 could be used for operating expenses, current liabilities still exceed total assets by approximately $95,000.

9.    Plaintiffs, who include four of the nine directors of ASLET, possess documentary evidence that clearly shows that ASLET is insolvent, in that its debts greatly exceed its assets, and it is unable to meet its obligations to

A114

creditors as they arise in the usual course of business.

10. Plaintiffs Messina, Haas, Demetriou and Kennedy are four of the nine directors of the corporation. Directors Patrick Martin, Robert Bragg, Kathleen Kelley, Christopher Scaglione and Christopher Yanuzzi comprise the majority of the Board.

### Defendant Is Insolvent and Defaults On Its Obligations

11. Delaware has long recognized that a company is insolvent when it is unable to meet its obligations as they fall due in the usual course of business. ASLET's liabilities far exceed its assets and it is unable to pay its debts as they become due. In addition, the Defendant is unable to obtain any satisfactory scores from any of the financial/accounting measurement ratios that measure an organization's liquidity (the ability to pay debts as they come due), profitability (ability to make and maintain a profit) or long run solvency (ability to remain an ongoing concern).

12. On February 8, 2006, ASLET Treasurer Christopher Yannuzzi notified the directors of the corporation that "The Sky is Falling" (see e-mail message attached as Exhibit A). Mr. Yannuzzi further advised that his plan was "to string things out as long as possible" (Exhibit A). When pressed for a true and honest plan, Treasurer Christopher Yannuzzi admitted, on March 03, 2006, he has no plan (Exhibit B).

13. In this case, ASLET has proved unable to satisfy amounts owed to Plaintiffs and other creditors. These amounts have come due in the regular course of ASLET's business. By virtue of ASLET's failure to pay these amounts from its funds, and its failure to obtain additional financing to cover the amounts due, ASLET has become insolvent.

14. An electronic mail message from the Treasurer sent on March 1, 2006, delineated bills currently payable of $151,267.03 and current assets of $59,667.57. Of these current assets, $45,586.38 are restricted assets, in that they were solicited from the public with the promise of being used solely for scholarships and, under ASLET's Bylaws, are prohibited from being used for ongoing business expenses. By any definition, Defendant is insolvent.

A115

15. Despite its insolvency, ASLET has not indicated any intention to liquidate. Rather, ASLET continues to expend funds and incur additional expenses, thereby further impairing its financial condition. Should ASLET be allowed to continue in this manner, its creditors and members will continue to suffer irreparable harm.

## Defendant is Beset By Gross Mismanagement and Fraud

16. Delaware law has recognized that a receiver may be appointed when a corporation is beset by fraud and/or gross mismanagement, or there exists extreme circumstances causing imminent danger of great loss which cannot otherwise be prevented.

17. ASLET has, unfortunately, suffered from corporate mismanagement and fraud, since at least the year 2001. Great financial losses have already accumulated, will certainly accelerate, and now pose a danger to the defendant, its creditors, and to the public (as ASLET is a public charity with an obligation to the public under Delaware law).

18. In early 2001, Director Messina was asked by ASLET members to look into several financial dealings of the (then) recently recruited ASLET Executive Director, Frank A. Hackett ("Hackett").

19. Shortly thereafter, it was learned that Hackett had obtained the Executive Director's position using a "PhD degree" granted by "La Salle University" of Mandeville, Louisiana; "a sophisticated diploma mill", which was subsequently closed after a raid conducted by the Federal Bureau of Investigation. In the fall of 1997 (according to detailed congressional testimony provided by Mary Lee Warren, Deputy Attorney General of the United States), "all management officials at La Salle were convicted of various charges of mail fraud, wire fraud and money laundering".

20. Pursuant to his fiduciary obligations as a director of a Delaware corporation, Messina began to request records and explanations from Hackett and others regarding questioned financial activities and his claimed "PhD". Messina's requests were refused and Messina, on December 26, 2002, was forced to file an action in this Court (CA 2244-S) pursuant to Section 220 of the

DGCL, seeking books and records of the corporation.

21.    Hackett, acting in concert with others, paid and accrued legal expenses of at least $249,000 unsuccessfully fighting Director Messina's "220 Demand" and unsuccessfully attempting to remove Director Messina from the Executive Board through machinations that were clearly contrary to Delaware law. Said defense was improper and unnecessary. Upon information and belief, legal fee expenditures of only $15,000 were approved by the ASLET Executive Board.

