**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILIP MESSINA,<br>GEORGE DEMTRIOU, individually and on<br>behalf of all others similarly situated, and<br>derivatively on behalf of<br>AMERICAN SOCIETY OF LAW<br>ENFORCEMENT TRAINERS, INC.,<br>Plaintiffs,<br><br>v.<br><br>FRANK A. HACKETT, JR.,<br>ANDREW CASAVANT,<br>GREG MEYER,<br>GARY T. KLUGIEWICZ,<br>TIMOTHY DEES,<br>LISA KONRATH,<br>MARY GIFFORD,<br>DAVID SMITH,<br>DAVID GROSSI,<br>JULIE LINKINS,<br>WILLIAM WESTFALL,<br>DANIEL WATSON,<br>GLENN YOUNG,<br>JOHN DOES 1-10,<br>    Defendants,<br><br>And AMERICAN SOCIETY OF LAW<br>ENFORCEMENT TRAINERS, INC.,<br>Nominal Defendant.<br><br>STATE OF NEW YORK<br><br>COUNTY OF NASSAU | Civil Action No: CV-040170 (TCP)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT**<br>**OF MOTION TO DISMISS**<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>ss.: |

Paul A. Bradley, counsel for the action on behalf of the Defendants, Frank A. Hackett Jr.

Andrew Casavant, Greg Meyer, Gary T. Klugiewicz, Timothy Dees, Lisa Konrath, Mary

Gifford, David Smith, David Grossi, Julie Linkins, William Westfall, Daniel Watson, and

American Society Of Law Enforcement Trainers ("ASLET") (nominal defendant) (collectively

"Moving Defendants"), being duly sworn, deposes and says (or makes the following affirmation under the penalties of perjury):

Moving Defendants are Defendants in the above-entitled action, and respectfully move this Court to issue an order dismissing the Plaintiffs' Complaint against them.

The reasons why Moving Defendants are entitled to the relief they seek are the following: (1) the plaintiffs' claims are time barred; (2) the Court lacks personal jurisdiction over Moving Defendants; (3) plaintiffs have insufficiently served process on the Moving Defendants; (4) the plaintiffs lack standing under the Racketeering Influenced and Corrupt Organizations Act ("RICO"); (5) the plaintiffs have failed to state a claim upon which relief can be granted; (6) the Eastern District of New York is not the proper venue for this action; (7) application of the doctrine of *forum non conveniens* mandates dismissal of this case; and any other appropriate grounds.



**TABLE OF CONTENTS**

INTRODUCTION.................................................................................... 1

I.    THE PLAINTIFFS' CLAIMS ARE TIME BARRED............................. 2

II.   THE COURT LACKS PERSONAL JURISDICTION OVER THE MOVING
      DEFENDANTS................................................................................ 5

III.  SERVICE OF PROCESS WAS INSUFFICIENT................................... 8

IV.   PLAINTIFFS' RICO CLAIMS ARE INSUFFICIENT............................ 9

      A.    Plaintiffs lack standing under RICO........................................... 9

            1.    There is no individual standing........................................ 9

            2.    There is no derivative standing........................................ 11

      B.    Plaintiffs fail to state a claim upon which relief under RICO may be
            granted........................................................................................ 12

            1.    Plaintiffs' failure to allege reliance and causation dooms their
                  Complaint.................................................................... 12

            2.    Plaintiffs have not alleged facts which satisfy RICO's
                  requirement of an "Enterprise"....................................... 12

V.    THIS DISTRICT IS THE IMPROPER VENUE FOR PLAINTIFFS' ACTION    13

VI.   THIS CASE SHOULD BE DISMISSED UNDER THE DOCTRINE OF
      FORUM NON CONVENIENS............................................................. 15

CONCLUSION...................................................................................... 18

**INTRODUCTION**

ASLET is a Delaware corporation and a non-profit association of those who train law enforcement officials. The organization is dedicated to enhancing and promoting excellence in law enforcement training. It is recognized by the IRS as a 501(c)(3) tax-exempt charity. *See* Complaint at ¶¶ 2, 25, 55. ASLET is named as a Nominal Defendant solely in a derivative capacity. *See* Complaint at ¶ 39.

Plaintiff Messina is a current director and former member of ASLET. He was elected to the ASLET Board of Directors on January 18, 1996, then resigned in January 23, 1998. He was elected again in February 14, 2001, and his term expires January 5, 2005. Although Plaintiff Messina is a director, he has not been a member of ASLET since December 20, 2003, when his membership was terminated by the Board of Directors after a hearing. *See* Complaint at ¶¶ 109-10. Plaintiff Demetriou is a current member of ASLET.

The Moving Defendants all are current or former ASLET officers, directors, or members. *See* Complaint at ¶¶ 15, 16, 25-38. Defendants Linkins, Westfall, and Watson served on the hearing panel established by the Board of Directors to recommend whether Messina should be terminated as a member. *See* Complaint at ¶ 188. In this suit, Plaintiffs have challenged the manner in which ASLET has been governed and managed over at least the last 10 years. Plaintiff Messina within the past 13 months has filed three other suits in the Delaware Court of Chancery, all of which also challenge, in some manner, ASLET's governance and management.

Plaintiffs claim that Moving Defendants' management and control of ASLET has violated RICO. Plaintiffs identify mail and wire fraud as the two predicate acts which support their RICO claims. Plaintiffs claim that Moving Defendants comprise and control a "Board Enterprise," which purportedly has conspired against ASLET and the individual Plaintiffs in



order to cover up financial inaccuracies. *See* Complaint at ¶¶ 56-64, 138-182. Plaintiffs now

seek relief for alleged breaches of criminal and Delaware state law: breach of contract, fiduciary

breach, waste of corporate assets, common law fraud, and aiding and abetting. *See* Complaint at

¶¶ 216-244.


I.     THE PLAINTIFFS' CLAIMS ARE TIME BARRED.

The statute of limitations for RICO claims is four years. *See Agency Holding Corp. v.*

*Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987). The limitations period begins to run "when

the plaintiff discovers or should have discovered the RICO injury." *Tho Dinh Tran v. Alphonse*

*Hotel Corp.*, 281 F.3d 23, 36 (2d Cir. 2002) (quoting *In re: Merrill Lynch Ltd. Partnerships*

*Litig.*, 154 F.3d 56, 58 (2d Cir. 1998)).

The Supreme Court has held that a RICO plaintiff need not discover "both a RICO injury

and a pattern of RICO activity before the RICO statute of limitations begins to run." *Tho Dinh*

*Tran* at 36 (2d Cir. 2002) (referring to *Rotella v. Wood*, 528 U.S. 549 (2000)). Thus, if the facts

alleged by plaintiff establish that a plaintiff knew of RICO injury at a certain time, the plaintiff

must file the RICO claim within four years of that time, in order for a filing to be timely.

Conversely, "if ...the plaintiff pleads facts establishing that the complaint is untimely, he or she

will plead him or herself out of court." *Bermudez v. First of Am. Bank Champion, N.A.*, 860 F.