22.    On January 16, 2004, Messina and Demetriou individually, and derivatively on behalf of members of the corporation, filed a civil action ("the Complaint"), Case No. 04-cv0170, in the United States District Court for the Eastern District of New York against Hackett, eight other directors of the corporation, and three individuals aiding and abetting their activities. The Complaint, *inter alia*, seeks recovery on behalf of the members of the corporation for monies allegedly misappropriated through acts of mail fraud, wire fraud, racketeering conspiracy, substantive racketeering, breaches of fiduciary duty and corporate waste.

23.    This action was removed to the District of Delaware upon motion of defendants' therein counsel, and is now pending before the Honorable Joseph J. Farnan, Jr. in the United States District Court for the District of Delaware (Case No. 05cv00344).

24.    Subsequent to the filing of the afore-referenced action, Hackett resigned his position.

25.    Despite Hackett's destruction of the corporate treasury in an unsuccessful attempt to ignore Section 220 of the DGCL, and the improper attempts to remove a director performing his fiduciary duties, Messina was re-elected as a director by the ASLET membership in January 2005, and again in January, 2006, each time receiving the highest number of votes of any candidate running for the nine available Board positions.

26.    On April 20, 2005, ASLET received a report from a Special Outside Counsel, one of the nation's foremost criminal tax attorneys, who is a former member of ASLET. This report advised ASLET that the ASLET Board should "retain qualified counsel together with expert assistance in Delaware corporation

A117

litigation and corporate counsel practice ethics to determine:

    a)    To what extent fees paid to outside parties were improperly incurred/paid; to the extent any were properly incurred, were they overcharged. Such a review should focus on determining whether actions in representing ASLET were improper in the first instance and performed negligently.

    b)    Whether there is any claim against prior directors or the Executive Director (or any insurance carrier having coverage for such losses) for disloyalty or misconduct including by defending the Delaware lawsuits rather than producing records as required by law, and/or causing ASLET to incur legal fees and other expenses needlessly."

27.    On June 13, 2005, ASLET received a report from a Legal Issues Committee, comprised of a well-respected law enforcement trainer/attorney who formerly held a senior position in the United States Department of Justice and a highly respected corporate attorney. The report fully concurred with the Special Counsel Report and added:

"The Committee recommends that ASLET immediately seek out and retain qualified Delaware and/or Maryland counsel to analyze and/or pursue, as appropriate, the specific recommendations pertaining to:

    1.  the propriety of fees incurred by, and paid to, (outside counsel), including possible over billing claims,

    2.  potential claims against prior Board members or Executive Director for possible disloyal conduct and breach of fiduciary duty to ASLET, including possible improper use of ASLET funds for personal purposes, and

    3.  potential conflict of interest and negligent representation claims against (outside counsel).

The Committee further believes that the Board should seek out and retain said counsel as soon as possible, due to potential statute of limitations implications for pursuing some or all of these claims. The Committee suggests that the Board appoint the ASLET Treasurer to lead the effort to identify and retain qualified counsel, on a contingent fee basis if necessary, to implement the above recommendations and pursue recovery of monetary

and other damages, as appropriate, resulting from any potentially misspent ASLET funds, breaches of fiduciary duties, etc.

Finally, the Committee recommends that, should retained counsel determine that (outside counsel) breached its fiduciary responsibilities to ASLET during its representation, that ASLET consider filing formal complaint(s) with the appropriate Bar discipline agencies and/or organizations."

28.    On January 3, 2006, a Special Litigation Advisory Committee appointed (by the previous Executive Board) to study the derivative claims contained in the Complaint filed by Messina and Demetriou, found the complaint to be meritorious and on point. The committee recommended that ASLET adopt the plaintiff's action and prosecute the derivative claims against former directors and others, in order to recover funds allegedly taken from the corporation. The committee report also attacked the lack of management controls at ASLET.

29.    On January 18, 2006, the ASLET Executive Board voted to accept the recommendation of the Special Litigation Advisory Committee and adopt the derivative claims made in the suit for the purpose of attempting to recover funds improperly taken from ASLET, and salaries paid to those who breached their fiduciary duty of loyalty.