Supp. 580, 593 (N.D. Ill. 1994). Such is the result of the facts alleged in this case. Plaintiffs

filed their Complaint on January 20, 2004. Plaintiffs' Complaint, however, repeatedly alleges

knowledge of both continuing injury and a pattern of RICO activity that began long before the

year 2000. All RICO claims asserted by Plaintiffs therefore are time-barred.

Plaintiffs generally allege that

A134

2



> [b]eginning in or about 1994, Defendants and other Participants devised a scheme to defraud, corrupt, cheat, steal and conceal in violations of the laws of the United States ("the scheme").... This scheme inflicted substantial injury upon Plaintiffs, by among other things, cheating Plaintiffs out of hundreds of thousands of dollars in membership dues through a pattern of false misrepresentations and omissions, and spending hundreds of thousands of dollars in support of Defendants' and Participants' racketeering acts and the concealment of those racketeering acts.

Complaint at ¶ 56. *See also* Complaint¶ 57 (Defendants' "scheme to defraud, corrupt, cheat, obtain by fraud and convert property was in existence by at least 1994").

Plaintiffs further allege,

> [i]n or about April of 1994, Bruce Siddle, then a corporate director of ASLET, started to make inquiries regarding the management, financial and ethical practices of ASLET's (then) Chairman, Gary Klugiewicz; (then) Executive Director Steven Bunting; and (then) Director, Corporate Treasurer and Legal Counsel, Mildred O'Linn. Almost immediately, in an attempt to protect themselves from investigation for financial and ethical violations, the three corporate officers embarked on a campaign to destroy Siddle financially, and to discredit him until he resigned from the board. These actions included, but were not limited to, the covert and unlawful audio taping of telephone calls to and from the ASLET office in Lewes.

Complaint at ¶ 65. Plaintiffs also allege that Messina, "[i]n or about January of 1995," was asked to investigate complaints regarding these and other wrongful practices. *See* Complaint at ¶ 66. *See also id.* at ¶¶ 151-54 (Defendants allegedly used the wires to further the scheme before 2000). *See also id.* at ¶¶ 66, 67, 70.

Plaintiffs also challenge Defendants' allegedly fraudulent statement, published in the corporate "Policies and Procedures Manual" and distributed by mail, that ASLET's financial procedures conformed to Generally Accepted Accounting Practices ("GAAP"), *see* Complaint at ¶ 139. This statement, however, was both made and easily tested in 1997. ASLET's financial statements have been and are in the public domain and are independently audited. There could

A135

3

have been no effective concealment – if concealment had actually been the Defendants' goal.
*See also id.* at ¶¶ 176-77 (Defendants used the mails to further the scheme before 2000).

Plaintiffs also claim that

> [i]n or about the summer of 1999, Hackett represented to an
> ASLET Search Committee, that he would need a salary and
> benefits package of at least $125,000 per annum, which would still
> result in his taking a "pay cut" in order to join the organization.
> Hackett's statement to that effect, made to former director
> Kathleen Kelley, was later published in an article in ASLET's
> "The Trainer" magazine [which was mailed out to membership].

Complaint at ¶ 77. Plaintiffs do not and cannot claim that this alleged fraud was undiscoverable,
since Plaintiffs could have contacted Hackett's former employer in 1999 in order to verify
Hackett's salary and compensation.

Plaintiffs' other allegations confirm the pre-2000 origins of their complaints of
wrongdoing. In 1998 Plaintiff Messina resigned from the ASLET Board, allegedly "to allow
him to more fully investigate **the continuing reports of wrongdoing** without interference from
Klugiewicz and other Defendants and Participants." Complaint at ¶ 72 (emphasis added).
Plaintiffs also allege that, on or about January 1998, when Plaintiff Messina resigned from the
ASLET board, he and other members also "continued to collect evidence of continued 'double
dipping' practices." Complaint at ¶ 80. Thus, it is reasonable to conclude Plaintiffs were
collecting evidence well before 1998. In fact, Plaintiffs claim that a "virtual mountain of
evidence was collected," at that time. *See* Complaint at ¶ 81. Messina's allegation that there
were "continuing reports of wrongdoing" in 1998 confirms Plaintiffs' belief that both RICO
injury and ongoing racketeering activity existed at that time. *See* Complaint at ¶ 72.

It therefore is apparent that even if plaintiffs' claims of repeated obstruction are assumed
to be true, Plaintiffs' admitted awareness of "continuing" injuries stemming from Defendants'
alleged conspiracy, mail, and wire fraud, began at least as far back as 1994, and certainly no later

than 1998. At that point, and accepting all of Plaintiffs' allegations as true, Plaintiffs knew or should have known that purported RICO injuries were taking place – if that were actually the case. The statutory clock therefore began running at that time.

It is difficult, even after repeated reading of the Complaint, to discern exactly what injury to Plaintiffs is alleged. However, to the extent that any such injury exists, it undisputedly occurred well before 2000. One thing at least is crystal clear in Plaintiffs' Complaint. Plaintiffs' awareness of their claimed injuries, and the alleged acts giving rise to them, existed long before the year 2000. Any subsequent alleged injuries are not additional and independent, but rather part and parcel of the same underlying injury – wrongful control and management of ASLET. *See Bankers Trust Co.* at 1103.

Taking Plaintiffs' allegations at face value, it is clear that long before 2000 they believed there existed a mountain of evidence, continuing reports of wrongdoing, ongoing injury, and discoverable and allegedly continuing fraud. And yet, Plaintiffs failed to file a Complaint until 2004. Plaintiffs' filing comes much too late. Plaintiffs' claims are time-barred, and their Complaint therefore should be dismissed.


II.    THE COURT LACKS PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS.

A court must have personal jurisdiction over each separate Defendant. *See Calder v. Jones*, 465 U.S. 783 (1984). In order to make a *prima facie* showing of this necessary element of their case, Plaintiffs must allege facts sufficient to establish personal jurisdiction over all the defendants. *See Ball v. Metallurgie-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

Under New York law, a plaintiff must demonstrate that the court has general jurisdiction over the defendant, *see* N.Y. C.P.L.R. § 301, or specific jurisdiction over the defendant with

A137

5

respect to each claim, *see* N.Y. C.P.L.R. § 302. "If the exercise of jurisdiction is appropriate under [either] statute, the court must decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997).

Section 301 codifies the common law principle that a non-domiciliary is deemed to be "present" in the state if the non-domiciliary is "doing business" in the state when the action is commenced. *See Hinsch v. Outrigger Hotels Hawaii*, 153 F.Supp.2d 209, 212 (E.D.N.Y.2001); *Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439, 440 (1965); *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 581 N.Y.S.2d 283, 286 (1st Dep't 1992). A plaintiff must allege that the defendant was engaging in business "not occasionally or casually, but with a fair measure of permanence and continuity." *Lancaster*, 177 A.D.2d at 156. Critical to the analysis is "that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Thus, plaintiff is required to demonstrate more extensive contacts under general jurisdiction than specific jurisdiction because, in the case of general jurisdiction, a plaintiff must demonstrate *continuous and systematic* contacts rather than merely minimum contacts. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984) (emphasis added).