30.    Plaintiffs are aware, however, that "legal strategy" was discussed at the aforementioned Board meeting (by the non-plaintiff directors), delineating how the Executive Board might deceive the District Court and the claimants in the prosecution of the action.

31.                    At that meeting, former ASLET Director Mary Gifford, a current defendant in the pending civil action, asked a "hypothetical" question to (then) Board Chair Robert Bragg of "what would happen if we voted to adopt the litigation and then did nothing". The ASLET "Parliamentarian", a member of the Minnesota Bar, was immediately asked by Board Chair Bragg for her opinion.  The "Parliamentarian" responded with a comment to the order of "it would go away".

32.    After notifying United States District Judge Farnan, via counsel's letter dated January 26, 2006, that ASLET intended to assume control of the

A119

derivative action against its former directors, the Executive Board simply did nothing and ASLET's new Board Chair manifested his intent to let the pending action falter, contrary to the corporation's written representation to the District Court.

33.    ASLET has failed to provide for subsequent payment to counsel in the civil action, failed to provide payment for audits of legal fees and corporate records requested by counsel, but has found time to send, with ASLET funds, two directors and one of their friends to Las Vegas, during February, on a "Promotional" trip that had no chance of recovering the funds advanced. All of this activity occurred with full knowledge that the requisite steps had not been taken to fulfill ASLET's commitment to the U.S. District Court, or to its myriad of creditors.

34.    In addition to actively deceiving the District Court and the parties litigating therein, ASLET is only now beginning to grasp the financial mismanagement and wrongdoing of its recently departed "Assistant Executive Director", who resigned during the corporation's annual seminar on January 20, 2006.

35.    During the last several months of her employment, the former Assistant Executive Director ("AED") had been continually requested to provide Messina with financial records, including, but not limited to: reconciled balance sheets, copies of paid invoices, and details of donations and registrations.

36.    While controlling the office, and the books and records of the corporation, the former AED had simply ignored Messina's demands, or asked for and received assistance from non-plaintiff directors. These directors ran interference for her with Messina and specifically authorized her to withhold records from Messina, (then) the Treasurer of the corporation. (see attached e-mail from the prior Board Chair, Robert Bragg, attached as Exhibit C).

37.    Despite the demands of Messina, who was attempting to fulfill his fiduciary duties as Treasurer and Director, non-plaintiff members of the Executive Board colluded and/or conspired with the AED to withhold documents and information that would have revealed continued waste, mismanagement, and fraud.

38.    During her tenure, the former AED appears to have inflated the assets of the

A120

corporation; knowingly misstated the revenue received from the annual seminar; and improperly removed funds from the (restricted) Endowment Fund without the required approval of the Executive Board.

39.    While employed by ASLET, and while a member of the Executive Board, the former AED, upon information and belief, instituted plans to organize a competing police training organization, utilizing, upon information and belief, the ASLET membership list that was, and remains, the property of ASLET. Upon suddenly leaving ASLET'S employ in the midst of its annual seminar, she deleted all of her electronic messages from an ASLET computer (in violation of federal law).

40.    Defendant ASLET is in default on invoices owed to its outside auditor for its annual financial audit for the fiscal year ended March 31, 2005.

41.    In addition, ASLET has failed to provide the minutes of Executive Board meetings requested by the auditor, who has, as a result of said failure, refused to provide a final audit without the requested minutes.

42.    On January 31, 2006, in an e-mail message in which he copied the entire Board, the current Treasurer notified Board member and co-plaintiff, George Demetriou that he was aware that ASLET's outstanding bills totaled more than three times its operating capital. Subsequent to that date the Board accrued thousands of dollars of expenses. After that date, even though the Treasurer knew that ASLET was insolvent, certain directors were reimbursed by the Treasurer (including himself) and monies were advanced to some directors to attend a Trade Show in February in Las Vegas, which held no reasonable expectation of gaining a net profit for ASLET (or even of recovering its costs.)

43.    On March 21, 2006, Board Chair Patrick Martin notified all of the corporation's directors that he had "consulted" with legal counsel concerning "bankruptcy". Martin stated that filing for bankruptcy protection for ASLET was not feasible. Martin made no mention of how the corporation would address the over $151,000 in current debts utilizing its unrestricted assets of approximately $2,100. Martin further articulated that bankruptcy would impede the corporation's business plans. Unfortunately there are no business plans other

A121

than to "string out the creditors", raise money via a "membership drive", "promote the upcoming seminar" or "negotiate with the creditors".