The Complaint concedes that Moving Defendants are not residents of the State of New York. *See* Complaint at ¶¶ 25-38. To demonstrate that this Court has general personal jurisdiction over Defendants, plaintiffs therefore must allege that each Defendant engages in "continuous and systematic" conduct in New York. Plaintiffs' Complaint, however, fails to allege any such "continuous and systematic" activity on the part of any of the Moving

A138

Defendants. Indeed, Plaintiffs allege *no* facts which would satisfy their burden of proof on this issue.

N.Y. C.P.L.R. §302, which governs specific jurisdiction, provides:

> (a)    As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> 1.    transacts any business within the state or contracts anywhere to supply goods or services in the state; or

> 2.    commits a tortuous act within the state, except as to a cause of action for defamation of character arising from the act; or

> 3.    commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

> (i)    regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii)    expects or should reasonably expects the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

> 4.    owns, uses or possesses any real property situated within the state.

Plaintiffs do not allege that the individual Defendants transact any business within New York State or that they contract anywhere to supply goods or services in the state of New York. Plaintiffs appear to allege only that the Defendants have committed tortious acts outside the state causing injury to plaintiffs' person or property within the state. *See* Complaint at ¶ 12. However, in order to claim this basis of personal jurisdiction, Plaintiffs must also allege facts showing that the individual Defendants regularly do or solicit business in New York, or engage in another persistent course of conduct, or derive substantial revenue from goods used or

A139

7

consumed or services rendered in New York State. Plaintiffs' failure to meet this burden is

manifest – they have not alleged such conduct, nor have they alleged that the Defendants derive

substantial revenue from interstate or international commerce.[1]

Because plaintiffs fail to aver that the individual defendants' had either sufficient contacts

or continuous contacts with New York, they have not made a *prima facie* showing of personal

jurisdiction over Moving Defendants. Accordingly, their Complaint as to those Defendants

should be dismissed.


III.    SERVICE OF PROCESS WAS INSUFFICIENT.

Plaintiffs' Complaint invokes the expanded service of process provisions of 18 U.S.C. §

1965(b). See Complaint at ¶ 12. Section 1965(b) provides:

> In any action under section 1964 of this chapter in any district
> court of the United States in which it is shown that the ends of
> justice require that other parties residing in any other district be
> brought before the court, the court may cause such parties to be
> summoned, and process for that purpose may be served in any
> judicial district of the United States *by the marshal thereof.*

18 U.S.C. § 1965(b) (emphasis added).

Plaintiffs, however, have neither alleged nor shown that the ends of justice require that

non-residents of New York must be brought to this District for prosecution of this case.

Plaintiffs also have not demonstrated that the Court has indeed caused the parties to be

summoned, or that all Defendants have been served with appropriate process. *See* Docket for

Notices of Service. Finally, none of the Moving Defendants has been served by a marshal, as

required by § 1965(b). Process has been served ineffectively, under the very statutory provision

that Plaintiffs invoke. These insufficiencies mandate dismissal.

---

[1] Jurisdiction over ASLET, a nominal Defendant, even if it exists, does not confer jurisdiction over the individual Defendants.

A140

8



IV.    PLAINTIFFS' RICO CLAIMS ARE INSUFFICIENT.

    A.    Plaintiffs lack standing under RICO.

        1.    There is no individual standing.

The RICO standing requirement is satisfied only if the Plaintiff demonstrates that the commission of the RICO predicate acts proximately caused his injury. *See Donohue v. Teamsters Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds, et al.*, 12 F. Supp. 2d 273, 277 (E.D.N.Y. 1998) (citing to *In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 399 (2d Cir. 1994)). Furthermore, a plaintiff only has standing if he has been proximately injured in his business or property by the conduct constituting the violation. *See Donohue* at 277 (citing to *Sedima, P.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496

The purpose of civil RICO liability does not extend to deterring any illegal act, such as retaliatory firings, <u>for which there are state and common law remedies</u>. *See Donohue at 277* (emphasis added). Rather, the main goal of the RICO statute is to eradicate organized crime. *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988) (citing to *Cullen v. Margiotta*, 811 F.2d 698, 718 (2d Cir.), *cert. denied*, 483 U.S. 1021 (1987)). For example, in *Donohue*, the plaintiff argued that she suffered a loss to her "property" in that she was deprived benefits under ERISA which plaintiff claimed constitute "property." *See Donohue* at 277. The Plaintiff in *Donohue* argued that her property was taken away because her rights were extinguished by defendants' threats of violence and thereafter by her termination. *See id.* This Court rejected her arguments and found that lost rights "are too speculative and insufficient to confer standing under RICO." *Id.* at 278.

A141

9

By their Complaint, Plaintiffs, neither as individuals nor derivatively, have standing to sue under RICO. If plaintiffs assert individual injury, then they have failed to allege injury to their individual businesses[2] or property, as required by the statute. Moreover, they have failed to also allege a causal relationship between the defendants' alleged violations and any injury that this Court has recognized as conferring RICO standing.

The allegations with respect to Plaintiff Messina make clear this conclusion. Plaintiff Messina has alleged the loss of a right to vote, as well as retaliatory measures and even monetary loss due to his investigations of the defendants' purported violations. None of these, under the statute or under the ruling in *Donohue*, confer RICO standing on him. Messina cannot claim that his alleged disenfranchisement confers standing because the Delaware General Corporations law, and common law, apply here and provide remedies for such a violation. A suit on this issue, in fact, is pending in the Delaware Chancery Court. *See* Supplemental and Amended Complaint in *Messina v. ASLET et al.*, attached hereto as Exhibit A. The costs of investigating this suit cannot constitute loss or injury to Messina's property because such costs do not flow directly from and are not proximately caused by Defendants' actions. Neither can Messina claim that retaliatory measures confer standing under RICO. There are state and common law remedies for all such injuries, if indeed they exist. The Court of Appeals for the Second Circuit and this Court consistently have refused to confer RICO standing upon such tenuous connections to alleged RICO violations. *See Burdick v. American Express Co.*, 865 F.2d 527, 529 (2d Cir. 1989) (the purpose of civil RICO liability does not extend to deterring any illegal act such as retaliatory firings for which there are state and common law remedies); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) ("Although [plaintiff's] loss of employment may

---

[2] Injury to ASLET cannot be the injury to the individual plaintiff's business, because such a claim is a derivative claim and belongs exclusively to the corporation. *See Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986).

A142

have been factually caused by defendants' RICO violations, it was not a foreseeable natural consequence sufficient for proximate causation."); *Donohue* at 277-78 ("This Court agrees with the Fifth and Ninth Circuits, which hold that an '[i]njury to mere expectancy interests or to an "intangible property interest" is not sufficient to confer RICO standing'").

Thus, even if all of the plaintiffs' allegations are accepted as true, plaintiffs can prove no damage to their business or property as required by RICO. Since no set of facts before this Court supports the plaintiffs' RICO standing, their Complaint must be dismissed.

2. There is no derivative standing

Plaintiffs as individuals also lack standing to sue under RICO for injuries incurred by ASLET. If ASLET incurred legal injury covered by RICO, then shareholders' or members' rights to sue are derivative and must be asserted through the corporation. *See Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986). For this reason, plaintiffs must fulfill all the requirements for derivative actions, as set forth in F.R.C.P. 23.1.