44.    On March 27, 2006, the final explanation for why ASLET is insolvent surfaced in an electronic-mail message from the ASLET Treasurer to the Executive Board. The Treasurer stated that the "expenses" for the 2006 Annual Meeting and Seminar held in late January 2006 in Albuquerque, New Mexico, had been $202,851, compared to expenses of $45,891 for the same event held in January, 2005 in Jacksonville, Florida. As revenues only increased from $186,262 to $208,027, the resultant disappearance of the normal $100,000 plus profit on the annual seminar doomed ASLET to failure.

45.    Upon information and belief, only gross mismanagement and/or fraud could account for seminar "expenses" ballooning to a level never approached in twenty years of operations.

46.    Plaintiffs respectfully submit that the true reason for the non-plaintiff directors not filing a Petition for Bankruptcy Protection under Title 11 of the United States Code ("Bankruptcy Code") is to avoid the appointment of a Trustee under the Bankruptcy Code, as such an event would result in an extensive review of recent and past actions of ASLET's directors and officers.

47.    Similarly, Plaintiffs respectfully submit that the true reason for the non-plaintiff directors not fulfilling their responsibilities of pursuing claims against former directors is to protect their friends and associates, and perhaps themselves, to the detriment of members and creditors of the corporation.

48.    The majority of management has simply proven themselves unable and unwilling to conduct the affairs of ASLET with due and proper regard for the rights of creditors, members, and the public and private donors who rely on the good faith management of a non-profit tax-exempt charity.

49.    Absent the appointment of a receiver, existing creditors will be defrauded, membership money will be collected from unsuspecting law enforcement officers, law enforcement agencies and well-intentioned donors, and spent on antecedent debts (knowing that the corporation can, in no way, survive to provide promised services to the members). Third parties (who will be solicited

to provide goods and services) will become new creditors that a reasonable director would or should know will never be paid. The public welfare, the primary duty of a non-stock, Section 501(c)(3) corporation will be seriously harmed.

**WHEREFORE,** Plaintiffs pray that the Court, pursuant to Section 291 of the DGCL, and Rule 149 of the Rules of The Court of Chancery:

    a.    Appoint such person or entity as the Court deems proper and issue an Order that said Receiver be authorized with the same powers provided in 8 Del. C. § 279, including but not limited to:

> 1) the power to assume all management control of the corporation, its books, assets, business and affairs;
> 2) to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, that may be necessary;
> 3) to discharge its outstanding debts as he/she deems appropriate;
> 4) and grant such other powers as the Court deems necessary;.

    b.    Waive the provisions of Court of Chancery Rules 148 through and including 168 pertaining to the duties of Receivers; and

    c.    Grant such other relief as the Court may deem just and proper.

Jennifer Haas

Philip Messina

George Demetriou

Elizabeth Kennedy

Edward Mandelbaum
711 N. Wellwood Avenue
Lindenhurst, New York 11757
(631) 226-8383
Plaintiffs Pro Se

Dated: March 31, 2006

A124

James J. Freebery
Partner

jfreebery@mccarter.com

McCarter & English, LLP
Suite 1800
919 N. Market Street
P.O. Box 111
Wilmington, DE 19899
tel 302.984.6300
fax 302.984.6399
www.mccarter.com



ATTORNEYS AT LAW

June 22, 2006

**VIA E-FILE AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE  19801

Re:  Philip Messina and George Demetriou, individually and on behalf
of all others similarly situated, and derivatively on behalf of
American Society of Law Enforcement Trainers, Inc. v.
Frank A. Hackett, Jr., Andrew Casavant, Greg Meyer, Gary T. Klugiewicz,
Timothy Dees, Lisa Konrath, Mary Gifford, David Smith, David Grossi,
Julie Linkins, William Westfall, Daniel Watson, Glenn Young, John Does
1-10 and American Society of Law Enforcement Trainers, Inc.
C.A. No. 05-344 JJF

Dear Judge Farnan:

I write to respectfully request this Court revisit Defendants' Motion to Dismiss which
Your Honor denied "with leave to renew" in conjunction with the stay of the litigation on
October 25, 2005. (See attached Exhibit A, Memorandum Order at p. 4). The Court's stay of
the litigation expired in January 2006; yet plaintiffs have failed to take *any* action with respect to
their pending RICO complaint.