Plaintiffs, however, have failed to fulfill those requirements in both form and in substance. First, Plaintiffs did not verify their Complaint. *See* F.R.C.P. 23.1. Second, they have failed to allege that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. *See id.* Third, the Plaintiffs have failed to allege how Defendants' use of mail or wires, or Defendants' alleged conspiracy, have directly injured ASLET at all – let alone in the amount of hundreds of thousands of dollars. *See* 18 U.S.C. § 1964(c). Plaintiffs do not claim that the Defendants mailed or wired money away from the ASLET; there is no direct injury of this sort even alleged. Although Plaintiffs allege a scheme or conspiracy, they do not and cannot connect the scheme directly or proximately to specific and genuine injuries of ASLET.

A143

11

For all these reasons, the Complaint is insufficient and should be dismissed.

## B. Plaintiffs fail to state a claim upon which relief under RICO may be granted.

### 1. Plaintiffs' failure to allege reliance and causation dooms their Complaint.

In the Second Circuit, a RICO plaintiff who alleges mail fraud must plead both reliance and injury caused by such reliance. *See Burke v. Dowling*, 944 F. Supp. 1036, 1053 (E.D.N.Y. 1995) (citing *Metromedia Co. v. Fugazy*, 983 F.2d 350, 368 (2d Cir. 1992), *cert. denied*, 508 U.S. 952 (1993)). Plaintiffs have failed to allege that they relied to their detriment on the alleged fraudulent misrepresentations, promulgated through mail or wire fraud. Plaintiffs also have failed to allege clear injury to themselves caused by such reliance. Thus, Plaintiffs' Complaint fails to state a RICO claim for mail fraud, and therefore should be dismissed.

### 2. Plaintiffs have not alleged facts which satisfy RICO's requirement of an "Enterprise."

Plaintiffs have failed to allege any distinction between the "enterprise" and the "persons" conducting the affairs of that enterprise in the prohibited manner, as required in the Second Circuit. This omission is a fatal flaw in their Complaint. *See Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir. 1985) (citing to *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 400 (7th Cir. 1984) ("section 1962(c) requires separate entities as the liable person and the enterprise"), *aff'd on other grounds*, 473 U.S. 479 (1985) (*per curiam*); *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) ("If Union Bank is the enterprise, it cannot also be the RICO defendant."); *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982) ("'enterprise' was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit"), *cert. denied*,

A144

12

459 U.S. 1105 (1983); *Kaufman v. Chase Manhattan Bank, N.A.*, 581 F. Supp. 350, 357-58 (S.D.N.Y. 1984) (complaint must distinguish the enterprise from the person)).

The Complaint does not distinguish the enterprise from the liable persons. On the contrary, Plaintiffs allege that the individual perpetrators, the defendants, *are* the enterprise. *See* Complaint at ¶ 128. On Plaintiffs' allegations, the "enterprise" refers to an entity that is the same as the persons whose behavior the RICO act was designed to prohibit. Plaintiffs, thus, have created a fictional entity that cannot exist under RICO jurisprudence.

Even if the plaintiffs' allegations are accepted as true, and the Defendants actually comprise the victimized passive entity – the enterprise, *see Bennett* at 315 – the only logical conclusion is that plaintiffs are suing the *individual* defendants for harming themselves. In addition to the problem of standing inherent in this arrangement, such allegations cannot support the RICO claims advanced in Plaintiffs' Complaint.

For these reasons, the Plaintiffs' Complaint does not state a claim for which relief can be granted. Their Complaint therefore must be dismissed.

V.   THIS DISTRICT IS THE IMPROPER VENUE FOR PLAINTIFFS' ACTION.

Plaintiffs assert that venue for their action is predicated upon 18 U.S.C. § 1965 and 28 U.S.C. §§ 1391(b), (c), and (e). *See* Complaint ¶ 12. 18 U.S.C. § 1965(a) sets forth the laying of venue:

> Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965(a).

A145

13



Plaintiffs have conceded that the individual defendants do not reside in New York. *See*

Complaint ¶¶26-38. Plaintiffs have failed to allege that defendants are either found, have an

agent, or transact business in New York. Venue, thus, is not proper in New York.

28 U.S.C. § 1391(b) provides:

> A civil action wherein jurisdiction is not founded solely on
> diversity of citizenship may, except as otherwise provided by law,
> be brought only in (1) a judicial district where any defendant
> resides, if all defendants reside in the same State, (2) a judicial
> district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property
> that is the subject of the action is situated, or (3) a judicial district
> in which any defendant may be found, if there is no district in
> which the action may otherwise be brought.

28 U.S.C. § 1391(b). On the facts alleged, subsection (1) does not apply because Plaintiffs

concede that Defendants do not reside in the same state. Likewise, subsection (2) does not

support venue in New York because Plaintiffs do not allege that a substantial part of the events

or omissions giving rise to the claim occurred in New York; those events purportedly took place

elsewhere. Subsection (3) cannot support venue in New York, because the Plaintiffs' action can

be brought in the District of Delaware, if at all, because ASLET is a Delaware corporation, and

the actions of it and its officers and directors are governed by the Delaware General Corporations

Law. In fact, Plaintiff Messina already has instituted three suits in the Delaware Court of

Chancery. Clearly, 28 U.S.C. § 1391(b) does not support venue in New York.

28 U.S.C. § 1391(c) provides:

> For purposes of venue under this chapter, a defendant that is a
> corporation shall be deemed to reside in any judicial district in
> which it is subject to personal jurisdiction at the time the action is
> commenced. In a State which has more than one judicial district
> and in which a defendant that is a corporation is subject to personal
> jurisdiction at the time an action is commenced, such corporation
> shall be deemed to reside in any district in that State within which
> its contacts would be sufficient to subject it to personal jurisdiction
> if that district were a separate State, and, if there is no such district,



> the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c). ASLET is subject to personal jurisdiction in Delaware, its place of incorporation, as well as in Maryland, its principal place of business. These facts support venue outside of New York. Moreover, Delaware and Maryland each have one judicial district; thus, the balance of the statute is inapplicable. 28 U.S.C. § 1391(c) cannot support venue in New York.

28 U.S.C. § 1391(e) states:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district....

28 U.S.C. § 1391(e). Plaintiffs do not allege that Defendant officers or employees of the United States or any United States agency were acting in their official capacity or under color of legal authority when they supposedly committed violations. Thus, this section is not relevant here.

For these reasons, venue in New York is improper, and Plaintiffs' Complaint, by its own allegations, should be dismissed.

## 7. <u>THIS CASE SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS.</u>

Plaintiffs have commenced this action in the Eastern District of New York. For the reasons discussed below, Defendants respectfully request that this Court dismiss Plaintiffs' complaint based on the doctrine of forum non conveniens. <u>See</u> <u>*Piper Aircraft Co. v. Reno*</u>, 454 U.S. 235 (1981). In *Piper*, the Supreme Court held:

> When an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish . . . the oppressiveness and vexation to a defendant . . . out of all

> proportion to plaintiff's convenience or when the chosen forum [is]
> inappropriate because of considerations affecting the Court's own
> administrative and legal problems, the Court may in the exercise of
> its sound decision, dismiss the case.