In support of Defendants' request, I attach a copy of the Motion to Dismiss originally
filed in the Eastern District of New York (Exhibit B) as well as the March 2, 2006 and April 12,
2006 letters from counsel providing Courts with an update of the (lack of) progress of the case.
(Exhibits C and D).  As always I am available at the Court's convenience to address this
correspondence or to be heard regarding Defendants' application for dismissal.

Respectfully submitted,

James J. Freebery
(DE Bar ID #3498)

JJF:jr
Enclosures

A125

ME1\5712506.1

The Honorable Joseph J. Farnan, Jr.
June 22, 2006
Page 2



cc:    Robert D. Goldberg, Esq. (w/encls., via e-file and e-mail)
       David L. Finger, Esq. (w/encls., via e-file and e-mail)
       John B. Palmer, Chubb Group (w/encls., via e-mail)

MEI\5712506.1

A126

For informed ASLET members and those that wish
to preserve the security and integrity
of the Law Enforcement Community.

*Use the links below to access
information about ASLET that
may have been kept from you.*

--------------

*note:* Merriam-Webster defines the following:
a **whistleblower** is:
*someone "who reveals wrongdoing
within an organization to the public or to those in positions of authority."*

------------------

### Update September 2006

I asked Phil Messina what was the status of ASLET since the Bankruptcy hearing on August 23. Here ฺ said:

"For all intents and purposes, ASLET is no longer conducting business. It is now in the hands of a Chap Bankruptcy Trustee and the only question that remains is whether the trustee will pursue damages caus( ASLET in the past to help reimburse creditors.

"I was at the Bankruptcy Meeting on August 23rd and the trustee seems willing to pursue damages, but problem is that ASLET's total assets are about $16,000.00 and their debts total over $200,000.00, so th doesn't have enough money left to pursue current litigation or other damages unless we can find an atto willing to work on a contingency basis, in which case the trustee has the authority to authorize costs.

"Any damages recovered would then go back to ASLET's creditors. If it's possible to find an attorney willing to work for cost (and then share any percentage with a Delaware Attorney who will work with h Delaware Court) we will do so to allow ASLET to pursue the litigation which seeks money back from t raped the ASLET treasury.

"So the bottom line is we need to find not one but (probably) two attorneys who have a social conscien( willing to do a lot of work for a relatively small reward.

"That's not easy, but we are going to give a shot.

"We haven't abandoned the sinking ship yet, because there are still rats (including some former employ directors) who've made off with the treasure, and if at all possible, we'd like to see at least some of that go to those who did business in good faith with ASLET."

A127

Complete <u>RICO Complaint</u> (72 page document) - On Friday, January 16, 2004, after over a full year of uncovering eviden-
wrongdoing; and a full year of obstruction, and the majority of the Board's refusal to look into the evidence Messina found; .
when the constant retaliation against Messina finally extended to his family, friends, and business associates, a Complaint cl
violations of the Racketeer Influenced Corrupt Organizations Act ("RICO") was filed against several directors of ASLET in
States District Court for the Eastern District of New York.

The Complaint, which seeks Class Action status, seeks the reimbursement of an estimated $1,000,000 obtained through frau
misrepresentations made to ASLET members and past members, and also seeks to recover, derivatively on behalf of the cor
itself, an additional $500,000 paid in salary to, and advanced to, ASLET Executive Director Frank Hackett. The Complaint ;
additional relief from the Court, including Injunctions permanently barring the defendants from participating in the conduct
business, or the business of any successor entity.

Messina, who was previously honored by the National Institute of Ethics for his role in uncovering previous financial wrong
conduct of ASLET's business, brought the action on behalf of the membership and the corporation, along with highly respec
trainer and author George Demetriou, a seventeen year police veteran.

·      Financial fraud update:

Phil Messina suspected wrongdoing - he asked to see corporate financial records. They stalled, delayed, kicked him off the
(illegally) twice, and have tried every way to keep Messina from seeing the financials. Does that make you suspicious?

So Messina scheduled an office inspection of the books. Their lawyer told them they could no longer stall it. Of course mar
they needed were missing from the office and were promised the following business day. (Three months later, we're still wa
that's business as usual for Hackett and his cronies.)