Id. at 241 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

The United States Supreme Court has provided a list of factors, which serve as a guide in determining whether an action should be dismissed on the ground of forum non conveniens. These factors include both the private interests of the litigants and public interest factors:

## PRIVATE INTERESTS

- Relative ease of access to sources of proof;

- Availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses;

- Possibility of view of premises, if view of premises would be appropriate to the action;

- Other practical problems that make trial of a case easy, expeditious and inexpensive.

## PUBLIC INTERESTS

- The administrative difficulties flowing from court congestion;

- The local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

- The avoidance of unnecessary problems in conflict of laws, or in the application of foreign law;

- The unfairness of burdening citizens in an unrelated forum with jury duty.

*See Piper*, at 241 n.6 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

A148

Plaintiffs' allegations as well as other considerations demonstrate that the Eastern District of New York is not the most convenient forum. The private factors clearly come down on the side of the Delaware forum. First, all of the Defendants, though diverse in residency, are connected through ASLET, a Delaware corporation. Delaware courts can properly serve and acquire jurisdiction over ASLET, as well as its Directors and officers. *See* 10 Del. C. § 3114; 8 Del. C. § 321. Second, three cases, filed by Plaintiff Messina and arising from some of the same facts as are alleged in the Complaint, have been pending in Delaware for as long as 13 months. Messina will be indeed hard pressed to argue that Delaware is not an appropriate forum in which to air his complaints.

The public interest factors also favor dismissing this case under the doctrine of forum non conveniens. Delaware has a powerful and unique interest in having the relevant controversies decided in Delaware because they are, at their core, issues involving governance or control of a Delaware corporation. *See* Complaint at ¶ 197-244. *See Sternberg v. O'Neill*, 550 A.2d 1105, 1123 (Del. 1998) ("Delaware has an interest in holding accountable those responsible for the operation of a Delaware corporation"); *E.M. Armstrong et al., v. Pomerance*, 423 A.2d 174, 179 n. 8 (Del. 1980) (referring to *Shaffer v. Heitner*, 433 U.S. 186, where the Supreme Court implicitly approved 10 Del. C. § 3114. The legislative synopsis of the statute states: "Delaware has a substantial interest in defining, regulating and enforcing the fiduciary obligations which directors of Delaware corporations owe to such corporations and the shareholders who elected them"); *In re USACafes, LP. Litig.*, 600 A.2d 43, 51 (Del. Ch. 1991) (noting forum state interest in resolving issues of corporate governance). New York, on the other hand, has only minimal interest in such issues.

A149

A brief glance at the claims for relief also reveals the pervasive extent to which Delaware law would decide the substantive claims. Most of the claims for relief in the complaint, besides the bogus RICO claims, are governed by Delaware law: breach of fiduciary duty and duty of loyalty; waste of corporate assets; aiding and abetting; common law fraud; and breach of contract. Delaware's strong and legitimate interest in resolving such claims involving Delaware law, and the internal affairs, governance or management of its domestic corporations, has been reaffirmed time and again. The applicable laws, moreover, both federal and state, may be most efficiently applied in Delaware, where conflict of laws would be avoided, and jurors in an unrelated forum would not be burdened.

## CONCLUSION

Defendants respectfully submit that Plaintiffs have attempted to make mountains out of molehills, to dress up state law causes of action in the raiments of federal claims, and to inappropriately seek jurisdiction and a remedy in this Court. Plaintiffs' Complaint is facially insufficient and should be dismissed. This matter clearly should be addressed (if at all) in a Delaware forum.

WHEREFORE, Moving Defendants respectfully request that the Court grant the within motion, dismissing the Plaintiffs' Complaint, as well as such other and further relief as may be just and proper.

A150

18

Dated: <u>Wilmington, Delaware, February 20, 2004</u>

McCARTER & ENGLISH, LLP

BY: _____
PAUL A. BRADLEY
A. RICHARD WINCHESTER
919 Market Street, 18th Floor
P.O. Box 111
Wilmington, DE 19899
Attorneys for Defendants

A151

EXHIBIT A



# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

PHILIP MESSINA, in his official capacity    §
as a Director of the American Society    §
of Law Enforcement Trainers, Inc.,    §
EDWARD MANDELBAUM,    §
as a member of the American Society    §
of Law Enforcement Trainers, Inc.,    §
a Delaware nonstock corporation,    §
   §     Civil Action No. 2247-S
   §
   §     **SUPPLEMENTAL AND**
   §     **AMENDED COMPLAINT**
   §
   §
        Plaintiffs,    §
v.    §
   §
   §
AMERICAN SOCIETY OF LAW    §
ENFORCEMENT TRAINERS, INC., and    §
GREG MEYER, DAVID GROSSI,    §
DAVID SMITH, LISA KONRATH,    §
in their official capacities as Directors of    §
American Society of Law Enforcement    §
Trainers, Inc.,    §
        Defendants.    §

For their Complaint against defendants, Greg Meyer, David Grossi, David Smith, and Lisa Konrath, herein, Plaintiffs Philip Messina ("Director Messina") and Edward Mandelbaum ("Mandelbaum"), appearing pro se, bring this action, in Director Messina's official capacity as a Director of American Society of Law Enforcement Trainers, Inc. ("ASLET" or the "corporation") and in Mandelbaum's capacity as a member of the corporation (collectively "Plaintiffs") and state:

A153

I.

**INTRODUCTION**

1.      This is a Complaint seeking summary declarations pursuant to Sections

111 and 225 (a) of the Delaware General Corporation Law ("DGCL"): that

(a) the provisions for electing directors of the corporation, contained within the

Certificate of Incorporation (attached as Exhibit A), conflict with the current

Bylaws of the corporation (attached as Exhibit B), and therefore, the Bylaw

provisions are a "nullity" and the only legal term of office for a corporate

director of the corporation is a one-year term. Specifically, Article Seven of

the Certificate of Incorporation states that

> [t]he Board of Directors shall be elected by the members at the
> annual meeting of the corporation to be held on such date as the
> Bylaws may provide,...

Furthermore, Article Seven also states that

> [t]he directors of the corporation may, if the Bylaws so provide, be
> classified as to term of office.

The Bylaws of the corporation state that

> [m]embers of the Executive Board shall be elected by the
> Corporation's regular members for a period of four years...

The aforementioned Bylaw provision allowing directors to serve four-year

terms, appears, therefore, to conflict with the mandatory annual election with

an option for a "classified board" contained within the Certificate of

Incorporation.

(b) "elections" held for directors of the corporation prior to January 8, 2003,

which did not allow members to vote in person, or by proxy, at the Annual

A154

2

Meeting of Members, and which in no other way attempted to comply with Section 215 of the DGCL, were not legal elections for directors of a Delaware corporation (corporate admission of same attached as Exhibit C).