Interestingly, those records include (among other things) expense reports for Frank Hackett (ASLET's salaried Executive Di
basically the chief administrator).

Here's some of what transpired:

CPA <u>post-audit letters</u> 1 and 2; another auditor writes letter <u>January 12th</u>.

<u>Actual net revenues</u> (and unfortunate losses) 1999-2003 (not including the expenses that were hidden, unpaid and unrecorde
which Phil has since uncovered.)

•      Retaliation - Isn't it interesting that the day after Phil conducts a financial inspection at Headquarters, they suspend hi
membership? Messina refuses to fold. So they then retaliate against two people close to Phil - his wife and Modern Warrio
Tactics Supervisor! Read here to find out about the <u>suspension</u> of membership of George Demetriou, respected ASLET m
1988 and well known trainer and author; and Liz Kennedy, trainer, author and wife of Phil Messina.

------------------------

<u>Frauds, Lies, and a Complete Lack of Ethics</u>

Information below details some of the recent events in Messina's ongoing efforts to bring the wrongdoers to the light of day,
association back on track - in service to the members. After all, isn't that why the organization was founded in the first plac

The links represent some of ASLET's **frauds**, and **unethical actions** by Board Members and a paid employee, and **lawsuit** (
you would like additional info, please call Liz at 631-226-8383.

*** <u>Read here</u> to find out what ASLET's Executive Director and Board are trying to do <u>behind members' backs</u>. This is whe
affects members DIRECTLY. They are trying to take away member's right to vote and ratify Bylaws Changes. Now this is
ONLY document in ASLET that provides for checks and balances that protect the membership. And they want to take it aw
you!!

In November 2002, within days of Messina asking for records he was legally entitled to as a Director, Meyer and Klugiewic

Case 4:05-cv-00344-JJF    Document 86-5    Filed 09/29/2006    Page 21 of 22

Members) and Hackett (paid employee) had their first meeting with an attorney to discuss "removal of a director." In June c
Board illegally suspended Phil as a Director and a member. However, they later recanted that suspension when their lawyer
something that must have sounded like, "OOPS, we made a boo boo. Phil is right. He is still legally a Director."

November of 2003, the Board was finally able to put a plan in motion to remove Messina as a member.

(Which they want to use to remove him as a Director, because he keeps uncovering wrongdoing, and they need to get him o
their little fiefdom.) So the Board decided they were going to send out a letter to the members in order to get the membershi
him out, and they were going to send it out to the membership "on or about December 1."

For Phil's response to the above charges click here.

After reading Phil's response, the Board realized they couldn't send it out because the truth was too damaging to THEMSEL
they needed another trick. They waited until after the fake impartial hearing, on Dec. 13, because then they could further po
membership towards Phil, by telling them he'd already been removed as a member, and it was really just up to them to finish
started.

So Phil's membership was revoked by the Executive Board. The day after Phil went to the ASLET office and finally got his
**EVIDENCE of FRAUD**, Frankie Hackett was MAD, so he arranged it for them to quickly finalize the revocation of Phil's r
But Hackett's lawyer told them they couldn't send out potentially injurious information about Phil to the membership withou
the chance to respond.

So they gave Phil one business day and one page to respond to the 23 page "Hearing Committee Report". For Phil's respons

After he responded, they sent out YET ANOTHER LETTER with a whole new set of allegations, and this time he was giver
OPPORTUNITY to respond.

However, this time they sent letters the entire membership, including several people whom Phil had recruited into ASLET -
NEVER RECEIVED the first letter and ballot. INTERESTING COINCIDENCE!!!

Apparently they forgot they screened the first list for many of Phil's supporters or people he recruited.

A129

## Quick Summary of ASLET Events:

Dubious Doctorate:

- leads to unqualified administrator,

- leads to net financial losses,

- leads to cover-up of dramatic financial decline,

- leads to need for quick revenues,

- leads to elimination of security/screening protocols,

- leads to turning law enforcement association into potential training/intelligence resource for any would-be terrorists with $50,

- leads to investigation by Director and discovery of truth,

- leads to all-out attacks on Director, his family, friends and colleagues,

- leads to Federal RICO Complaint and Class Action filed on behalf of members.

Now they can explain to a New York Jury why it's no big deal.

*Site Hosting Provided by www.nuvisions.net*
*Return to home page www.ModernWarrior.com*

A129A