(c) pursuant to Article Seven of the Certificate of Incorporation and Section 141(c) (1) of the DGCL, committees are to be created by resolution passed by a majority of the whole board, not by the "prerogative" of the Board Chair, as claimed by Defendant Meyer and others acting in concert with him (conflicting descriptions of this committee, provided by Defendant Meyer and others acting in concert with him, are attached as Exhibits D and E.)

(d) Defendants, and others acting in concert with defendants, including the Executive Director of the corporation, Frank A. Hackett, Jr., improperly tampered with and manipulated the election for directors of the corporation, held on January 8, 2003, and a new election must be held, where all candidates seeking to solicit proxies shall, upon request made pursuant to Section 220(b) of the DGCL, be granted access to the list of corporate members.

(e) the Defendants' purported suspension of Plaintiff Messina from the corporation, at the last meeting of the Executive Board of the corporation, held on June 20, 2003, is invalid and ineffective, the Motion having "fallen to the ground" in accordance with Robert's Rules of Order, which, according to Article V, Section 5(a) of the Bylaws of the corporation, govern the procedures at the meetings of the corporation. RONR (10th ed.) p. 350, l. 13-27.

A155

3

## II.

## THE PARTIES

2.　　　Plaintiff Philip Messina is a member, and putative director of, the American Society of Law Enforcement Trainers, Inc., a Delaware nonstock corporation. Mr. Messina is a resident of New York.

3.　　　Plaintiff Edward Mandelbaum is a member of the American Society of Law Enforcement Trainers, Inc., a Delaware nonstock corporation. Mr. Mandelbaum is a resident of Florida, and of New York.

4.　　　Defendant Greg Meyer is a putative director of the corporation, and is a resident of Downey, California.

5.　　　Defendant David Grossi is a putative director of the corporation, and is a resident of Naples, Florida

6.　　　Defendant Lisa Konrath is a putative director of the corporation, and is a resident of Tucson, Arizona.

7.　　　Defendant David Smith is a putative director of the corporation, and a resident of Illinois.

8.　　　Defendant American Society of Law Enforcement Trainers, Inc., d/b/a American Society for Law Enforcement Training, is a Delaware nonstock, non profit, corporation, with a principal office of 121 N. Court Street, Frederick, MD 21701, and having a registered agent at 140 Highway One, Lewes, DE 19958, within the County of Sussex.   According to its Certificate of Incorporation, ASLET "is a public charity, organized exclusively for charitable, educational, and literary purposes..."

A156

4

9.    Party in interest Robert Bragg, is a putative director of the corporation, and a resident of Washington.

10.    Party in interest Timothy Dees is a putative director of the corporation, and a resident of Washington.

11.    Party in interest Andrew Casavant is a putative director of the corporation, and a resident of Illinois.

12.    Party in interest Mary Gifford is a putative director of the corporation, and a resident of Indiana.


## III.

## JURISDICTION

13.    This Court has jurisdiction over this matter as it arises under 8 Del. C. §§ 111 and 225 (a).

## IV.

## BACKGROUND

14.    At all times hereinafter mentioned, Plaintiff Messina was and is a putative Director of ASLET, "elected" by the membership at the Annual Meeting of the Members held in Orlando, Florida in February 2001.

15.    At all times hereinafter mentioned, Plaintiff Edward Mandelbaum was and is a member in good standing of ASLET

16.    At all times hereinafter mentioned, Defendant Greg Meyer was and is a putative Director of ASLET, "elected" by the membership at the Annual Meeting of the Members held in Orlando, Florida in February 2001.

A157

5

17.    At all times hereinafter mentioned, Defendant David Grossi was and is a putative Director of ASLET, "elected" by the membership at the Annual Meeting of the Members held in Orlando, Florida in February 2001.

18.    At all times hereinafter mentioned, Defendant Lisa Konrath was and is a putative Director of ASLET, "elected" by the membership at the Annual Meeting of the Members held in Ontario, California in January 2003.

19.    At all times hereinafter mentioned, Defendant David Smith was and is a putative Director of ASLET, "elected" by the membership at the Annual Meeting of the Members held in Orlando, Florida in February 2001.

20.    Party in interest Robert Bragg was and is a putative Director of ASLET, "elected" by the membership at the Annual Meeting of the Members held in Ontario, California in January 2003.

21.    Party in interest Timothy Dees was and is a putative Director of ASLET, "elected" by the membership at the Annual Meeting of the Members held in Ontario, California in January 2003.

22.    Party in interest Andrew Casavant was and is a putative Director of ASLET, "elected" by the membership at the Annual Meeting of the Members held in Ontario, California in January 2003.

23.    Party in interest Mary Gifford was and is a putative Director of ASLET, "elected" by the membership at the Annual Meeting of the Members held in Ontario, California in January 2003.

A158

24.    Plaintiffs, in their preparation of, and as a result of filing, their "Section 220" Complaint currently pending before this Court (C.A. No. 2244-S), have uncovered credible evidence that, upon information and belief:

(a)    Defendant Greg Meyer worked alongside ASLET Executive Director Frank Hackett ("Hackett"), the chief operating officer of the corporation, to tamper with and manipulate the election for directors of the corporation held on January 8, 2003, by receiving from Hackett **secret and exclusive** access to a list of all members of the corporation (after access to the list was denied by the Defendants and Hackett to Plaintiff Messina and independent candidates for election to the Board). Upon information and belief, this denial of access and granting of exclusive access was done so that Defendant Meyer could solicit votes via electronic mail for candidates of the Defendants' choosing (including incumbent candidate Konrath);

(b)    Defendants actively and affirmatively concealed (from members of the corporation) Director Messina's complaint that directors elected in 2001 might be in office illegally (in violation of Article Seven of ASLET's Certificate of Incorporation) so that certain Defendants might continue to hold office and not face a required vote of the members of the corporation at the Annual Meeting that was held on January 8, 2003. Upon information and belief, this was concealed based upon (then) Board Chairman Gary Klugiewicz's direction to other directors to "ignore Phil's complaints;"

(c)    Defendants Meyer, Grossi and Konrath spearheaded, or participated in, acts designed to silence or retaliate against Messina and other directors who questioned the propriety of elections or the conduct of corporate business. These acts include, but are not limited to, planning and holding "secret board meetings" where certain directors of

A159

7



the corporation were not invited (as noted in a telephonic conference before this Court on January 2, 2002) and a "secret vote to expel Messina" that was left off of the minutes of the directors' meeting of December 19th, 2002 by Defendant Grossi (the former corporate secretary).

(d)    Defendants have also schemed to maintain their entrenched offices in order to make certain that physical evidence previously in the possession of corporate officers continued to be concealed from the membership, or could be secretly destroyed. Said physical evidence, included several "Ethics Committee" reports that covered the allegations of members of the corporation, that the corporation and its members had been victimized by unethical patterns and practices that deprived its members of the honest right of intangible services, and a subsequent series of affidavits and petitions (signed by dozens of members of the corporation), that alleged specific wrongdoing and demanded an investigation (that was never ordered).

(e)    The Defendants' continuing improper hold on corporate office has successfully aided and abetted a long running pattern of concealing records from directors, and apparent tampering with physical evidence.    These schemes were conceived and implemented by former Board Chair Gary Klugiewicz so that he (Klugiewicz) could prevent (via suppressing and actually altering corporate documents that alleged and found wrongdoing) the production of documents to any prosecutor or outside counsel, or the use of said documents by any prosecutor or outside counsel (to investigate the allegations of "double dipping" leveled against a former director, that are alleged to have taken place in Sussex County, Delaware up to, and including

A160

8

early 1999; and the "unethical" taping of phone conversations, in apparent violation of Delaware and Florida statutes, that may have been used by former directors to gain commercial advantage against a highly respected law enforcement trainer who competed for government contracts against the former Board Chair..

(f)    Defendants named (then) Board Chair Gary Klugiewicz as the "independent proxy" on the corporation's official proxy solicitation card distributed for members use in the elections for directors held on January 8, 2003, in defiance of any logical definition of the term "independent."

(g)    Defendants stated on the corporation's website and in the minutes of the board meeting of December 19th, 2002, that

> previous e-mail messages by board member Phil Messina, whereby he alleges numerous incidents of misconduct, wrongdoing, or election tampering regarding the 2003 ASLET Board of Directors elections, have been found to be totally false, and without merit...

when, in fact, outside legal counsel had advised the board in October that Messina's charges that "the corporation's election process violated Section 215 of the DGCL" were accurate. The board only sought advice from legal counsel after Messina threatened, in writing, to seek injunctive relief from this Court. The board, however, never conducted any investigation into the more serious charges made by Messina regarding the improper denial of access to the list of members. Instead, Plaintiffs believe the Defendants banded together shortly thereafter to make certain that Director Messina (and any member or candidate for election as a director) did not receive access to the list of members, in violation of Section 220 of the DGCL, and that a way be found to expel Messina from the

A161

9

corporation in order to silence his questions and criticisms of past and ongoing actions of other Board members.

(h)    Defendants, on June 20, 2003 voted to suspend Plaintiff Messina from membership in the corporation[1] in retaliation for Messina's exercising his clear right under Section 220 of the DGCL to demand records and books of the corporation; for Messina's conducting an independent investigation pursuant to his fiduciary duties under Delaware law (this investigation is expected, at the time of this filing, to result in the future filing of breach of duty and fraud actions against several current and former directors of the corporation); and for Messina's prosecuting this action and Civil Action 2244-S to enforce his rights as a director under Delaware law (currently before this Court).

25.    Specifically, Plaintiff Messina has received information that Defendant Meyer had spearheaded an effort (noted by this Court in the aforementioned telephone conference before this court on January 2, 2003) to "ambush" Messina by holding a secret board meeting to which he was not invited, at which time the Defendant, and those aiding and abetting him, were to invoke a never used portion of the ASLET Bylaws to summarily suspend or expel Messina from membership, and thus, in their scheme, prevent him from performing his fiduciary duties as a Director by barring him from attending the Annual Meeting of members of the corporation held on January 8, 2003 in Ontario, California, and, as a result, barring him from voting on January 9 for officers of the corporation, thereby allowing Meyer to be elected Chairman after his participation in the improper practices allowed candidates of his choice to be elected as directors.

---

[1] See Affidavit of Philip Messina, attached hereto as Exhibit F

A162

26.    Upon information and belief, Defendant Meyer had intended to use his contacts with the local police and/or sheriff's department, attained under the color of law in his capacity as a Los Angeles Police Officer, to have local police officers or sheriff's deputies remove Director Messina, by force if necessary, from the Annual Meeting of Members once the Defendant's "ambush" was sprung.

27.    Accordingly, Plaintiffs respectfully seek expedited summary declarations to restore Director Messina's membership rights in the corporation, and to prevent the corporation from being immobilized by controversies as to who are its proper officers and directors, and to allow the Plaintiffs to be properly informed of the status of putative directors, so that they may file appropriate actions in this Court, if necessary, to protect the corporation from the ongoing breaches of fiduciary duties being committed by Defendants and others.

## COUNT 1

28.    Plaintiffs incorporate paragraphs 1 through 27 hereof as if fully set forth herein.

29.    Plaintiffs have stated a proper basis under 8 Del. C. § 111 for a judicial interpretation of the Certificate of Incorporation of the corporation.

30.    Pursuant to 8 Del. C. § 111, Plaintiffs, as director and members of ASLET, are entitled to a judicial declaration of the legal term of office for directors of ASLET provided for by the corporation's Certificate of Incorporation.

## COUNT 2

A163

11



31.    Plaintiffs incorporate paragraphs 1 through 30 hereof as if fully set forth herein.

32.    Plaintiffs have stated a proper basis under 8 Del. C. § 111 for a judicial interpretation of the Certificate of Incorporation of the corporation.

33.    Pursuant to 8 Del. C. § 111, Plaintiffs, as director and members of ASLET, are entitled to a judicial declaration of the legality, or lack of same, of the creation of a committee by the Board Chair without the majority vote of the whole Board, as directed in the Certificate of Incorporation and in 8 Del. C. § 141 (c) (1).

## COUNT 3

34.    Plaintiffs incorporate paragraphs 1 through 33 hereof as if fully set forth herein.

35.    Pursuant to 8 Del. C. § 225 (a) and 8 Del. C. § 111, Plaintiffs, as director and members of ASLET, are entitled to a judicial declaration that: (a) Defendants and Frank A. Hackett, Jr. tampered with and manipulated the January 8, 2003 election of directors, in knowing and brazen violation of Section 220 of the DGCL, by denying access to the list of corporate members to Director Messina and candidate Robert Bragg, and attempting to "sanction" candidate James Smith for his attempts to solicit proxies on his own behalf; (b) knowingly breached the terms of election and office set forth in Article Seven of the Certificate of Incorporation; and, (c) conducted elections that violated Section 215 of the DGCL by denying members the right to vote in person or by proxy, until notified by Director Messina in October, 2002 (Exhibit C).

A164



## COUNT 4

36.    Plaintiffs incorporate paragraphs 1 through 35 hereof as if fully set forth herein.

37.    Pursuant to 8 <u>Del. C.</u> § 225 (a), Plaintiffs, as director and members of ASLET, are entitled to a judicial declaration that the entire Board of Directors of ASLET should have been elected at the Annual Meeting of members held on January 8, 2003, and accordingly, the nine candidates who received the most votes at said election (not merely the top five vote recipients, as the Defendants and others had set forth) constitute the current Board of Directors of ASLET.

## COUNT 5

38.    Plaintiffs incorporate paragraphs 1 through 38 hereof as if fully set forth herein.

39.    Pursuant to 8 <u>Del. C.</u> § 225 (a), Plaintiffs, as director and members of ASLET, are entitled to a judicial declaration that Defendant Meyer's motion to expel/suspend Plaintiff Messina, introduced via Motion by Defendant Meyer at the last meeting of the previous Board of the corporation (held on January 6, 2003), is null and void, having "fallen to the ground" in accordance with Robert's Rules of Order (RONR (10th ed.) p. 350, l. 13-27), which, according to Article V, Section 5(a) of the Bylaws of the corporation, governs the procedures at the meetings of the corporation..

   **WHEREFORE**, the Plaintiffs pray that the Court enter an Order that:

   (1)    Declares, pursuant to 8 <u>Del. C.</u> § 111 that the Certificate of Incorporation of ASLET mandates that all directors be elected annually, until and unless

A165



the corporation amends its Bylaws to classify its directors as to terms of office;

(1)    Declares, pursuant to 8 <u>Del. C.</u> § 225 (a), that the entire Board of Directors of ASLET should have been elected in the election for directors held at the Annual Meeting of Members of January 8, 2003, and, therefore, the nine candidates who received the most votes at said election properly constitute the current directors of the corporation;

(2)    Declares that Defendant Greg Meyer and Executive Director Frank Hackett, Jr., tampered with the election of directors held on January 8, 2003 by improperly refusing to grant access to the list of members of the corporation to Director Messina and secretly working together to provide access solely to Defendant Meyer, so that he could work to defeat Messina's professional associate who was also a candidate for the board; and

(3)    Declares, pursuant to 8 <u>Del. C.</u> § 111, that a majority vote of the whole Board is needed for the creation of any committee, and, accordingly, the creation of the "Executive Committee" by "prerogative" of the Board Chair is contrary to both the Certificate of Incorporation and to 8 <u>Del. C.</u> § 141 (c) (1).

(4)    Declares, pursuant to 8 <u>Del. C.</u> § 111, that the suspension of Plaintiff Messina from membership in ASLET, passed by the Board on June 20, 2003, is invalid and ineffective, being contrary to the bylaws of the corporation, contrary to public policy, and representing bad faith

A166

14




retaliation for the actions of a Director taken in accordance with Sections

220 and 225 of the DGCL.

By:     _Philip Messina_____

Philip Messina
Plaintiff Pro Se
711 N. Wellwood Avenue
Lindenhurst, New York 11757
(631) 226-8308


By:     _____

Edward Mandelbaum
Plaintiff Pro Se
711 N. Wellwood Avenue
Lindenhurst, New York 11757
(631) 226-8308


Dated: June 23, 2003


A167

---

.

.

.



## VERIFICATION

Edward Mandelbaum hereby certifies that he is the plaintiff herein, that he has read the foregoing Complaint and knows the contents thereof, and that the allegations contained in the Complaint are, of his own personal knowledge, true and correct, except as to those matters alleged upon information and belief, he believes them to be true.

_____
Edward Mandelbaum

SWORN TO AND SUBSCRIBED before me this 23ʳᵈ day of June, 2003.

_____
Notary Public

Linda Winkler
Notary Public State of N.Y.
No. 01WI6073634
Qualified in Suffolk Cty
Commission Expires April 1, 2004

A169

17

 

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

PHILIP MESSINA, in his official capacity  §
as a Director of the American Society  §
of Law Enforcement Trainers, Inc.,  §
EDWARD MANDELBAUM,  §
as a member of the American Society  §
of Law Enforcement Trainers, Inc.,  §
a Delaware nonstock corporation,  §
 §     Civil Action No.  2247-S
 §
 §     **STATEMENT PURSUANT TO**
 §     **DEL. CH. CT. R. 4(dc)**
 §
           Plaintiffs,  §
v.  §
 §
AMERICAN SOCIETY OF LAW  §
ENFORCEMENT TRAINERS, INC., and  §
GREG MEYER, DAVID GROSSI,  §
DAVID SMITH, LISA KONRATH,  §
in their official capacities as  Directors of  §
American Society of Law Enforcement  §
Trainers, Inc.,  §
           Defendants.  §

COME NOW, Plaintiffs Philip J. Messina and Edward Mandelbaum, and state the following, pursuant to Del. Ch. Ct. R. 4(dc):

The name of the corporation upon whose governing body the defendants in the above styled action serve is "American Society of Law Enforcement Trainers, Inc.

The principal business address of the corporation is 121 N. Court Street, Frederick, MD 21701.

The registered agent in Delaware of said corporation is Harvard Business Services, Inc., 140 Highway One, Lewes, County of Sussex, DE 19958.

The last residence addresses known for the defendants are:



Greg Meyer
7204 Coolgrove Drive
Downey, Ca. 90240

Lisa Konrath
PO Box 12502
Tucson, Az. 85732-0502

David Grossi
3420 Donoso Court
Naples, FL 34109

David Smith
223 Wellmington Drive
Oswego, IL 60543

  Applicants hereby state, pursuant to Del. Ch. Ct. R. 4(dc)(iii), that they conclude that the addresses listed above are the most recent residence addresses of each nonresident, said addresses having been recently provided by the corporation to Plaintiff Messina (a current director of the corporation) for internal director correspondence.

Dated: June 23, 2003
Lindenhurst, N.Y.

Philip J. Messina
711 N. Wellwood Avenue
Lindenhurst, N.Y. 11757
Plaintiff Pro Se
(631) 226-8308

Edward Mandelbaum
711 N. Wellwood Avenue
Lindenhurst, N.Y. 11757
Plaintiff Pro Se
(631) 226-8308

A171

2



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILIP MESSINA, | ) |
| GEORGE DEMTRIOU, individually and on | ) |
| behalf of all others similarly situated, and | ) Civil Action No: CV-040170 (TCP) |
| derivatively on behalf of | ) |
| AMERICAN SOCIETY OF LAW | ) |
| ENFORCEMENT TRAINERS, INC., | ) |
| Plaintiffs, | ) AFFIDAVIT OF SERVICE |
| | ) |
| v. | ) |
| | ) |
| FRANK A. HACKETT, JR., | ) |
| ANDREW CASAVANT, | ) |
| GREG MEYER, | ) |
| GARY T. KLUGIEWICZ, | ) |
| TIMOTHY DEES, | ) |
| LISA KONRATH, | ) |
| MARY GIFFORD, | ) |
| DAVID SMITH, | ) |
| DAVID GROSSI, | ) |
| JULIE LINKINS, | ) |
| WILLIAM WESTFALL, | ) |
| DANIEL WATSON, | ) |
| GLENN YOUNG, | ) |
| JOHN DOES 1-10, | ) |
| Defendants, | ) |
| | ) |
| And AMERICAN SOCIETY OF LAW | ) |
| ENFORCEMENT TRAINERS, INC., | ) |
| Nominal Defendant. | ) |

I, Paul A. Bradley, declare under penalty of perjury that I have served a copy of the

attached Memorandum in Support of Motion to Dismiss upon Plaintiffs' counsel, by Federal

Express to Steven M. Lester, Esq., whose address is: 325 Merrick Avenue, East Meadow, NY

11554.

A172

 

Dated: February 20, 2004

McCARTER & ENGLISH, LLP

BY: _____
PAUL A. BRADLEY
919 Market Street, 18th Floor
P.O. Box 111
Wilmington, DE 19899
Attorneys for Defendants Frank A. Hackett
Jr., Andrew Casavant, Greg Meyer, Gary T.
Klugiewicz, Timothy Dees, Lisa Konrath,
Mary Gifford, David Smith, David Grossi,
Julie Linkins, William Westfall, Daniel
Watson, and American Society Of Law
Enforcement Trainers (nominal defendant)

A173